1  Frank S. Hedin (SBN 291289)
   Hedin LLP
2  535 Mission Street, 14th Floor
   San Francisco, CA 94105
3  Telephone:  (305) 357-2107
   Facsimile:  (305) 200-8801
4  E-Mail:      fhedin@hedinllp.com

5  *Counsel for Plaintiff and*
   *the Putative Class*

6
                    UNITED STATES DISTRICT COURT
7                   CENTRAL DISTRICT OF CALIFORNIA

8
   SYLVIA  CHANDRA,  individually  and  on          Case No. 2:25-cv- 3984
9  behalf of all others similarly situated,
                                                    **CLASS ACTION**
10                    Plaintiff,
                                                    **DEMAND FOR JURY TRIAL**
       v.
11
   PRAGER UNIVERSITY FOUNDATION,
12
                      Defendant.
13

14                      **CLASS ACTION COMPLAINT**

15         Plaintiff Sylvia Chandra ("Plaintiff") brings this action on behalf of herself and

16  all others similarly situated against Prager University Foundation ("Defendant").

17  Plaintiff makes the following allegations pursuant to the investigation of her counsel

18  and based upon information and belief, except as to the allegations specifically

19  pertaining to herself, which are based on her personal knowledge.

20

## NATURE OF THE CASE

1.      Defendant Prager University Foundation ("Defendant") owns and operates its online and mobile applications ("Apps"), including prageru.com (the "Website"). Through its Website and Apps, Defendant creates videos and hosts a massive library of videos related to a number of topics, including but not limited to philosophy, education, politics, and religion. Further, Defendant also creates and hosts hundreds of educational and entertainment videos targeted specifically to kids, through its prageru kids brand.

2.      Unbeknownst to Plaintiff and the Class Members, Defendant knowingly and intentionally discloses its users' personally identifiable information—including a record of every video viewed by the user or audiovisual content purchased —to unauthorized third parties without first complying with the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiff's claims under the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* This Court also has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because this is a proposed class action in which: (1) there are at least 100 Class Members; (2) the combined claims of Class Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Defendant

1    and at least one Class member are domiciled in different states.

2        4.      This Court has personal jurisdiction over Defendant because it is

3    headquartered in this District. Defendant also conducts substantial business within

4    California, including the sale, marketing, and advertisement of its Website, Apps,

5    products and services.

6        5.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this

7    action because Defendant is headquartered in this District, and a substantial part of the

8    events giving rise to Plaintiff's claims took place within this District.

9                          **PARTIES**

10       6.      Plaintiff Sylvia Chandra is a citizen of New York, who resides in Deer

11   Park, New York. Plaintiff Sylvia Chandra has created an account with Defendant, by

12   providing Defendant her email address and first and last name, and watched a

13   prerecorded video on Defendant's Website within the last two years of filing of this

14   Complaint.

15       7.      Throughout Plaintiff's interactions with Defendant's Website, Plaintiff

16   Sylvia Chandra has maintained and used Plaintiff's Facebook account, which publicly

17   disclosed certain information about her including but not limited to her name, picture,

18   familial relationships etc., from the same browser Plaintiff used to watch a

19   prerecorded video from Defendant's Website.

20       8.      Pursuant to the systematic process described herein, Defendant caused

3

Plaintiff Sylvia Chandra's video viewing history to be sent along with Plaintiff's personally identifiable information ("PII") to Facebook and upon information and belief, other third parties, without Plaintiff's knowledge or consent each time Plaintiff requested and prerecorded viewed video content through the Website.

9.     Plaintiff Sylvia Chandra never consented, agreed, nor permitted Defendant to disclose Plaintiff's PII and viewing information to Facebook or other third parties and certainly did not do so for purposes violative of the VPPA.

10.     Defendant Prager University Foundation is a Virginia corporation with its principal place of business located in Sherman Oaks, California.

## **GENERAL ALLEGATIONS**

### *History and Overview of the VPPA*

11.     The impetus for the VPPA began with President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court. During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper which then published that record. Congress responded by passing the VPPA, with an eye toward the digital future. As Senator Patrick Leahy, who introduced the Act, explained:

> "It is nobody's business what Oliver North or Pratik Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all

4

lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone. I think that is wrong".

S. Rep. 100-599, at 5-6 (internal ellipses and brackets omitted).

12.    In 2012, Congress amended the VPPA, and in so doing, reiterated the Act's applicability to "so-called 'on-demand' cable services and Internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones." S. Rep. 112-258, at 2.

13.    The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). The VPPA defines personally identifiable information ("PII") as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

### *Defendant is a Video Tape Service Provider*

14.    Defendant offers a wide array of prerecorded videos for viewing on its Website that it creates and hosts related to entertainment, politics, philosophy and

5

1  religion, amongst other things.

2      15.    Defendant has consumers in the form of individuals who:

3          a.  Viewed or requested prerecorded videos on Defendant's Website;

4             and/or

5          b.  Subscribed to Defendant's newsletter by providing personal

6             information, such as at a minimum, their email address and IP

7             address; and/or

8          c.  Created an account with Defendant by providing personal

9             information, such as at a minimum their email address, IP address;

10             and first and last name; and/or

11          d.  Made purchases from Defendant's online store.

12         ***Defendant Knowingly Discloses Consumers' PII To Third Parties***

13      16.    When customers request, view or purchase audiovisual content from

14  Defendant's Website or Apps, their Personal Viewing Information is transmitted to

15  Facebook, and other unauthorized third parties as a result of the tracking tools that

16  Defendant purposely installed and implemented on its Website and Apps. Defendant

17  controlled its Website, Apps, and all of the tracking technologies that it used to

18  transmit its customers' Personal Viewing Information to unauthorized parties.

19  Importantly, Facebook would not have received Plaintiff's or the Class Members'

20  Personal Viewing Information but for Defendant's decision to install and use

1  Facebook's Business Tools, including the Facebook Pixel and Conversions API,[1] and

2  other tracking technologies on its Website and Apps.

3      17.    Moreover, Defendant controlled which data was tracked, recorded, and

4  transmitted when its customers requested or viewed its video content.

5      18.    Defendant's knowledge as to its conduct is evidenced by the fact that: (1)

6  it chose to track its customers' interactions with the Website and Apps, including their

7  video viewing habits; (2) it requested and installed lines of code that achieved this

8  purpose; (3) it obtained the lines of code from Facebook and other third parties in

9  order to achieve this purpose; and (4) it controlled the information that was tracked,

10  recorded, and transmitted via the Website and the Apps.

11            **Defendant's use of Facebook Business Tools and Tracking Pixels**

12      19.    Facebook is a real identity platform, meaning that users are allowed only

13  one account and must share the name they go by in everyday life. To that end, when

14  creating an account, users must provide their first and last name, along with their

15  birthday and gender.

16      20.    Businesses, such as Defendant, use Facebook's Business Tools to

17  monitor and record their website and app visitors' devices and specific activities for

18  marketing purposes.

19  _____

[1] Notably, the Facebook Pixel works in conjunction with its Conversion API tool and, as a result,
20  Defendant transmits one copy of its consumer's viewing information directly from its web server to
    Meta's web servers. Additional copies of this information are also communicated through the use of
    cookies.

21.    More specifically, the Facebook pixel that Defendant installed and used tracked, recorded, and sent Facebook its customers' granular Website and Apps activity, including the names of specific prerecorded videos that customers requested and/or viewed each time through Defendant's Website and Apps. The information is not merely metadata.

22.    Defendant's motivation for using the Facebook Pixel and related Facebook Business Tools is simple—it financially benefits Defendant in the form of advertising and information services that Defendant would otherwise have to pay for.

23.    The information Facebook receives from Defendant identifies customers based on their unique and persistent Facebook IDs ("FID"), which is sent to Facebook as one data point alongside the title of the audio visual material the specific customer requested or purchased.

24.    Notably, these marketing tools are not required for Defendant's Website or Apps to function properly. Even if it finds the tools helpful, it could have used them in a manner that does not reveal its customers' Personal Viewing Information.

25.    Any ordinary person who comes into possession of a Facebook ID can easily use that information to identify a particular individual and their corresponding Facebook profile, which contains additional information such as the user's name, gender, birthday, place of residence, career, educational history, a multitude of photos, and the content of a Facebook user's posts. This information may reveal even more

sensitive personal information—for instance, posted photos may disclose the identity of family members, and written posts may disclose religious preferences, political affiliations, personal interests, and more.

### *Defendant's Use of Tracking Tools*

26.     When Defendant's customers request or view audio visual content on Defendant's Website, the specific title of the video or video game is transmitted to Facebook alongside the customers' persistent and unique Facebook identifiers, thereby revealing their Personal Viewing Information to Facebook. However, customers are unaware of this because, amongst other things, Defendant's transmissions are completely invisible to ordinary customers viewing Defendant's webpages.

27.     While Figure 1 shows what ordinary customers see on their screens as they use the Website, Figures 2 shows how Defendant sends to Facebook Plaintiff and the Class Members PII along with the title of the video watched by a consumer through the Website.

**[Intentionally Left Blank]**

9



*Figure 1. The image above is a screenshot of what a user sees when they attempt to watch a video on Defendant's Website. The page does not contain any logos or indications that their interactions are recorded and sent to Facebook.*



*Figure 2. The images above represent a screenshot of a network traffic report that was taken when a user attempts to watch a video from Defendant's Website, at which time the personal viewing information was transmitted to Facebook.*

1      28.    Upon information and belief, Defendant also transmits its customers'

2  Personal Viewing Information to Facebook and additional unauthorized third parties –

3  including Google, TikTok and Twitter – through other tracking technologies installed

4  on its Website and Apps.

5      29.    The Personal Viewing Information that Defendant obtained from Plaintiff

6  and the Class Members is valuable data in the digital advertising-related market for

7  consumer information.

8      30.    At no point did Plaintiff or the Class Members consent to Defendant's

9  disclosure of their video viewing history to third parties. As such, Defendant deprived

10  Plaintiff and the Class Members of their privacy rights and control over their personal

11  information.

12      31.    The harms described above are aggravated by Defendant's continued

13  retention and commercial use of Plaintiff's and the Class Members' personal

14  information, including their private video viewing histories.

15                    **CLASS ACTION ALLEGATIONS**

16      32.    Plaintiff brings this action on behalf of themselves and all other similarly

17  situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3).

18  Specifically, the Class is defined as:

19           All persons in the United States who, during the maximum
             period of time permitted by law, used Defendant's Website or
20           Apps to view, purchase, or request prerecorded audio visual
             materials using their mobile or computer browsers.

11

33.    The Class does not include (1) Defendant, its officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

34.    Plaintiff reserves the right to amend the above class definition and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

35.    ***Community of Interest***: There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

36.    ***Numerosity***: While the exact number of members of the Class is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Class number in the millions. Members of the Class may also be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

37.    ***Existence and predominance of common questions of law and fact***: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individuals of the Class. These common legal and factual questions include, but are not limited to:

(a)    Whether Defendant collected Plaintiff's and the Class Members' PII;

1   (b)  Whether Defendant unlawfully disclosed and continues to disclose its

2 users' PII, including their video viewing records, in violation of the VPPA;

3   (c)  Whether Defendant's disclosures were committed knowingly; and

4   (d)  Whether Defendant disclosed Plaintiff's and the Class Members' PII

5 without consent.

6   38.  ***Typicality:*** Plaintiff's claims are typical of those of the Class because

7 Plaintiff, like all members of the Class, requested and viewed audio visual materials

8 on Defendant's Website and had their PII collected and disclosed by Defendant to

9 third parties.

10   39.  ***Adequacy***: Plaintiff will fairly and adequately represent and protect the

11 interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4).

12 Plaintiff is an adequate representative of the Class because Plaintiff has no interests

13 which are adverse to the interests of the members of the Class. Plaintiff is committed

14 to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled

15 and experienced counsel.

16   40.  Moreover, the proposed Class can be maintained because it satisfies both

17 Rule 23(a) and 23(b)(3) because questions of law or fact common to the Class

18 predominate over any questions affecting only individual members and a Class Action

19 is superior to all other available methods of the fair and efficient adjudication of the

20 claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

1     (a)    The expense and burden of individual litigation makes it economically

2  unfeasible for members of the Class to seek to redress their claims other than through

3  the procedure of a class action;

4     (b)    If separate actions were brought by individual members of the Class, the

5  resulting duplicity of lawsuits would cause members of the Class to seek to redress

6  their claims other than through the procedure of a class action; and

7     (c)    Absent a class action, Defendant likely will retain the benefits of its

8  wrongdoing, and there would be a failure of justice.

9

**CAUSES OF ACTION**

**COUNT I**
**Violation of the Video Privacy Protection Act**
**18 U.S.C. § 2710, *et seq.***

12     41.    Plaintiff incorporates by reference each of the allegations contained in the

13  foregoing paragraphs of this Complaint as though fully set forth herein.

14     42.    The VPPA prohibits a "video tape service provider" from knowingly

15  disclosing "personally-identifiable information" concerning any "consumer" to a

16  third-party without the "informed, written consent (including through an electronic

17  means using the Internet) of the consumer." 18 U.S.C. § 2710.

18     43.    As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is

19  "any person, engaged in the business, in or affecting interstate commerce, of rental,

20  sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

14

1    Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4)

2    because it engaged in the business of delivering audiovisual materials—hundreds of

3    prerecorded videos on a wide array of topics—and those deliveries affect interstate or

4    foreign commerce.

5        44.     As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter,

6    purchaser, or subscriber of goods or services from a video tape service provider."

7    Plaintiff and the Class Members are "consumers" because they:

8            a.  Created an account with Defendant by providing at a minimum, their first

9                and last name, IP address and email address, then purchased, requested

10               and/or viewed audio visual materials;

11           b.  Subscribed to Defendant's newsletter by providing at a minimum, their

12               IP address and email address, then requested and/or viewed audio visual

13               materials; and/or

14           c.  Made a purchase from Defendant's store through Defendant's Website.

15       45.     Defendant knowingly caused Plaintiff's and the Class Members' Personal

16   Viewing Information, as well as the above-referenced unique identifiers, to be

17   disclosed to third parties, such as Facebook. This information constitutes "personally

18   identifiable information" under 18 U.S.C. § 2710(a)(3) because it identified each

19   Plaintiff and Class member to third parties as individuals who purchased or requested

20   audiovisual materials from Defendant. This information allowed third parties, such as

15

1    Facebook, to identify Plaintiff's and each Class Member's specific video viewing

2    preferences and habits.

3        46.    As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent"

4    must be (1) "in a form distinct and separate from any form setting forth other legal or

5    financial obligations of the consumer;" and (2) "at the election of the consumer…is

6    either given at the time the disclosure is sought or is given in advance for a set period

7    of time not to exceed two years or until consent is withdrawn by the consumer,

8    whichever is sooner." Defendant failed to obtain informed, written consent from

9    Plaintiff and the Class Members under this definition.

10        47.    Defendant was aware that the disclosures to third parties that it shared

11    through the tracking software that it incorporated in its Website and Apps identified

12    Plaintiff and the Class Members. Indeed, Facebook publicly touts its ability to connect

13    PII to individual user profiles. Defendant also knew that Plaintiff's and the Class

14    Members' Personal Viewing Information was disclosed to third parties because

15    Defendant programmed the tracking software into the Website's and Apps' code so

16    that third parties would receive the video titles and consumer's unique third-party

17    identifiers when a consumer requested and/or purchased a videos or other prerecorded

18    audio visual material on the Website or Apps. The purpose of those trackers was to

19    obtain identifiable analytics and intelligence for Defendant about its user base, while

20    also benefiting Facebook and other third parties, by providing them with additional

16

data that they can leverage for their advertising, analytics and/or other services.

48.     Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA. In particular, the Website's and app's disclosures to Facebook were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

49.     On behalf of Plaintiff and the Class Members, Plaintiff seeks declaratory relief, statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c), and reasonable attorneys' fees and cost.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class, and Plaintiff's Counsel as Class Counsel;

b)     For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e)     For prejudgment interest on all amounts awarded;

f)     For an order of restitution and all other forms of equitable monetary relief;

g)     For injunctive relief as pleaded or as the Court may deem proper;

h)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff, individually and on behalf of members of the Class, demands a trial by jury on all causes of action and issues so triable.

Dated: May 5, 2025                    Respectfully submitted,

*/s/ Frank S. Hedin*
Frank S. Hedin
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
fhedin@hedinllp.com

**– and –**

Adrian Gucovschi*
Nathaniel Haim Sari*
**Gucovschi Rozenshteyn, PLLC**
140 Broadway, FL 46
New York, NY 10005
Telephone: (212) 884-4230
adrian@gr-firm.com
nsari@gr-firm.com


*Counsel for Plaintiff and the Putative Class*

*\* Pro Hac Vice Application forthcoming*