1  Frank S. Hedin (SBN 291289)
2  Hedin LLP
   535 Mission Street, 14th Floor
3  San Francisco, CA 94105
   Telephone:   (305) 357-2107
4  Facsimile:    (305) 200-8801
5  E-Mail:        fhedin@hedinllp.com

6  *Counsel for Plaintiffs and*
   *the Putative Class*
7
8  [additional counsel on signature page]

9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| 12  SYLVIA  CHANDRA  AND  DAMANY<br>13  BROWNE, individually and on behalf of all<br>14  others similarly situated,<br>15                   Plaintiffs,<br>16    v.<br>17  PRAGER UNIVERSITY FOUNDATION,<br>18                   Defendant. | Case No. 2:25-cv-03984-MCS-SK<br><br>**PLAINTIFFS' RESPONSE AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT**<br><br>Judge: Hon. Mark Scarsi<br><br>FAC filed: August 6, 2025 |

19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................. 1

II.     RELEVANT BACKGROUND .......................................................... 3

III.    LEGAL STANDARD ...................................................................... 4

IV.     ARGUMENT ................................................................................. 5

        A.    Plaintiffs Have Adequately Alleged They Are Consumers ...................... 6

        B.    Plaintiffs Have Adequately Alleged Defendant Disclosed Personally
              Identifiable Information ........................................................... 11

              1.    Plaintiffs Adequately Allege Defendant's Knowing Disclosures
                    Identified Plaintiffs' Identities ...................................... 11

              2.    Plaintiffs Adequately Allege Defendant's Disclosures Included the
                    Identity of Video Material .......................................... 13

        C.    Defendant Has Failed to Meet Its Burden Under Rule 12(e) ................. 18

V.      CONCLUSION ........................................................................... 20

# TABLE OF AUTHORITIES

## Cases

### United States Supreme Court

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................... 4, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 4

### United States Courts of Appeals

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .................................... 11, 13, 14, 15, 16, 17

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) ............................................................ 6

*Gardner v. Me-TV Nat'l Ltd. P'ship*,
132 F.4th 1022 (7th Cir. 2025) ........................................................ 9, 10

*Hinds Invs., L.P. v. Angioli*,
654 F.3d 846 (9th Cir. 2011) ................................................................ 4

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ................................................ 14, 15, 16, 17

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ............................................................. 5

*N. Star Int'l v. Arizona Corp. Comm'n*,
720 F.2d 578 (9th Cir. 1983) ................................................................ 4

*Salazar v. Paramount Glob.*,
133 F.4th 642 (6th Cir. 2025) ......................................................... 9, 10

PLAINTIFFS' RESPONSE AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016) ............................................................... 16, 17

**United States District Courts**

*Archer v. NBCUniversal Media, LLC*,
    No. 2:24-cv-10744 ECF No. 37 (C.D. Cal. July 2, 2025)............................ 7

*Ballard v. Insomniac Holdings, LLC*,
    No. 25-CV-00811-SI, 2025 WL 1696558
    (N.D. Cal. June 17, 2025) ............................................................ 6, 8, 18

*Cheng v. Chien*,
    No. 2:20-cv-04229, 2021 WL 4812322 (C.D. Cal. Aug. 23, 2021) ...................... 18

*Czarnionka v. Epoch Times Ass'n, Inc.*,
    No. 22 CIV. 6348 (AKH), 2022 WL 17069810
    (S.D.N.Y. Nov. 17, 2022) ................................................................ 13

*Ghanaat v. Numerade Labs Inc.*,
    689 F. Supp. 3d 714 (N.D. Cal. 2023) ................................... 7, 9, 13, 18, 19

*Haines v. Cengage Learning, Inc.*,
    No. 1:24-cv-710, ECF No. 18 (May 5, 2025 S.D. Ohio).................................. 3, 19

*Harris v. Pub. Broad. Serv.*,
    662 F. Supp. 3d 1327 (N.D. Ga. 2023) ....................................................... 13

*Hunthausen v. Spine Media, LLC*,
    678 F. Supp. 3d 1228 (S.D. Cal. 2023) ....................................................... 6

*In re Hulu Priv. Litig. [Hulu III]*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) ....................................................... 11

*Jackson v. Fandom, Inc.*,
    No. 22-CV-04423-JST, 2023 WL 4670285
    (N.D. Cal. July 20, 2023)................................................................... 9, 18

*Kueppers v. Zumba Fitness LLC*,

PLAINTIFFS' RESPONSE AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE
STATEMENT

No. 0:24-cv-61983, ECF No. 23 (S.D. Fla. May 8, 2025) ..................................... 14

*Lebakken v. WebMD, LLC*,
    640 F. Supp. 3d 1335 (N.D. Ga. 2022) ................................................................. 13

*Li v. Georges Media Grp. LLC*,
    No. CV 23-1117, 2023 WL 7280519 (E.D. La. Nov. 3, 2023) ............................. 13

*Manza v. Pesi, Inc.*,
    No. 24-CV-690-JDP, ---F.Supp.3d----, 2025 WL 1445762
    (W.D. Wis. May 20, 2025) ............................................................................... 3, 18

*Martin v. Meredith Corp.*,
    657 F. Supp. 3d 277 (S.D.N.Y. 2023) ................................................................. 19

*Rajkumar v. Cisco Sys., Inc.*,
    No. C 08-1600 PVT, 2008 WL 3397851
    (N.D. Cal. Aug. 11, 2008) ............................................................................ 19, 20

*Retamco Operating, Inc. v. Carone*,
    No. CV 04-2997 CBM (RZX), 2004 WL 7338703
    (C.D. Cal. Aug. 27, 2004) ..................................................................................... 5

*Sagan v. Apple Computer, Inc.*,
    874 F. Supp. 1072 (C.D. Cal. 1994) ..................................................................... 5

*Sellers v. Bleacher Rep., Inc.*,
    No. 23-CV-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023) .................... 13

*Tawam v. Feld Ent. Inc.*,
    684 F. Supp. 3d 1056 (S.D. Cal. 2023) ................................................................. 9

**Statutes**

18 U.S.C. § 2710 ........................................................................................................ 3

18 U.S.C. § 2710(a)(1) .............................................................................................. 6

18 U.S.C. § 2710(a)(3) ............................................................................................ 11

PLAINTIFFS' RESPONSE AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE
STATEMENT

18 U.S.C. 2710 (b)(1) ................................................................................ 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................... 4, 18

Fed. R. Civ. P. 12(e) .............................................................................. 5, 18

Fed. R. Civ. P. 15(a)(1) ................................................................................ 3

PLAINTIFFS' RESPONSE AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT

## MEMORANDUM AND POINTS OF AUTHORITY

Plaintiffs respectfully submit this memorandum of points and authorities in opposition to Defendant's Motion to Dismiss or, in the alternative, Motion for More Definite Statement filed on September 4, 2025 ("Motion" or "Mot."). ECF No. 28.

## I.    INTRODUCTION

Defendant is a company that creates and hosts hundreds of videos for public consumption on its website, prageru.com. *See* Plaintiffs' First Amended Complaint ("FAC"), ¶ 1. Plaintiffs have sued Defendant and assert that Defendant violated the Video Privacy Protection Act ("VPPA") by disclosing Defendant's users' Facebook ID ("FID") along with the video titles they watched to a third-party, Facebook. *See* ECF No. 20. Defendants allege that the FID provides a direct link to users' Facebook account, which reveals the users' names, photos, family history, among other information. *See* FAC, ¶¶ 29–31.

In its Motion to Dismiss, Defendant argues: (1) Plaintiffs fail to allege they are consumers under the VPPA because they do not identify how they are subscribers; (2) Plaintiffs fail to allege PragerU knowingly disclosed their "personally identifiable information"; and (3) an ordinary person could not identify Plaintiffs' specific viewing behavior. *See* ECF No. 28. Defendant also asks that, in the alternative, the Court compel Plaintiffs to provide a more definite statement. *Id*.

As argued herein, Defendant's motion fails for the following reasons.

1

**First**, Plaintiffs have adequately alleged they are consumers under the VPPA because they developed a subscriber relationship with Defendant. This was done by providing their name and email to create accounts with Defendant. *See* FAC, ¶¶ 6-10. This created an ongoing relationship with Defendant, whereby Defendant would send email updates to Plaintiffs regarding new videos and content on Defendant's website. *Id*. In the case of Plaintiff Damany Browne, he also received notifications for new videos to his account and gained the ability to mark his favorite videos through his account. *Id*., ¶ 10.

**Second**, Defendant's argument that Plaintiffs failed to allege Defendant knowingly disclosed their information is flat out inaccurate. *Id*. ("Pursuant to the systematic process described herein, each time Plaintiffs or another consumer requested and prerecorded viewed video content through the Website, Defendant caused their video viewing history to be sent along their personally identifiable information ('PII'), such as their name and photo, to Facebook and other third parties, without Plaintiffs' knowledge or consent.").

**Third**, the information disclosed by Defendant—the titles of videos watched and a user's FID—allows an ordinary person to determine the user's identity and video rental. *Id*., ¶ 27. As alleged, the FID provides a direct connection to the user's Facebook account, which, as alleged, reveals their name, photo, and other information. *Id*., ¶ 29. An ordinary person can put this together to determine the identity of the user. *Id*., ¶ 30.

PLAINTIFFS' RESPONSE AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT

**Fourth,** a more definite statement is unneeded because (a) the law is clear that VPPA claims are not subject to a heightened pleading standard; and (b) the authority cited by Defendant is patently distinguishable because those cases involved unique pleading deficiencies not present here. *See Manza v. Pesi, Inc.*, No. 24-CV-690-JDP, ---F.Supp.3d----, 2025 WL 1445762, at *10 (W.D. Wis. May 20, 2025); *Haines v. Cengage Learning, Inc.*, No. 1:24-cv-710, ECF No. 18, 12-16 (May 5, 2025 S.D. Ohio). Accordingly, the Court should deny Defendant's Motion.

## II.    RELEVANT BACKGROUND

On May 5, 2025, Plaintiff Sylvia Chandra ("Plaintiff Chandra") commenced this putative class action against Defendant Prager University Foundation ("Defendant" or "PragerU") for alleged violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 et seq., associated with the prageru.com website. *See* ECF No. 1.  On July 30, 2025, Defendant moved to dismiss the complaint. *See* ECF No. 20. Plaintiff Chandra filed a First Amended Complaint ("FAC") within twenty-one days of Defendant's motion as a matter of right and pursuant to Rule 15(a)(1). *See* ECF No. 21. The FAC added Plaintiff Damany Browne and allegations concerning his experience with Defendant, and it tailored some of the allegations previously asserted in the initial complaint. *See* ECF No. 27.  On August 20, 2025, moved to dismiss the FAC, asserting the same arguments raised in the first motion to dismiss. *See* ECF No. 25.

On August 21, 2025, the Court denied Defendant's motions to dismiss for non-compliance with the Court's rules governing motion practice and vacated the hearings associated with those motions. *See* ECF No. 26.  In compliance with the Court's Order dated August 21, 2025, Defendant renewed its motion to dismiss. *See* ECF No. 28.

## III.    LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all material allegations in the complaint as true and construe them in the light most favorable to" the nonmoving party. *N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). To survive dismissal, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 679. Dismissal is only proper under Rule 12(b)(6) when there is "a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (citation omitted). Under Rule 12(b)(6), "[t]he party moving for dismissal bears the burden of proving that no claim has been stated."

4

*Retamco Operating, Inc. v. Carone*, No. CV 04-2997 CBM (RZX), 2004 WL 7338703, at *3 (C.D. Cal. Aug. 27, 2004).

In considering a motion for more definite statement under Federal Rule of Civil Procedure 12(e), relief should be granted when the complaint is so "vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).

## IV. ARGUMENT

To state a claim under the VPPA, a plaintiff must allege "(1) the defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any consumer to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by" the statutory exceptions. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (citation modified). Plaintiffs have clearly and sufficiently alleged all four elements. Defendant only challenges the second element with two alternating theories and the third element with a lone theory that every court has rejected at the pleading stage. Each theory concerning the second element fails when measured against the legion of authority, which concludes that allegations similar to those of the Plaintiffs are sufficient to withstand a motion to dismiss. The Motion should be swiftly denied.

5

### A. Plaintiffs Have Adequately Alleged They Are Consumers

The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *See* 18 U.S.C. § 2710(a)(1). One court in this Circuit interpreted "consumer" to mean "the individual must rent, purchase or subscribe for goods or services from a video tape service provider." *See Hunthausen v. Spine Media, LLC*, 678 F. Supp. 3d 1228, 1233 (S.D. Cal. 2023). The Ninth Circuit has not yet interpreted "subscriber" and whether that type of consumer must subscribe "directly *to the audio visual content* from the VTSP in question, or whether the term 'good and services' within the statute covers subscriptions of *any* goods and services from the VTSP." *Ballard v. Insomniac Holdings, LLC*, No. 25-CV-00811-SI, 2025 WL 1696558, at *4 (N.D. Cal. June 17, 2025) (emphasis in original). The Circuits that have addressed the issue consistently hold that a plaintiff must allege "an ongoing commitment or relationship between the user and the defendant." *See id.*; *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015).

Courts have consistently held that a plaintiff-subscriber meets their burden and denied motions to dismiss when the defendant is adequately alleged to be a "video tape service provider" or when the issue is undisputed. *Compare Ballard*, 2025 WL 1696558, at *3 ("For purposes of a motion to dismiss, the Court finds plaintiff has sufficiently alleged that the video content he watched on Insomniac's website was

6

more than peripheral to the business model of a company that manages music festivals—an audio visual experience") *with id.*, at *5 ("The Court holds at this stage that, regardless of any lack of connection between the Insomniac newsletter and the video content plaintiff viewed, his newsletter subscription brings him within the definition of "consumer" under the VPPA."); For example, in *Ghanaat v. Numerade Labs, Inc.*, the court found that a paid and unpaid subscriber who alleged that they "registered for accounts with defendant by providing, among other information, their name and email address" were "consumers" under the VPPA. *See Ghanaat v. Numerade Labs Inc.,* 689 F. Supp. 3d 714, 716, 722 (N.D. Cal. 2023). Similarly, in *Jackson v. Fandom, Inc.*, the court found that a subscriber who "created a Fandom account; became a registered user; provided Fandom with her PII, including her name and email address; and then used Fandom to watch videos" was a "consumer" under the VPPA. *See* No. 22-CV-04423-JST, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023); *see also Archer v. NBCUniversal Media, LLC*, No. 2:24-cv-10744 ECF No. 37, pgs. 6, 8–9 (C.D. Cal. July 2, 2025) (consumer status sufficiently alleged and Defendant did not "Defendants do not dispute that they are video tape service providers.").

Here, Plaintiffs have sufficiently alleged their relationship with Defendant. Plaintiff Chandra alleges she is a "subscriber" because she "created an account with Defendant, by providing Defendant her email address and first and last name, and

thereafter watched prerecorded videos on Defendant's Website." *See* FAC, ¶¶ 6–7. Plaintiff Browne likewise alleges he is a "subscriber" because he "created an account with Defendant by providing Defendant his email address and first and last name." *See id.*, ¶¶ 9–10. Both plaintiffs allege that they exchanged their email addresses and demographic information to establish an ongoing relationship with the Defendant. *See id.*, ¶¶ 7, 10.

Plaintiff Browne further alleges that his account permitted him to "log in to his account to get video notifications, watch videos, favorite the videos that he watched, and create playlists of the videos." *See id.*, ¶ 10. Plaintiff Chandra's account, on the other hand, enabled her to receive "promotional emails concerning new video content and articles made available on the Website." *See id.*, ¶ 7. The FAC further alleges that Plaintiffs, as subscribers, provided their "email address, stored cookie data, and IP address" to Defendant, and that information was transmitted to Facebook for identification and association with their individual Facebook ID without their consent. *See id.*, ¶ 19, 31.

Defendant's relationship with Facebook, unbeknownst to Plaintiffs (FAC, ¶ 32), permitted Defendant and third parties to feed advertisements to Plaintiffs based on their activity. *See id.*, ¶ 26. These allegations, once accepted as true and construed with all inferences in favor of the Plaintiffs, demonstrate that Plaintiffs are consumers as the VPPA defines that term. *See Ballard*, 2025 WL 1696558, at *4 ("The personal

8

information he provided defendant in order to sign up for the newsletter—his name and email address—established a materially different relationship between him and Insomniac which gave him access to exclusive or restricted content."); *Ghanaat*, 689 F. Supp. 3d at 722 (subscriber "registered for accounts with defendant by providing, among other information, their name and email address."); *Jackson*, 2023 WL 4670285, at *4 (subscriber "created a Fandom account; became a registered user; provided Fandom with her PII, including her name and email address; and then used Fandom to watch videos.").

Defendant cites several cases that are distinguishable because they involved pleading defects, insufficient allegations, or challenges to the Defendant's status as a video tape service provider under the VPPA. *See* ECF No. 28 at 11. None of these circumstances is before the Court. For example, *Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023) is inapplicable because it involved a plaintiff who subscribed to a newsletter for monster truck events without any allegations connecting the newsletter to the defendant's monster truck business or how that business operated to sell or deliver prerecorded videos. Unlike *Tawam*, here Plaintiffs clearly allege that Defendant's sole business is to provide prerecorded videos to consumers. *See* FAC, ¶¶ 18, 32–33.

Next, Defendant cites two district court decisions, *Gardener v. MeTV* and *Salazar v. Paramount Global*, both of which are irrelevant. *See* ECF No. 28 at 11.

9

The Motion's reliance on *Gardener* fails because the district court's decision was effectively reversed by the Seventh Circuit. *See Gardner v. Me-TV Nat'l Ltd. P'ship*, 132 F.4th 1022, 1025 (7th Cir. 2025) ("It is enough to hold that, when a person does furnish valuable data in exchange for benefits, that person becomes a 'consumer' as long as the entity on the other side of the transaction is a "video tape service provider."). Regarding *Salazar*, the Sixth Circuit only affirmed the district court's dismissal of the complaint because the plaintiff failed to allege that the newsletter "contained links to videos, directed subscribers to video content, and otherwise enticed or encouraged them to watch Paramount's videos," or that he had accessed videos through the newsletter. *See Salazar v. Paramount Glob.*, 133 F.4th 642, 652 (6th Cir. 2025). Plaintiffs in this case state that their accounts gave them unique personal access to "promotional emails concerning new video content and articles made available on the Website" and "to get video notifications, watch videos, favorite the videos . . . and create playlists of the videos." *See* FAC, ¶¶ 7, 10. Therefore, Defendant's citation to the district court order in *Gardener* is mistaken, and *Salazar* does not apply.

The remaining cases offered by Defendant fare no better because they involved failures to connect the subscription to the prerecorded video content.  Plaintiffs have done quite the opposite. *See* FAC, ¶¶ 7, 10. Thus, the Motion should be denied on this basis.

**B. Plaintiffs Have Adequately Alleged Defendant Disclosed Personally Identifiable Information**

The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *See* 18 U.S.C. § 2710(a)(3). The Ninth Circuit has adopted the "ordinary person" test, which construes this term to reach "only that information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). District courts interpreting the ordinary person approach require that the complaint plead the information identifies the following information to an ordinary person: "1) a user's identity; 2) the identity of the video material; and 3) the connection between the two[.]" *In re Hulu Priv. Litig. [Hulu III]*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015). Defendant challenges the first two sub-elements necessary to allege personally identifiable information. Its challenges are meritless.

**1. Plaintiffs Adequately Allege Defendant's Knowing Disclosures Identified Plaintiffs' Identities**

Liability under the VPPA attaches when a "videotape service provider" like Defendant, "knowingly discloses . . . personally identifiable information concerning any consumer of such provider[.]" *See* 18 U.S.C. 2710 (b)(1). Defendant opens the argument on page 12, claiming that "Plaintiffs also do not allege any facts to suggest

11

Prager U knowingly disclosed their PII to Facebook (or any other third party)" and later, in a disjointed fashion, argues on page 13 that "Plaintiffs never allege any of their PII to Facebook IDs were disclosed to Facebook." *See* ECF No. 28. Not so. To the extent Defendant intended to challenge both the "user identity" and scienter requirements, Plaintiffs have adequately alleged that Defendant disclosed their individual information and that disclosure was knowing.

The FAC alleges "Defendant knowingly and intentionally discloses its users' personally identifiable information—including a record of every video viewed by the user or audiovisual content purchased —to unauthorized third parties." *See* FAC, ¶¶ 2, 51. It further alleges how Defendant:

> (1) chose to track its customers' interactions with the Website and Apps, including their video viewing habits; (2) requested and installed lines of code that achieved this purpose despite the existence of other configurations of that code; (3) obtained the lines of code from Facebook and other third parties in order to achieve this purpose; and (4) controlled the information that was tracked, recorded, and transmitted via the Website and the Apps.

*See id.*, ¶ 22 (citation modified). The FAC then links Defendant's intentional conduct to the Plaintiffs by alleging that "each time Plaintiffs or another consumer requested and prerecorded viewed video content through the Website, Defendant caused their

video viewing history to be sent along their personally identifiable information ("PII"), such as their name and photo, to Facebook and other third parties, without Plaintiffs' knowledge or consent." *See id.*, ¶ 12. Lastly, the FAC claims both Plaintiffs "watched prerecorded videos on Defendant's Website within the last two years." *See id.*, ¶¶ 6, 9. Any one of these well-pled allegations, alone, would be enough to allege Defendant's knowing disclosure of personally identifiable information. *See Ghanaat*, 689 F.Supp.3d at 721. Courts across the country agree. *See id.* (collecting cases); *Li v. Georges Media Grp. LLC*, No. CV 23-1117, 2023 WL 7280519, at *4 (E.D. La. Nov. 3, 2023); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 n.2 (N.D. Ga. 2022) (same); *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022); *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1337 (N.D. Ga. 2023). Defendant has not provided a single case to the contrary.

The Motion should be denied on this point.

### 2. Plaintiffs Adequately Allege Defendant's Disclosures Included the Identity of Video Material

Defendant argues that it does not disclose sufficient information to connect a user with their video viewing habits. Defendant relies primarily on *Eichenberger* to argue that the information it shares with Facebook—the user's FID and videos watched—

13

does not sufficiently identify the user and their video viewing habits to constitute personally identifiable information ("PII") under the VPPA. However, *Eichenberger* is dissimilar to our case, as the information disclosed in *Eichenberger*—a Roku serial number—did not allow an ordinary person to identify the user. *Id.* In contrast, here a person's FID does provide enough information for an ordinary person to identify a user.

In *Eichenberger*, which was also a VPPA case, the issue was whether the combined disclosure from Roku TV devices to Adobe of (a) consumers' Roku serial numbers; and (b) the names of videos watched, constituted a disclosure of PII under the VPPA. *Id.* at 981. The plaintiff argued it did, since that information could be pieced together by Adobe, using specialized know-how and data exclusively in Adobe's possession, to determine the identity of the consumer. *Id.*

The Ninth Circuit disagreed. The Ninth Circuit explained that it was adopting the ordinary person standard espoused by the Third Circuit in the *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) decision. Under that standard, courts are to analyze whether an ordinary person can use the information disclosed to identify a person, without regard for the recipient's unique capabilities. *Eichenberger*, 876 F.3d at 985; *Kueppers v. Zumba Fitness LLC*, No. 0:24-cv-61983, ECF No. 23 p. 8 n.3 (S.D. Fla. May 8, 2025) ("There is evidence from the *Nickelodeon* opinion that the Third Circuit didn't specifically raise the standard for *who* needed to be able to tie the disclosure to an individual person. Instead, the court's holding seems to be about the

ease with which *one* could draw the connection between the numerical identifier disclosed and the individual video consumer."). And according to the Court, an ordinary person, armed with just the Roku serial number and video titles, could not put together who the person was that watched the video. *Eichenberger*, 876 F.3d at 986 ("[A]ccording to Plaintiff, Adobe can identify individuals only because it uses a complex 'Visitor Stitching technique' to link an individual's Roku device number with other identifying information derived from 'an enormous amount of information' collected 'from a variety of sources.' We conclude that an ordinary person could not use the information that Defendant allegedly disclosed to identify an individual.")

It was Adobe's specialized and unique capabilities, that allowed it to infer the user's identity based just on their Roku serial number. *Id*. Notably, the Court expressly stated that it was not extending its ruling to Facebook accounts. *Id.* ("A Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual. We need not and do not opine on the merits of those theories.")

Our case is distinguishable because a user's FID is significantly more personal and revealing than a Roku TV serial number. As alleged, a person's FID is directly tied to their Facebook account, which in turn reveals personal information such as the user's name, photo, family association, among other personal information. *See* FAC, ¶¶ 29–31. Both Plaintiffs allege their information was sent by Defendant to Facebook. *See* FAC, ¶ 12 ("[E]ach time Plaintiffs or another consumer requested and prerecorded

15

viewed video content through the Website, Defendant caused their video viewing history to be sent along their personally identifiable information ("PII"), such as their name and photo, to Facebook and other third parties…).

Unlike the information Adobe pieced together in *Eichenberger*, the information that is tied to a Facebook account is not alleged to be uniquely in Facebook's possession nor does it have to be pieced together through sophisticated means. *Id*. As alleged, once a person knows person's FID, they can enter it as URL and go directly to the user's Facebook account. *See* FAC, ¶ 30. Unlike in *Eichenberger*, no uniquely specialized tools or knowledge are needed to acquire the user's identity from their Facebook account. Facebook is a social network platform designed around publicizing information about oneself and connecting with others. And as alleged, having access to the account provides a rich trove of personal information about a user available to anyone—not just Facebook. *See* FAC, ¶ 31.

Further, in *In re Nickelodeon Consumer Privacy Litig.*, while adopting the ordinary person standard, the Third Circuit expressly stated that it was not splitting from the First Circuit's decision in *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016), finding that video rental history and GPS coordinates of a user's access, constituted disclosure of the PII under the VPPA. *See* 827 F.3d 262, 289 (3d Cir. 2016). The Third Circuit acknowledged the First Circuit's reasoning that GPS coordinates could readily be used to infer the user's identity based on the location where

the video was accessed, unlike a Roku serial number. *See id.* (quoting *Yershov*, 820 F.3d at 489 ("[G]iven how easy it is to locate a GPS coordinate on a street map, this disclosure would enable most people to identify what are likely the home and work addresses of the viewer (e.g., Judge Bork's home and the federal courthouse).")).The Ninth Circuit also stated that it did not reject the conclusion of *Yershov* for similar reasons espoused by the Third Circuit. *Eichenberger,* 876 F.3d at 986 ("Our decision today, though it adopts a different test, does not necessarily conflict with *Yershov.*"). So, the First, Third, and Ninth circuits appear to acknowledge either tacitly or explicitly that GPS coordinates are sufficient to identify a person, even though it would require some use of outside information and some degree of inference by the ordinary person.

Thus, accepting Plaintiff's allegations as true at this stage—which the court must do at this stage—Defendant's disclosure of users' FID, along with the video titles, qualifies as PII under the VPPA and under the ordinary person standard. After all, the VPPA was created to protect the public from experiencing a similar privacy violation that Judge Bork experienced when his blockbuster rental history was leaked to a journalist. *See Eichenberger,* 876 F.3d at 984 n.2. If Judge Bork were nominated for the Supreme Court today, and his video rental history coupled with his FID or Facebook account were provided to a journalist, that would be more than enough to infer his identity—exactly the harm the VPPA is meant to protect against.

PLAINTIFFS' RESPONSE AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT

**C. Defendant Has Failed to Meet Its Burden Under Rule 12(e)**

Grasping for straws, Defendant argues that Plaintiffs must provide a more definite statement because the FAC does not allege "sufficient detail about their relationship with Prager U or about what PII of theirs, if any, they claim Prager U disclosed to a third party." *See* ECF No. 28 at 16. This argument fails for several reasons. As detailed above, Plaintiffs have sufficiently alleged their relationship with Defendant. *See* §A. *supra*; FAC, ¶¶ 6–10, 18–19, 26, 31–33; *Ballard*, 2025 WL 1696558, at *4; *Ghanaat*, 689 F. Supp. 3d at 722; *Jackson*, 2023 WL 4670285, at *4. However, Defendant's request for a motion for a definite statement fails for three additional reasons.

First, attempting to use Rule 12(e) as a substitute for Rule 12(b)(6) is generally disfavored. *See e.g., Cheng v. Chien*, No. 2:20-cv-04229-MCS-PVC, 2021 WL 4812322, at *2 (C.D. Cal. Aug. 23, 2021) (finding the "first argument—that Chien should identify the facts that satisfy *Iqbal*'s requirement—is an argument to be made under Rule 12(b)(6)."). Second, nearly every court that has considered the level of specificity required for a VPPA claim has rejected the argument that such claims require heightened pleading. *See Manza v. Pesi, Inc.*, 2025 WL 1445762, at *10 (finding the defendant's "argument fails because it rests on the assumption that a complaint must allege every fact that the plaintiff must ultimately prove."); *Ghanaat*, 689 F. Supp. 3d at 720 n.8 ("Defendant also appears to argue that plaintiffs need to

18

allege the specific video content they requested or obtained from defendant. . . . The

Court finds this argument, which defendant does not support with authority or

significant analysis, unpersuasive."); *Ghanaat*, 689 F.Supp.3d at 721 ("Whether a URL

sufficiently identifies a video is ultimately a factual question that should not be

resolved on motion to dismiss."); *Haines v. Cengage Learning, Inc.*, No. 1:24-cv-710,

ECF No. 18, 12-16 (May 5, 2025 S.D. Ohio) (collecting cases for the proposition that

"other Courts considering similar complaints have not demanded granular specificity

at the pleading stage"), *report and recommendation adopted*, 2025 WL 2045644, at *2

(S.D. Ohio July 22, 2025).

Third, the cases offered by Defendant fail to lend it any support for a more

definite statement. For example, Defendant cites *Martin v. Meredith Corp.*, 657 F.

Supp. 3d 277, 284 (S.D.N.Y. 2023), but the plaintiff in that case brought a VPPA

claim based solely on the fact that a company installed the Facebook Pixel on its

website without any allegations concerning the operation or configuration of the

technology.   That pleading deficiency is not present here.   *See* ECF No. 21.

Defendant's citation to *Rajkumar v. Cisco Sys., Inc.*, No. C 08-1600 PVT, 2008 WL

3397851, at *3 (N.D. Cal. Aug. 11, 2008) fares no better. In *Rajkumar*, the plaintiff

alleged violations of the Electronic Communications Privacy Act, California's

wiretap law, and California common law against multiple defendants without alleging

(1) the particular unlawful actions performed by each defendant or the basis for their

vicarious liability, (2) whether the theory of his trespass claim applied to non-physical intrusions, and (3) the basis for his entitlement to damages on the defamation count. *See id.* None of the pleading defects in *Rajkumar* are present in this case either. Therefore, Defendant's argument should be rejected.

Accordingly, Defendant's motion should be denied on this basis.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court to deny Defendant's Motion to Dismiss.

Dated: September 12, 2025                    Respectfully submitted,

*/s/ Frank S. Hedin*
Frank S. Hedin
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
fhedin@hedinllp.com

**– and –**

Adrian Gucovschi
Nathaniel Haim Sari
**Gucovschi Rozenshteyn, PLLC**
140 Broadway, FL 46
New York, NY 10005
Telephone: (212) 884-4230
adrian@gr-firm.com
nsari@gr-firm.com

20

*Counsel for Plaintiffs and the Putative Class*

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,720 words, which complies with the word limit of L.R. 11-6.1.

Date: 9/12/2025
Name: Frank Hedin
Signature: /s/ Frank Hedin
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
fhedin@hedinllp.com

Plaintiffs' Response and Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for More Definite Statement