**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:25-cv-03984-MCS-SK | Date October 21, 2025 |
| Title *Chandra v. Prager Univ. Found.* | |

Present: The Honorable   Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE: MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT (ECF NO. 28)**

Defendant Prager University Foundation moves to dismiss Plaintiffs Sylvia Chandra and Damany Browne's First Amended Class Action Complaint for failure to state a claim or, in the alternative, for a more definite statement. (Mot., ECF No. 28.) Plaintiffs filed a brief opposing the motion, (Opp'n, ECF No. 29), and Defendant filed a reply, (Reply, ECF No. 30). The Court heard argument on the motion on October 6, 2025. (Mins., ECF No. 33.)

**I.   BACKGROUND**

According to the First Amended Complaint, Defendant owns and operates a website and a variety of mobile applications through which it "creates videos and hosts a massive library of videos related to a number of topics, including but not limited to philosophy, education, politics, and religion." (FAC ¶ 1, ECF No. 21.) Plaintiffs each created accounts on Defendant's website by providing their email addresses and first and last names. (*Id.* ¶¶ 6, 9.)

Plaintiffs allege that, unbeknownst to them, Defendant employed a "systematic process" by which Defendant would cause users' video viewing history to be sent along with the users' personally identifiable information to third parties such as Facebook. (*Id.* ¶ 12.) This was accomplished by use of the "Facebook Pixel," a program that tracks, records, and transmits a log of users' activities when interacting with Defendant's website and applications. (*Id.* ¶ 25.) The information Facebook receives identifies the users by "unique and persistent Facebook IDs ('FID')," which link to users' personal Facebook pages. (*Id.* ¶¶ 27, 29.)

Plaintiffs claim this conduct violates the Video Privacy Protection Act (the "VPPA"), 18 U.S.C. § 2710. (FAC ¶¶ 2, 47–55.) They bring a claim on behalf of themselves and a putative class that includes all persons who "used Defendant's Website or Apps to view, purchase, request or obtain prerecorded audio visual materials." (*Id.* ¶ 38.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

/ / /

## III. DISCUSSION

To plead a plausible claim under the VPPA, "a plaintiff must allege that (1) a defendant is a video tape service provider, (2) the defendant disclosed personally identifiable information concerning any customer to any person, (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by [18 U.S.C. §] 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (internal quotation marks omitted). Defendant argues that Plaintiffs have not adequately pleaded that they are "consumers" under the VPPA or that their personally identifiable information ("PII") was disclosed. (Mot. 11–15.)[1]

### A. Whether Plaintiffs Are "Consumers" Under the VPPA

The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). The parties focus their arguments on whether Plaintiffs are "subscribers" rather than renters or purchasers. (*See* Mot. 11–12; Opp'n 6–10.) Courts that have assessed the meaning of "subscriber" under the VPPA emphasize the existence of an "ongoing commitment or relationship between the user" and the video tape service provider. *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015). Factors that show such a commitment include registration, delivery, or access to restricted content. *Id.* at 1256–57. While a monetary payment is not required for someone to be a subscriber, *id.* at 1256, it is more likely that a user qualifies as a subscriber when the user provides data to the provider in exchange for the provider's goods or services, *see Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016).

The circuits are split on whether a consumer must be subscribed specifically to audiovisual content, or if the consumer can be subscribed to any goods or services provided by the video tape service provider, regardless of whether those goods and services are audiovisual in nature. *Compare Salazar v. Paramount Glob.*, 133 F.4th 642, 650–51 (6th Cir. 2025) (holding that, to be a subscriber, a plaintiff must be subscribed to "goods or services in the nature of video cassette tapes or similar audio visual materials" (internal quotation marks omitted)), *and Pileggi v. Wash. Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1232 (D.C. Cir. 2025) (holding that "only those who rent, purchase, or subscribe to a video are consumers under the

---

[1] Defendant does not dispute that it is a video tape service provider under the VPPA. (*See* Mot. 10–12.)

statute" (cleaned up)), *with Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 549 (2d Cir. 2024) (holding that the term "consumer" should be understood to "encompass a renter, purchaser, or subscriber of *any* of the provider's goods or services—audiovisual or not"), *and Gardner v. Me-TV Nat'l Ltd. P'ship*, 132 F.4th 1022, 1025 (7th Cir. 2025) (holding that "[a]ny purchase or subscription from a video tape service provider satisfies the definition of consumer, even if the thing purchased is clothing or the thing subscribed to is a newsletter"). The Ninth Circuit has not yet resolved this question. *See Ballard v. Insomniac Holdings, LLC*, No. 25-cv-00811-SI, 2025 WL 1696558, at *4 (N.D. Cal. June 17, 2025) (noting lack of binding authority).[2]

      The Court finds persuasive the reasoning of the Second and Seventh Circuits. The plain language of the statute does not limit the phrase "goods or services" to those that are audiovisual in nature. *See* 18 U.S.C. § 2710(a)(1). Indeed, there is no qualifier limiting what kind of goods or services need to be exchanged. Conversely, the statute expressly limits the definition of "video tape service provider" to only those who deal in "prerecorded video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(4). That Congress included an audiovisual limitation in the definition of *video tape service provider* but not in the definition of *consumer* is strong evidence that Congress did not intend there to be such a limitation included in *consumer*'s meaning. *See Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) (noting that courts should not "lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply," especially when it "has shown elsewhere in the same statute that it knows how to make such a requirement manifest"). Accordingly, the Court concludes based on the statute's plain language that there is no requirement that, in order to be a subscriber, a person must subscribe to audiovisual materials specifically. It is sufficient that a person enters into an ongoing relationship or commitment with the video tape service provider, such as by providing valuable information in exchange for access to certain goods or services, regardless of whether those goods or services are audiovisual in nature. *Accord Gardner*, 132 F.4th at 1025 ("It is enough to hold that, when a person does furnish valuable data in exchange for benefits, that person becomes a consumer as long as the entity on the other side of the transaction is a video tape service

---

[2] The Ninth Circuit held oral argument on this exact question on August 12, 2025, and thus may soon resolve this issue. *See Heather v. Healthline Media, Inc.*, No. 24-4168 (9th Cir. Aug. 12, 2025), ECF No. 32. Should controlling law on this question change, Defendant may request that the Court revisit the matter.

provider." (internal quotation marks omitted)); *see also Ballard*, 2025 WL 1696558, at *5.

Under this definition, Plaintiffs have pleaded sufficient facts to plausibly allege that they are subscribers under the VPPA. Plaintiffs allege that Chandra "created an account with Defendant, by providing Defendant her email address and first and last name." (FAC ¶ 6.) Defendant then sent her "promotional emails concerning new video content and articles made available on the Website." (*Id.* ¶ 7.) Plaintiffs similarly allege that Browne "created an account with Defendant by providing Defendant his email address and first and last name" and thereafter received emails "regarding new video content and articles made available on the Website." (*Id.* ¶¶ 9–10.) He additionally asserts that he was able to "log in to his account to get video notifications, watch videos, favorite the videos that he watched and create playlists of the videos." (*Id.* ¶ 10.) Thus, Plaintiffs have both alleged that they provided Defendant with valuable information—their names and email addresses—in exchange for receiving certain services, including promotional emails regarding new video content. They have plausibly alleged that there was an ongoing relationship between them and Defendant.

Defendant argues that all of its videos are available online for free and that no account is required to view them. (Mot. 12.) This argument is unavailing for two reasons. First, the FAC contains no such allegation that the videos are available for free and can be viewed without an account. (*See generally* FAC ¶¶ 1–55.) At the motion to dismiss stage, the Court generally cannot consider facts beyond the four corners of the complaint. *See* Fed. R. Civ. P. 12(d). Second, even if the videos themselves are publicly available, the Court, as previously explained, does not interpret the phrase "goods or services" to be limited to audiovisual materials. It is enough that Plaintiffs allege they received access to other goods or services, including promotional emails and the ability to perform certain functions like making playlists on Defendant's website, that they otherwise would not have had.

In sum, Plaintiffs have adequately alleged that they are subscribers, and therefore consumers, under the VPPA.

B.   **Whether Plaintiffs Have Alleged that Their PII Was Disclosed**

Defendant next argues that Plaintiffs have not adequately pleaded that their personal identifiable information was disclosed. (Mot. 12–15.) The VPPA defines PII as "information which identifies a person as having requested or obtained

specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The Ninth Circuit has adopted an "ordinary person" test to determine what information satisfies the statutory definition of PII. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). Under the ordinary person test, PII "means only that information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Id.* at 985 (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016)). To adequately plead a disclosure of PII under the VPPA, a plaintiff must allege that the defendant disclosed to a third party "1) a consumer's identity; 2) the identity of specific video materials; and 3) the fact that the person identified requested or obtained that material." *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (internal quotation marks omitted).

Plaintiffs allege that Defendant used Facebook Pixel to track, record, and send customers' "granular Website and App activity, including the names of specific prerecorded videos that customers requested and/or viewed," to Facebook. (FAC ¶ 25.) The information Facebook received "identifie[d] customers based on their unique and persistent Facebook IDs," which can be used to identify customers' personal Facebook page. (*Id.* ¶¶ 27, 29.) Facebook accounts, in turn, can contain additional personal information about a person, including their "online user name, real name, gender, birthday, place of residence, career, educational history, a multitude of photos, and the content of [the person's] posts." (*Id.* ¶ 29.)

There is a growing divide among courts about whether Facebook IDs coupled with video viewing histories transmitted by Facebook Pixel satisfy the ordinary person test. *Compare Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 54–55 (2d Cir. 2025) (holding that a complaint failed to "plausibly allege that an ordinary person could identify Solomon through her FID"), *with Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 857 (C.D. Cal. 2024) ("Most courts have found the Pixel discloses PII at the pleading stage."). The Court, however, does not need to take a side in this conflict to adjudicate the instant motion because, even assuming that FIDs and viewing histories together constitute PII, Plaintiffs have not alleged that their specific PII was disclosed. Plaintiffs' allegations focus on the Facebook Pixel's general capabilities, but they do not provide facts raising an inference that the technology was used to disclose Plaintiffs' PII specifically. (*See* FAC ¶¶ 23–34.) For example, the FAC contains an image representing "a screenshot of a network traffic report that was taken when a user attempt[ed] to watch a video from Defendant's Website, at which time the personal viewing information was transmitted to Facebook." (*Id.* ¶ 33 fig. 2 (italics removed).) The image includes a box containing

what appears to be a section of Facebook Pixel code. (*Id.*) Plaintiffs' counsel, however, conceded at the hearing that this image is provided only as an exemplar and does not relate to either Plaintiff specifically.[3] This image and similar generalized allegations are not sufficient to establish that either Plaintiff's FID was actually disclosed to Facebook or any other third party. *See Iqbal*, 556 U.S. at 678.

One of the few allegations specifically about Plaintiffs, rather than the general technological capabilities of Facebook Pixel, is that "each time Plaintiffs or another consumer requested and [sic] prerecorded viewed video content through the Website, Defendant caused their video viewing history to be sent along [sic] their [PII], such as their name and photo, to Facebook and other third parties, without Plaintiffs' knowledge or consent." (FAC ¶ 12.) This allegation appears to state that Defendant sent Plaintiffs' photos to Facebook. However, Plaintiffs' counsel conceded at the hearing that this is not true because Defendant does not maintain photos of either Plaintiff. The allegation in paragraph 12 is thus insufficient to plausibly allege that Defendant disclosed Plaintiffs' specific FIDs and viewing histories. *Cf. Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 772 (N.D. Cal. 2025) (holding that allegations were sufficient to state a claim under the VPPA when a plaintiff alleged that the defendant "disclosed *his* Facebook User ID and *his* email address, along with event data, like the title of the videos viewed" (emphases added)).

Plaintiffs also allege that both of their Facebook profiles "had their name, photos, genders, Facebook friends, Facebook handles, and other personal information publicly available to anyone who had their Facebook ID." (FAC ¶ 31.) They then claim that "[a]t a minimum, Prager revealed this PII (along with the titles of the videos that Plaintiffs watched) to Facebook." (*Id.*) It is unclear what "this PII" refers to in paragraph 31. The natural reading of the entire paragraph suggests that "this PII" refers to the contents of Plaintiffs' Facebook pages described in the previous sentence. This is puzzling, however, because Plaintiffs allege that this data was maintained by Facebook, not Defendant. (*Id.* ¶ 31.) It is not plausible that Defendant could disclose PII that it does itself maintain itself. *Eichenberger*, 876 F.3d at 986 (indicating that a video tape service provider cannot be liable based on PII data that it "never even possessed"). Indeed, Plaintiffs' entire theory of the case is that FIDs and viewing histories are the PII at issue because that is the data Defendant allegedly collected and disclosed to third parties. (*See* FAC ¶¶ 23–33.) The Court does not read the complaint to say that Plaintiffs' specific FIDs were

---

[3] When pressed on the content of figure 2 at the hearing, Plaintiffs' counsel was unsure whether the image contained an FID at all.

disclosed to Facebook. Of the allegations discussed, this comes the closest to sufficiently alleging that Defendants disclosed Plaintiffs' FIDs, but the ambiguity over what "this PII" refers to renders the allegation inadequate.

In all, Plaintiffs have failed to adequately plead that Defendant disclosed their specific PII to a third party. The FAC therefore fails to plausibly state a claim under the VPPA.

### C.     Leave to Amend

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The pleading defects appear to be readily curable upon amendment. Additional allegations could adequately provide that Defendant disclosed Plaintiffs' PII to third parties. Given the Ninth Circuit policy of granting leave to amend with "extreme liberality," *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (internal quotation marks omitted), the Court gives Plaintiffs leave to amend.

## IV.    CONCLUSION

The motion is granted. Plaintiffs may file an amended complaint within 14 days—if they can do so consistent with Federal Rule of Civil Procedure 11(b) and this order. Plaintiffs shall attach to the amended complaint a "redline" version showing all additions and deletions of material. (Initial Standing Order § 10(a), ECF No. 11.) Leave to add new claims, theories of the claims, or parties must be sought by a separate, properly noticed motion. Failure to file a timely amended complaint will waive the right to do so.

**IT IS SO ORDERED.**