1  CRAIG J. MARIAM (SBN: 225280)
2  cmariam@grsm.com
3  MICHAEL J. DAILEY (SBN: 301394)
   mdailey@grsm.com
4  GORDON REES SCULLY MANSUKHANI, LLP
   633 West Fifth Street, 52nd Floor
5  Los Angeles, CA 90071
   Telephone: (213) 270-7856
6  Facsimile: (213) 680-4470

7  Attorney for Defendant
   PRAGER UNIVERSITY FOUNDATION
8

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA CHANDRA and DAMANY BROWNE, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> PRAGER UNIVERSITY FOUNDATION, <br><br> Defendant. | Case No.: 2:25-CV-3984-MCS-SK <br><br> **DEFENDANT PRAGER UNIVERSITY FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date: January 5, 2026 <br> Time: 9:00 a.m. <br> Courtroom: 7C <br> Judge: Hon. Mark Scarsi <br><br> SAC filed: November 4, 2025 |

**TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on December 29, 2025, at 9:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 7C of the above titled Court, located at First Street Courthouse, 350 W. 1st Street, 7th Floor, Los Angeles, California 90012, Defendant Prager University Foundation will and hereby does respectfully move this Honorable Court for an order granting its Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (the "SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, Motion for a More Definite Statement (the "Motion"). This Motion is made on the grounds that Plaintiffs have not sufficiently alleged facts to state a claim. It is therefore proper for the Court to dismiss Plaintiffs' SAC, or in the alternative, order Plaintiffs to provide a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

This Motion is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities filed concurrently herewith, all pleadings and documents on file in this matter, and on such other and future evidence or argument as may be presented at or before the hearing on this matter.

## CERTIFICATE OF CONFERENCE

This Motion is made following the conference of counsel for the parties, which took place on November 11, 2025, pursuant to Local Rule 7-3. The parties were unable to reach agreement as to the issues contained in this Motion.

Dated: November 18, 2025

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Craig J. Mariam*
Craig J. Mariam
Michael J. Dailey
*Attorneys for Defendant*
*Prager University Foundation*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................6

II. FACTUAL BACKGROUND ..............................................................................7

III. LEGAL STANDARD ..........................................................................................8

IV. LEGAL ARGUMENT .........................................................................................9

    A.    Plaintiffs Cannot State Facts Sufficient To State A Claim Under the VPPA ..................................................................................................9

        1.    Plaintiffs fail to plausibly allege that PragerU knowingly disclosed "personally identifiable information." ......................10

        2.    An ordinary person could not identify Plaintiffs' specific viewing behavior. ....................................................................12

    B.    Alternatively, Plaintiffs must make a more definite statement of their claim. ...............................................................................................14

V. CONCLUSION ..................................................................................................15

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 8, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. (2007) ...................................................................... 8, 9, 11

*Cantu v. Tapestry, Inc.*,
   2023 WL 4440662 (S.D. Cal. July 10, 2023) ........................................................ 9

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) .................................................................... 12, 13, 14

*Ellis v. Cartoon Network, Inc.*,
   803 F.3d 1251 (11th Cir. 2015) ............................................................................ 13

*In re Hulu Priv. Litig.*,
   86 F.Supp.3d 1090 (N.D. Cal. 2015) .................................................................... 10

*In re Hulu Priv. Litig.*,
   No. C 11–03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .................. 10

*Martin v. Meredith Corp.*,
   2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023) ...................................................... 14

*Mollett v. Netflix, Inc.*,
   795 F.3d 1062 (9th Cir. 2015) ........................................................................ 10, 14

*In re Nickelodeon Consumer Privacy Litigation*,
   827 F.3d 262 (3d Cir. 2016) ..................................................................... 12, 13, 14

*Rajkumar v. Cisco Systems*,
   2008 WL3397851 (N.D. Cal. Aug. 11, 2008) ................................................. 9, 15

*Solomon v. Flipps Media, Inc.*,
   136 F.4th 41 (2d Cir. 2025) .................................................................................. 14

*Stark v. Patreon, Inc.*,
   2022 WL 7652166 (N.D. Cal. Oct. 13, 2022) ....................................................... 9

**Statutes**

18 U.S.C. § 2710(a)(1) ............................................................................................. 10

18 U.S.C. § 2710(a)(3) ............................................................................................. 10

18 U.S.C. § 2710(a)(4) .................................................................................... 10

**Rules**

Fed. R. Civ. P. 12(e) ................................................................................. 7, 9, 15

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

## MEMORANDUM AND POINTS OF AUTHORITIES

## I. INTRODUCTION

Plaintiffs—Ms. Chandra and Mr. Browne—are still unable to assert a viable claim against Defendant Prager University Foundation ("PragerU") under the Video Privacy Protection Act ("VPPA"). The Second Amended Class Action Complaint ("SAC") fails to cure any of the defects in the First Amended Complaint that this honorable Court previously dismissed. Plaintiffs' SAC should be dismissed for the following reasons.

First, Plaintiffs do not allege any facts to suggest that PragerU knowingly disclosed any of their personally identifiable information ("PII") to any third parties. At most, Plaintiffs vaguely assert in general terms that PragerU transmits website visitors' viewing information, which the Court previously found to be insufficient. *See e.g.,* SAC, ¶ 36. Plaintiffs nowhere allege that any of <u>their</u> specific PII was actually transmitted to Facebook. Instead, the SAC continues to recite vague generalities, conjecture, and conclusions masked as facts. For example, Plaintiffs claim that the purported "Figure 2" illustrates the information PragerU shares with Facebook for an unidentified "user." *See* SAC, ¶ 36. However, there is nothing to suggest any readily identifiable information was transmitted to Facebook at any time *by PragerU*—even in connection with the unidentified "user" referenced in the SAC's Figure 2. Moreover, Plaintiffs readily admit that the disclosure of the Facebook ID was not done by PragerU, but rather Facebook. *See* SAC, fn. 2 ("The Facebook ID is stored in a small piece of code known as a "cookie" that Meta [*i.e.*, Facebook] launches and stores in the internet browsers of each Meta accountholder's device(s) to distinguish between website visitors."). Accordingly, Plaintiffs fail to allege PragerU knowingly disclosed their PII *at any time*—once the Court casts aside Plaintiffs' conclusory allegations and reviews the actual facts (or lack thereof) asserted by Plaintiffs.

Second, even if Plaintiffs were to claim their actual PII was disclosed by

PragerU as required under the VPPA (which they do not), Plaintiffs cannot allege that an ordinary person could identify their specific viewing behavior based on any information sent to Facebook. Instead, Plaintiffs merely speculate that it is theoretically possible to link such information to individual consumers, but they fail to allege *their* PII was actually linked to any specific video viewing history. *See* SAC, ¶ 37 (referring to "cookies" for an unidentified user at some unknown time). This is insufficient for Plaintiffs to state a claim. Plaintiffs also readily admit that Facebook, not PragerU installed the "cookie" with the Facebook ID. *See id.*, fn. 2. And, Plaintiffs do not allege *their* Facebook IDs were knowingly transmitted by PragerU that would enable a third party to locate them. Instead, they again rest on generalities and speculate about what is possible for certain unnamed individuals. *See id.* Plaintiffs' generic pleading is improper and insufficient to state a claim.

Under these circumstances, PragerU respectfully suggests that Plaintiffs' claims must be dismissed with prejudice for failure to state a claim upon which relief may be granted. Alternatively, if the Court is inclined to permit Plaintiffs to amend their claims *yet a fourth time*—though PragerU denies Plaintiffs can plausibly amend at this point—then PragerU respectfully moves for a more definite statement of Plaintiffs' claims under Rule 12(e) with the particularity required under the federal pleadings standard and the VPPA.

## II.     FACTUAL BACKGROUND

Ms. Chandra claims she signed up for PragerU's promotional emails, and Mr. Browne claims he created an account on PragerU's website. *See* SAC, ¶¶ 7, 9. Both Plaintiffs allege they watched certain unknown prerecorded videos on PragerU's website. *See* SAC, ¶¶ 6, 9. Plaintiffs then assert in vague, conclusory terms that their "video viewing histories [were] sent along with their Facebook IDs and other stored identifiers to Facebook. . . .". *See* SAC, ¶ 12. However, Plaintiffs readily admit now for the first time that it was not PragerU who transmitted anyone's Facebook ID. Instead, it was Meta who provided the Facebook ID, not

PragerU. *See* SAC, fn. 2 ("The Facebook ID is stored in a small piece of code known as a "cookie" that Meta [*i.e.*, Facebook] launches and stores in the internet browsers of each Meta accountholder's device(s) to distinguish between website visitors.").

Putting aside the generalities, speculation, and conjecture in Plaintiffs' SAC, these bare allegations represent the sum total of their factual allegations in support of their claim under the VPPA. Plaintiffs still fail to identify what video they may have watched on PragerU's website, if any. *See* SAC, generally. They do not allege when they allegedly viewed any video. *Id.* In short, Plaintiffs fail to identify what video(s) they watched and what PII, if any, PragerU shared with Facebook or anyone else. *Id.* They likewise do not explain how any ordinary person can tie any information published by PragerU (not Facebook) to them specifically—because they fail to assert any facts specific to them in the first instance. *Id.*

These pleading defects are fatal to Plaintiffs' claims. And while PragerU cannot offer extrinsic evidence in support of this Motion, it respectfully submits that the facts preclude Plaintiffs from plausibly re-pleading their claims in a manner sufficient to meet the required standard. Accordingly, PragerU respectfully urges the Court to dismiss Plaintiffs' SAC with prejudice.

## III. LEGAL STANDARD

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must be dismissed if a plaintiff either fails to state a claim or has not alleged sufficient facts to support a claim. *Id.* at 562-563. A complaint that offers "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining a complaint's adequacy, a court must disregard conclusory allegations and legal conclusions, which are not entitled to the assumption of the truth, and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a plausible—as opposed to merely

conceivable—claim for relief. *Id*. at 679. A claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. (2007)). In other words, if plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570 (2007). In VPPA actions, courts have recognized that a complaint will not suffice if it "tenders naked assertion[s] devoid of further factual enhancement." *Stark v. Patreon, Inc.*, 2022 WL 7652166, at *4 (N.D. Cal. Oct. 13, 2022) (citing *Iqbal* and *Twombly*); *see also Cantu v. Tapestry, Inc.*, 2023 WL 4440662, *8 (S.D. Cal. July 10, 2023) ("The VPPA's standard is a higher bar, which Plaintiff's allegations fail to reach.").

Under Rule 12(e), a party may move for a more definite statement when the operative pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). When a party seeks a more definite statement, it "must point out the defects complained of and the details desired." *Id*. And when a plaintiff's complaint fails to allege the specific act or omission the defendant took with respect to the plaintiff so as to give rise to liability, a more definite statement is required. *See, e.g.*, *Rajkumar v. Cisco Systems*, 2008 WL3397851 at *3 (N.D. Cal. Aug. 11, 2008) (holding that a more definite statement is required where the plaintiff's complaint does not identify what specific act the defendant took).

### IV.  LEGAL ARGUMENT

#### A.  Plaintiffs Cannot State Facts Sufficient To State A Claim Under the VPPA.

To plead a plausible claim under the VPPA, "a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the

-9-

disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015); *see also In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2014 WL 1724344, at *7 (N.D. Cal. Apr. 28, 2014).

The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifiable information" about one of its consumers "to any person." A "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). And a "consumer," within the meaning of the VPPA, is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1).

Here, Plaintiffs have failed to plausibly allege facts to support their claims because [1] PragerU did not knowingly disclose any of Plaintiff's PII to Facebook as defined by the VPPA, and [2] an ordinary person could not identify Plaintiffs based upon any information allegedly disclosed by PragerU.

### 1. Plaintiffs fail to plausibly allege that PragerU knowingly disclosed "personally identifiable information."

Plaintiffs do not allege any facts to suggest PragerU knowingly disclosed their PII to Facebook (or any other third party). The VPPA defines PII as "includ[ing] information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710 (a)(3). Accordingly, to allege a disclosure of PII within the meaning of the VPPA, a plaintiff must allege that the defendant disclosed to a third party: "1) a consumer's identity; 2) the identity of the "specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material." *In re Hulu Priv. Litig.*, 86 F.Supp.3d 1090, 1095 (N.D. Cal. 2015). "The point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the

disclosure of information connecting a certain user to certain videos." *Id.* at 1095.

Here, Plaintiffs generally allege that PragerU somehow "caused [Plaintiffs'] video viewing histories to be sent along with their Facebook IDs and other stored identifiers to Facebook. . . ." *See* SAC, ¶ 12. But, Plaintiffs readily admit that it is not PragerU who supplies any Facebook ID to Facebook. Instead, Plaintiffs concede that "[t]he Facebook ID is stored in a small piece of code known as a "cookie" that Meta [*i.e.*, Facebook] launches and stores in the internet browsers of each Meta accountholder's device(s) to distinguish between website visitors." *See* SAC, fn. 2. In other words, Facebook installed a cookie containing users' information—not PragerU. If Facebook were a person, it is as if Facebook were staking out the front door of the PragerU building watching who came in and what video titles they took off the shelf. There is nothing to suggest PragerU ever transmitted any PII to Facebook at any point – because it was Facebook who installed the cookie with the Facebook ID by Plaintiffs' own admission.

Plaintiffs further speculate that "[a]ny ordinary person who comes into possession of a Facebook ID can easily use that information to identify a particular individual and their corresponding Facebook profile, which contains additional information such as the user's name, gender, birthday, place of residence, career, educational history, a multitude of photos, and the content of a Facebook user's posts. This information may reveal even more sensitive personal information—for instance, posted photos may disclose the identity of family members, and written posts may disclose religious preferences, political affiliations, personal interests, and more." (*Id.* at ¶ 29). But, critically, Plaintiffs never allege any of *their* PII or Facebook IDs were disclosed to Facebook. Plaintiffs cannot simply claim that this disclosure is theoretically possible. Such generalities are not enough to assert a VPPA claim. *See Twombly*, 550 U.S. at 570 (2007) (If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). Instead, Plaintiffs concede it was Facebook who disclosed users' IDs.

## 2. An ordinary person could not identify Plaintiffs' specific viewing behavior.

Because Plaintiffs never identify the specific PII they claim PragerU disclosed, they cannot plausibly allege actionable disclosure of PII. None of their allegations are sufficient to establish that an "ordinary person" could identify Plaintiffs based on any disclosures by PragerU. The Ninth Circuit has adopted an "ordinary person" test for PII that was previously set forth in *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262 (3d Cir. 2016). *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). Under this test, only disclosures that enable an ordinary person to readily identify that a particular individual has watched a specific video are actionable under the VPPA. *Id*. at 985.

The Ninth Circuit's reasoning in *Eichenberger* is especially instructive here. There, the Ninth Circuit considered the lower court's dismissal of VPPA claims where the plaintiff alleged that an ESPN channel he downloaded to his Roku digital streaming device surreptitiously sent his PII to a third party, Adobe. Specifically, the plaintiff alleged that ESPN disclosed to Adobe the names of videos he watched on the ESPN channel along with his Roku device's serial number. The Court noted that this information was insufficient to enable an ordinary person to connect the plaintiff with his video viewing history without the use of additional information that only Adobe possessed. Accordingly, the Court held that plaintiff had not plausibly alleged that ESPN disclosed his PII, and it affirmed the dismissal. *Id*. at 986.

Here, as in *Eichenberger*, Plaintiffs fail to explain how an ordinary person could connect *their* Facebook ID with her video viewing history, such that disclosure of both amounts to disclosure of their PII under the VPPA. Moreover, unlike the Plaintiff in *Eichenberger* who alleged Defendant disclosed their serial number, in this case Plaintiffs admit that it was Facebook who installed the Facebook ID on these unknown users' computers—not PragerU. Plaintiffs make

no specific allegations at all to identify what videos they watched, what PII of theirs was provided to a third-party *by PragerU*, or how an ordinary person would be able combine these data points to identify them using that data alone. Instead, Plaintiffs make conclusory allegations. But just as in *Eichenberger*, even if PragerU did disclose any Facebook IDs, these two pieces of information are useless to an ordinary person without the aid of additional data that only Facebook possesses and publishes—including the register of Facebook accounts accessible via Facebook's website, which PragerU does not control or maintain (assuming any transfer occurs, which is anything but clear in the FAC). In other words, if one to assume the actual Facebook ID were transferred (which Plaintiffs admit was not the case), an individual who obtained that Facebook ID would have to utilize information that Facebook—not PragerU—possesses to link an individual to any viewing history.

Courts in the Ninth Circuit have been clear that, without more information to be able to identify a particular consumer, this type of information is insufficient to sustain a VPPA claim under the "ordinary person" analysis. *See Eichenberger*, 876 F.3d at 986 ("We conclude that an ordinary person could not use the information that Defendant allegedly disclosed to identify an individual. Plaintiff has therefore failed to state a claim under Rule 12(b)(6)."); *Nickelodeon*, 827 F.3d at 283-84 (affirming dismissal of VPPA claim and finding that IP addresses or static digital identifiers of the sort that can only, "in theory, be combined with other information to identify a person do not count as" PII); *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1254-55 (11th Cir. 2015) (an Android ID paired with viewing history is not PII because they do not link an actual person to actual video materials). The same is true here because Plaintiffs fail to allege that (i) any of their information was transferred, or (ii) any theoretically transferred information could be linked to either of them.

Indeed, the Second Circuit, employing the "ordinary person" standard, recently held that an individual's Facebook ID is exactly like the "unique device

-13-

identifiers in *Nickelodeon*, 827 F.3d at 262, or the Roku device serial numbers in *Eichenberger*, 876 F.3d at 979." *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir. 2025). The Second Circuit noted that "[t]o an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person," which Figures 2 and 3 in the SAC make abundantly clear is the case here. *Id.* (quoting *In re Nickelodeon*, 827 F.3d at 283). "Holding otherwise would make 'the lawfulness of a disclosure depend on circumstances outside of a video service provider's control.'" *Id.* (quoting *Mollett v. Netflix*, Inc., 795 F.3d 1062, 1066 (9th Cir. 2015). Thus, Plaintiffs' sole *factual* allegations as to hypothetical "users"—as expressed in Figures 2 and 3—are woefully insufficient. An ordinary person could not link anyone's viewing history based on the information in Figure 2 and 3 if they tried, which is exactly why the Second Circuit in *Solomon* found dismissal was warranted as to that plaintiff's VPPA claim. Moreover, unlike in *Solomon*, the Plaintiffs here readily admit that the Facebook ID was not transferred by PragerU, but rather installed on Plaintiffs' computers by Facebook. *See* SAC, fn. 2. In other words, there was no transfer of PII because the sole item of PII was an ID that Facebook installed, not PragerU.

### B. Alternatively, Plaintiffs must make a more definite statement of their claim.

In *Martin v. Meredith Corp.*, 2023 WL 2118074, at *3 (S.D.N.Y. Feb. 17, 2023), the court found that the plaintiff failed to state a claim under the VPPA because his complaint "[left] off essential information for a VPPA claim, including at least … the name of the 'specific video materials' on the page [and] whether the website visitor 'requested or obtained' any videos at all, or merely read an article on the webpage."

PragerU respectfully submits that Plaintiffs have not, and cannot under the facts of this this case, plausibly state a VPPA against it. Nonetheless, to the extent the Court may be inclined to permit Plaintiffs to replead their claims yet again, then

Prager respectfully urges the Court to grant PragerU's motion in the alternative for a more definite statement under Rule 12(e). As shown above, Plaintiffs have not alleged sufficient detail about their relationship with PragerU or about what PII of theirs, if any, they claim PragerU disclosed to a third party. Without this information, Prager cannot frame a response to Plaintiffs' SAC because, like in *Martin*, Plaintiffs do not identify the specific video materials that <u>they</u> (not a hypothetical user) allegedly accessed and contained the alleged information referenced in Figure 2 of their SAC.  Thus, if Plaintiffs' SAC is not dismissed, a more definite statement is warranted. *Rajkumar v. Cisco Systems*, 2008 WL3397851 at *3 (N.D. Cal. Aug. 11, 2008).

## V.     CONCLUSION

For the foregoing reasons, PragerU respectfully asks this Court to dismiss Plaintiffs' SAC with prejudice for Plaintiffs' failure to state a plausible claim. In the alternative, if the Court is inclined to allow Plaintiffs to amend their claims, then PragerU respectfully urges the Court to require Plaintiffs to make a more definite statement of their class-action claims sufficient to enable PragerU to understand the nature of her claims against it.

Dated: November 18, 2025

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By:  */s/ Craig J. Mariam*
Craig J. Mariam
Michael J. Dailey
*Attorneys for Defendant*
*Prager University Foundation*

# **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendant Prager University Foundation certifies that this brief contains 3,231, which complies with the word limit of L.R. 11-6.1.

*/s/ Craig J. Mariam*
Craig J. Mariam

# CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of November, 2025, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record.

                                       */s/ Craig J. Mariam*
                                       Craig J. Mariam

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071