Frank S. Hedin (SBN 291289)
Hedin LLP
535 Mission Street, 14th Floor
San Francisco, CA 94105
Telephone: (305) 357-2107
Facsimile: (954) 317-0095
E-Mail: fhedin@hedinllp.com

*Counsel for Plaintiffs and the Putative Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SYLVIA CHANDRA AND DAMANY BROWNE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

PRAGER UNIVERSITY FOUNDATION,

Defendant.

Case No. 2:25-cv-03984-MCS-SK

**PLAINTIFFS' RESPONSE AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT**

Judge: Hon. Mark Scarsi

FAC filed: August 6, 2025

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. RELEVANT BACKGROUND ........ 3

III. LEGAL STANDARD ........ 4

IV. ARGUMENT ........ 5

A. Plaintiffs Have Adequately Alleged That Defendant Knowingly Disclosed Personally Identifiable Information ........ 5

1. Plaintiffs plausibly allege Prager knowingly disclosed "personally identifiable information." ........ 6

2. Plaintiffs Adequately Allege that Defendant's Disclosures Identify Their Specific Viewing Behavior ........ 9

B. Defendant Has Failed to Meet Its Burden Under Rule 12(e) ........ 14

V. CONCLUSION ........ 16

## TABLE OF AUTHORITIES


**United States Supreme Court**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................4, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................4

**United States Courts of Appeals**

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)........................................5, 11, 12, 13

*Hinds Invs., L.P. v. Angioli*,
654 F.3d 846 (9th Cir. 2011)........................................4

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015)........................................5

*N. Star Int'l v. Arizona Corp. Comm'n*,
720 F.2d 578 (9th Cir. 1983)........................................4

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025)........................................12, 13

*Turtle Island Restoration Network v. U.S. Dep't of Com.*,
672 F.3d 1160 (9th Cir. 2012)........................................14

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007)........................................14

**United States District Courts**

*Archer v. NBCUniversal Media, LLC*,
794 F. Supp. 3d 716 (C.D. Cal. 2025)........................................9, 11

*Balestrieri v. SportsEdTV, Inc.*, No. 25-CV-04046-SK, 2025 WL 2776356 (N.D. Cal. Sept. 16, 2025). ................. 12

*Ballard v. Insomniac Holdings, LLC*, No. 25-CV-00811-SI, 2025 WL 1696558 (N.D. Cal. June 17, 2025). ................... 14

*Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310 (D. Mass. 2022)........................................................................ 8

*Breeze v. Cnty. of Los Angeles*, No. 2:22-cv-06342-MCS-JPR, 2023 WL 4681600 (C.D. Cal. June 12, 2023). ......................................................................... 14

*Cheng v. Chien*, No. 2:20-cv-04229-MCS-PVC, 2021 WL 4812322 (C.D. Cal. Aug. 23, 2021)........................................................................... 15

*Cole v. LinkedIn Corp.*, No. 25-CV-01097-PCP, 2025 WL 2963221 (N.D. Cal. Oct. 20, 2025). ...................................................... 7, 8, 9, 10, 11

*Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022). ............ 8

*Fan v. NBA Props. Inc.*, No. 23-cv-05069-SI, 2024 WL 1297643 (N.D. Cal. Mar. 26, 2024)...................... 10

*Garcia v. Bandai Namco Ent. Am. Inc.*, No. 8:25-CV-00967-DOC-PVC, 2025 WL 2451033 (C.D. Cal. Aug. 7, 2025)..... 12

*Ghanaat v. Numerade Labs Inc.*, 689 F. Supp. 3d 714 (N.D. Cal. 2023)................................................... 6, 10, 14, 15

*Haines v. Cengage Learning, Inc.*, No. 1:24-cv-710, 2025 WL 2045644 (S.D. Ohio July 22, 2025)........................... 15

*Haines v. Cengage Learning, Inc.*, No. 1:24-cv-710, 2025 WL 2336089 (S.D. Ohio May 5, 2025). ............................ 15

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024). .......... 10

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) .......... 5

*Jackson v. Fandom, Inc.*,
No. 22-CV-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023). .......... 6, 10, 14

*Lee v. Plex, Inc.*,
773 F.Supp.3d 755 (N.D. Cal. 2025). .......... 10

*Manza v. Pesi, Inc.*,
784 F.Supp.3d 1110 (W.D. Wis. 2025). .......... 3, 15

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023) .......... 13, 15, 16

*Newpoint Fin. Corp. v. Bermuda Monetary Auth.*,
680 F. Supp. 3d 1151 (C.D. Cal. 2023). .......... 14

*Plotsker v. Envato Pty Ltd.,*
No. 2:24-CV-04412-MEMF-RAO, 2025 WL 2481422
(C.D. Cal. Aug. 26, 2025). .......... 12

*Rajkumar v. Cisco Sys., Inc.*,
No. C 08-1600 PVT, 2008 WL 3397851 (N.D. Cal. Aug. 11, 2008) .......... 16

*Retamco Operating, Inc. v. Carone*,
No. CV 04-2997 CBM (RZX), 2004 WL 7338703 (C.D. Cal. Aug. 27, 2004). .......... 4

*Sagan v. Apple Computer, Inc.*,
874 F. Supp. 1072 (C.D. Cal. 1994) .......... 4

*Sellers v. Bleacher Rep., Inc.*,
No. 23-CV-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023). .......... 7, 8

*Weiss Residential Rsch. LLC v. Experian Info. Sols., Inc.*, No. 8:20-CV-00861-MCS-DFM, 2020 WL 11884828 (C.D. Cal. Dec. 29, 2020). .......... 15

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710 et seq. .......... 1, 3, 5, 7, 10, 13, 14, 15

**Rules**

Fed. R. Civ. P. 12(b)(6). .......... 4, 15

Fed. R. Civ. P. 12(e) .......... 4, 14, 15

## MEMORANDUM AND POINTS OF AUTHORITY

Plaintiffs respectfully submit this memorandum of points and authorities in opposition to Defendant's Motion to Dismiss or, in the alternative, Motion for More Definite Statement filed on October 18, 2025 ("Motion" or "Mot."). ECF No. 36.

## I. INTRODUCTION

Plaintiffs bring this putative class action alleging that Defendant violated the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* ("VPPA") by disclosing its consumers' Facebook ID ("FID") numbers and other data points, along with the video titles they requested or obtained, to a third-party, Facebook. *See* Plaintiffs' Second Amended Complaint ("SAC"), ECF No. 35 ¶¶ 27, 41, 58. Defendant's violation of the VPPA arises from its decision to install tracking technology on its online and mobile applications ("Apps"), including prageru.com. *See* SAC ¶ 1. Defendant's website and Apps create and host a massive library of videos for public consumption. *See id.* Plaintiffs allege that an FID is directly linked to users' Facebook accounts, which reveals the users' name, photos, birthday, among other information. *See* SAC ¶¶ 29–30. Plaintiffs further allege that Defendant transmits or discloses its consumers' email addresses used for account registration and other personal identifiers stored on their devices in the browser's cookies to a second group of third parties, including Google, TikTok, and Twitter. *See* SAC ¶ 41.

Notwithstanding these further detailed allegations in the SAC, Defendant again moves to dismiss this Action by recycling three of its previous arguments: (1) Plaintiffs fail to allege and cannot allege there was a transfer of data; (2) Plaintiffs' VPPA claims fail because the data that is alleged to have been transferred does not qualify as PII since an ordinary person could not identify the Plaintiffs' specific viewing behavior from that transmission; and (3) "Plaintiffs have not alleged sufficient detail about their relationship with PragerU or about what PII of theirs, if any, they claim PragerU

disclosed to a third party." *See* ECF 36.

As argued herein, Defendant's motion fails for the following reasons.

**First**, Defendant's argument that Plaintiffs failed to allege Defendant knowingly disclosed their information is incorrect. Plaintiffs specifically allege their information was disclosed. *See* SAC ¶ 12 ("Pursuant to the systematic process described herein, Defendant caused Plaintiff Sylvia Chandra and Plaintiff Damany Browne's video viewing histories to be sent along with their Facebook IDs and other stored identifiers (collectively referred to herein as personally identifiable information "PII") to Facebook…."); *See* SAC ¶ 31 ("Here, by operation of the Meta Pixel and third-party tracking technology, Prager revealed Plaintiffs' Facebook IDs, and other identifiable information, along with the titles of the videos Plaintiffs' watched to Facebook."); *See* SAC ¶ 39 ("After becoming subscribers to Defendant, and within the statute of limitations period, the individual Plaintiffs had their PII transmitted or otherwise disclosed in the same manner outlined and shown in Figures 1, 2 and 3").

Further, Defendant ignores the standard at the motion to dismiss stage and attempts to defeat Plaintiffs' claim by inappropriately inferring, contrary to the allegations of the complaint, that Facebook is transferring the data to itself through its cookies. But the complaint specifically states that Defendant is the one who provides the information to Facebook. *See* SAC at ¶ 33 ("When a consumer watches a video on Defendant's Website, Facebook makes a request to Defendant's server requesting that Defendant capture and then transfer the video title as well as the user's Facebook ID (from the stored cookies on a consumer's device). Defendant then responds to Facebook's server request and sends the video title.") Thus, the allegations make clear that (a) Plaintiffs allege their PII was transferred; and (b) it is Defendant—not Facebook—that is transferring the data.

**Second**, the information disclosed—the titles of videos watched and user FID—

allows an ordinary person to determine the user's identity and video rental. *Id*. at ¶ 27. As alleged, the FID provides a direct connection to the user's Facebook account which as alleged, reveals their name and photo as well as other information. *Id*. at ¶ 29. An ordinary person can put this together to determine the user's identity. *Id*. at ¶ 30. The overwhelming majority of federal courts in California have found that the Facebook ID constitutes PII, and several courts in this district specifically have rejected the notion that an ordinary person could not identify a consumer based on the Facebook ID. *See* Section IV(A)(2), infra.

**Third,** a more definite statement is unnecessary because (a) the law is clear that VPPA claims are not subject to a heightened pleading standard; and (b) the authorities offered by Defendant are neither factually analogous to the present case nor binding authority on this action. *See Manza v. Pesi, Inc.*, 784 F.Supp.3d 1110 (W.D. Wis. 2025).

Accordingly, the Court should deny Defendant's Motion.

## II. RELEVANT BACKGROUND

On August 20, 2025, Defendant moved to dismiss the FAC, asserting the same arguments raised in the first motion to dismiss. *See* ECF No. 25. On August 21, 2025, the Court denied Defendant's motions to dismiss for non-compliance with the Court's rules governing motion practice and vacated the hearings associated with those motions. *See* ECF No. 26. In compliance with the Court's Order dated August 21, 2025, Defendant renewed its motion to dismiss. *See* ECF No. 28. On October 21, 2025, the Court entered an order granting in part the motion to dismiss and granting Plaintiffs leave to amend. *See* ECF No. 34. On November 4, 2025, Plaintiffs filed their Second Amended Complaint to clarify their allegations. On November 18, 2025, Defendant filed their motion to dismiss the SAC. *See* ECF No. 36.

## III. LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all material allegations in the complaint as true and construe them in the light most favorable to" the nonmoving party. *N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). To survive dismissal, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 679. Dismissal is only proper under Rule 12(b)(6) when there is "a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (citation omitted). Under Rule 12(b)(6), "[t]he party moving for dismissal bears the burden of proving that no claim has been stated." *Retamco Operating, Inc. v. Carone*, No. CV 04-2997 CBM (RZX), 2004 WL 7338703, at *3 (C.D. Cal. Aug. 27, 2004).

In considering a motion for more definite statement under Federal Rule of Civil Procedure 12(e), relief should be granted when the complaint is so "vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).

## IV. ARGUMENT

To state a claim under the VPPA, a plaintiff must allege "(1) the defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any consumer to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by" the statutory exceptions. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (citation modified). Plaintiffs have clearly and sufficiently alleged all four elements. Defendant only challenges the second element. But Defendant's argument fails when measured against the legion of authority, which concludes that allegations similar to those of Plaintiffs are sufficient to withstand a motion to dismiss. The Motion should be swiftly denied.

### A. Plaintiffs Have Adequately Alleged That Defendant Knowingly Disclosed Personally Identifiable Information

The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *See* 18 U.S.C. § 2710(a)(3). The Ninth Circuit has adopted the "ordinary person" test in construing this term, allowing it to reach "only that information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). District courts applying the "ordinary person" test require allegations that the following information could be identified by an ordinary person: "1) a user's identity; 2) the identity of the video material; and 3) the connection between the two[.]" *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015). Defendant challenges the first two sub-elements necessary to allege personally identifiable information. Its challenges are meritless.

**1. Plaintiffs plausibly allege Prager knowingly disclosed "personally identifiable information."**

The Motion should be denied at the outset because it recycles Defendant's argument from the first motion to dismiss almost verbatim concerning the complaint's alleged disclosure of "personally identifiable information" without taking any time to examine or confront the SAC's specific allegations. *See* ECF No. 25 at 12–13. Even if this Court were to consider the recycled argument, the Motion would still fail because it rests on a flawed understanding of Plaintiffs' allegations.

Here, Plaintiffs specifically allege that as "Defendant's consumers' request or view audio visual content on Defendant's Website, the specific title of the video is transmitted to Facebook alongside the consumers' persistent and unique Facebook identifiers, thereby revealing their Personal Viewing Information to Facebook." *See* SAC ¶ 32. Plaintiffs further detail how that transmission occurs by alleging that:

> Facebook makes a request to Defendant's server, requesting that Defendant capture and then transfer the video title as well as the user's Facebook ID (from the stored cookies on a consumer's device). Defendant then responds to Facebook's server request and sends the video title based on the consumer's interaction with Defendant's Website and the Facebook ID (from stored cookies) and other personal identifiers to Facebook in an easily readable, unencrypted format.

*See* SAC ¶ 33. Plaintiffs also include visual examples of a consumer's experience (Figure 1), a behind-the-scenes view of the network transmissions (Figure 2), and the cookies that are being transferred based on Defendant's installation of the tracking technologies. *See* SAC ¶¶ 32–40. These allegations must be accepted as true and are analogous to allegations that were found to survive motions to dismiss by courts in this Circuit. *See Ghanaat v. Numerade Labs Inc.*, 689 F. Supp. 3d 714, 716, 720 (N.D. Cal. 2023); *Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *5 (N.D. Cal. July 20, 2023).

Instead of addressing these new allegations head-on, Defendant argues that it should be immune from liability for two clearly erroneous reasons.

First, Defendant argues the SAC does not allege or "suggest PragerU ever transmitted any PII to Facebook at any point – because it was Facebook who installed the cookie with the Facebook ID by Plaintiffs' own admission." That argument is meritless. The SAC specifically alleges that Facebook requests the user's FID and video viewing information from the Defendant, and the Defendant responds by knowingly sending that information to Facebook. *See* SAC ¶ 33 ("When a consumer watches a video on Defendant's Website, Facebook makes a request to Defendant's server, requesting that Defendant capture and then transfer the video title as well as the user's Facebook ID (from the stored cookies on a consumer's device). Defendant then responds to Facebook's server request and sends [the PII]"). The SAC further details each step in the transmission process that required deliberate, intentional, and knowing acts or actions by the Defendant. *See* SAC ¶¶ 32–40. That Defendant is not the "owner" of the cookie is irrelevant to the assessment here. District courts across this country have routinely rejected the same flawed argument.

For example, the court in *Cole v. LinkedIn Corp.*, No. 25-CV-01097-PCP, 2025 WL 2963221, at *6 (N.D. Cal. Oct. 20, 2025), found that even if Facebook installs the cookies, the complaint's allegation that a defendant "transmits the information to Facebook by incorporating the [P]ixel into its website" is sufficient to show the kind of transfer necessary to allege a VPPA claim. *See also Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023) ("Defendant argues that the information alleged to have been disclosed to Facebook was transmitted by Facebook itself, not [Defendant], because it is Facebook who places the "c_user" cookie on users' browsers. But the complaint alleges that [Defendant] transmits the information to Facebook by incorporating the pixel into its website. The Court must

take these factual allegations as true and draw all reasonable inferences in plaintiff's favor. [Defendant's] argument is a factual dispute better suited to summary judgment or trial than a motion to dismiss.); *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) ("the Pixel was installed by Defendant on Defendant's website. . . therefore [it is] inaccurate for [d]efendant to claim that the transmission of information occurs "independent of any action by [defendant]."); *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 315 (D. Mass. 2022) (finding same). Plaintiffs' allegations mirror those in *Sellers*, *Czarnionka*, *Belozerov*, and *Cole*, alleging that the cookies *store* information, including the user's FID, on the user's device. *See* SAC, fn. 2. The SAC further establishes that here Defendant PragerU, like the defendants in *Sellers*, *Czarnionka*, *Belozerov*, and *Cole*, has access to the user's FID (through the stored cookie) through the Meta Pixel and transmits consumers' FIDs alongside the video title watched by the consumer at Facebook's request. *See* SAC ¶¶ 22, 33. Therefore, Defendant's argument to the contrary is without merit.

Second, Defendant argues that "Plaintiffs never allege any of their PII or Facebook IDs were disclosed to Facebook." *See* ECF 36 at 10. But that is simply not true.

Here, Plaintiffs outline the process by which Defendant discloses its users' PII in depth in paragraphs 32 through 39 of the SAC. *See* SAC ¶¶ 32-39. Plaintiffs further allege in paragraph 40 that "after becoming subscribers to Defendant, and within the statute of limitations period, the individual Plaintiffs had their PII transmitted or otherwise disclosed in the same manner outlined and shown in Figures 1, 2 and 3." Id. at ¶ 40. Plaintiffs also allege that their PII was transferred to Facebook through the process described in the complaint. *See* SAC ¶ 12 ("Pursuant to the systematic process described herein, Defendant caused Plaintiff Sylvia Chandra and Plaintiff Damany

Browne's video viewing histories to be sent along with their Facebook IDs and other stored identifiers (collectively referred to herein as personally identifiable information "PII") to Facebook and upon information and belief, other third parties, without Plaintiffs' knowledge or consent each time they requested or obtained prerecorded viewed video content through the Website"). And in addition to going above and beyond in describing the process of disclosure, Plaintiffs allege that "by operation of the Meta Pixel and third-party tracking technology, Prager revealed Plaintiffs' Facebook IDs, and other identifiable information, along with the titles of the videos Plaintiffs' watched to Facebook." *See* SAC ¶ 31.

Taking these allegations in the light most favorable to Plaintiffs, the Court should reject Defendant's attempts to mischaracterize its use of the Meta Pixel. Plaintiffs have clearly and specifically alleged that Defendant transmitted their PII to Facebook. *See Cole*, 2025 WL 2963221, at *6.

**2. Plaintiffs Adequately Allege that Defendant's Disclosures Identify Their Specific Viewing Behavior**

The Motion should be denied because it also recycles Defendant's argument from the first motion to dismiss almost verbatim (except for the removal of em dashes and the inclusion of an irrelevant discussion of nonbinding cases) concerning whether an ordinary person can identify Plaintiffs by their Facebook ID and video viewing information. *Compare* ECF 36 at 12 *with* ECF No. 25 at 13–15. Defendant's recycled argument is meritless for several reasons.

First, and most importantly, the overwhelming majority of federal courts in California have already ruled that an individual's Facebook ID qualifies as PII. *See e.g.*, *Archer v. NBCUniversal Media, LLC*, 794 F. Supp. 3d 716, 722 (C.D. Cal. 2025) ("…[d]efendants' disclosed Plaintiff's personally identifiable information by transmitting a combination of Plaintiffs' FIDs—identifying Plaintiffs; and video titles and URLs—revealing the video materials obtained or requested by Plaintiffs—to

Meta.) *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 857 (C.D. Cal. 2024) ("Most courts have found the [Facebook] Pixel discloses PII at the pleading stage, at least where plaintiffs also allege personal information existed on their Facebook page that could be used to readily identify them."); *Fan v. NBA Props. Inc.*, No. 23-cv-05069-SI, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024); *Ghanaat*, 689 F. Supp. 3d at 720; *Cole*, 2025 WL 2963221, at *5; *See Lee v. Plex, Inc.*, 773 F.Supp.3d 755, 772–73 (N.D. Cal. 2025) (collecting cases) (finding that the disclosure of the plaintiff's Facebook ID and event data constituted disclosure of PII because any person who obtains the plaintiff's Facebook ID can locate his Facebook profile and the plaintiff's real name is listed on his Facebook page); *Jackson*, 2023 WL 4670285, at *4 ("From these facts, the Court may reasonably infer that an ordinary person could readily identify a specific Facebook user on the basis of a Facebook Profile ID.").

Here, Plaintiffs' allegations are virtually identical to those in the aforementioned cases. The SAC specifically alleges that Defendant obtained its users' Facebook IDs and their video viewing data, then knowingly shared that information with third parties, including Facebook. *See* SAC ¶¶ 33, 41. Plaintiffs allege that the PII includes Facebook ID and video titles, and that an ordinary person can look up a user's Facebook account through their Facebook ID by appending it to a facebook.com URL. *See* SAC ¶ 30. Plaintiffs then explain in Figures 1, 2, and 3 how Defendant transfers that PII to Facebook. *See* SAC ¶¶ 35-38. The SAC also alleges that an ordinary person can easily identify an individual through the information transmitted by Defendant to Facebook: by linking a user's FID with the associated Facebook account, which publicly displays the account user's name, any ordinary person could identify the user with ease. *Id*. These well-pled allegations must be accepted as true and are sufficient to state a claim for a violation of the VPPA. *See e.g., Ghanaat*, 689 F. Supp. 3d at 720; *Cole*, 2025 WL 2963221, at *5.

Rather than address or attempt to distinguish these authorities, Defendant argues Plaintiffs must allege the titles of the videos they watched, what PII of theirs was provided by Defendant, and how an ordinary person could identify them with this data. *See* ECF 36 at 12–13. Defendant is incorrect, and none of the authorities cited in the Motion have announced such a rule. Regardless, Plaintiffs *do* allege the specific PII that was transmitted (*See* SAC ¶ 12), and how an ordinary person could use it to identify them. *See* SAC ¶ 30.

Defendant purports to compare this case to *Eichenberger.* ECF No. 36 at 12. However, *Eichenberger* is easily distinguishable. There, the Ninth Circuit concluded that the disclosure of certain identifiers—Roku serial numbers—to Adobe could not support a VPPA claim because *only Adobe could link those identifiers to an individual's identity* through a complex and involved process. *Eichenberger*, 876 F.3d at 979. Here, by contrast, the information disclosed by Defendant is not information that must be decoded by an expert and pieced together from a wide variety of sources to uncover the user's identity. Instead, Plaintiffs have alleged that the PII transferred here—Facebook ID alongside the specific video material requested or obtained—allows *any ordinary person* to easily link that PII to an individual's identity because the Facebook ID links directly to that user's Facebook account. *See* SAC ¶ 30.

Nearly every court in this district and Circuit has recognized this distinction between Facebook ID cases and *Eichenberger*'s device identifier holding. *See e.g., Archer*, 794 F. Supp. 3d at 722 ("those cases are distinguishable from this case as the information disclosed needed to be combined with other data to link plaintiffs' information to their identity."); *Cole*, 2025 WL 2963221, at *5 ("In sum, Cole has plausibly alleged that LinkedIn disclosed her personally identifiable information by transmitting the URLs of videos Cole watched on LinkedIn Learning 'along with' her

Facebook ID, which together would 'readily permit an ordinary person to identify [Cole]'s video-watching behavior.'") (quoting *Eichenberger*).

Second, Defendant relies on a nonbinding decision from the Second Circuit, *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 54 (2d Cir. 2025), to argue that this Court should reach the same ruling. *See* ECF 36 at 12-13. This argument fares no better than the last.

Courts in this Circuit have explicitly rejected *Solomon*'s ruling and found instead that the FIDs conveyed through the pixel code permit identification to the ordinary person. *Plotsker v. Envato Pty Ltd.,* No. 2:24-CV-04412-MEMF-RAO, 2025 WL 2481422, at *8 (C.D. Cal. Aug. 26, 2025) (finding that the Facebook ID constituted PII under the ordinary person standard and explicitly rejecting *Solomon's* application of the ordinary person standard); *Garcia v. Bandai Namco Ent. Am. Inc.*, No. 8:25-CV-00967-DOC-PVC, 2025 WL 2451033, at *8 (C.D. Cal. Aug. 7, 2025) (denying motion to dismiss, finding it "plausible that an ordinary person could identify [p]laintiff based on the information shared by Defendant's Facebook Pixel technology"); *Balestrieri v. SportsEdTV, Inc.*, No. 25-CV-04046-SK, 2025 WL 2776356, at *9 (N.D. Cal. Sept. 16, 2025) ("However, *Solomon* is neither on point nor controlling. . . Second, *Solomon* is contrary to the weight of authority in this Circuit.").

Even if *Solomon* were binding, however, it does not apply because the decision and reasoning of the Second Circuit was tied to the specific factual allegations of the complaint it analyzed, which are entirely distinct from the allegations pled in the complaint in this case. As noted in *Solomon*, the specific screenshot the court analyzed in the complaint contained "twenty-nine lines of computer code." *See Solomon*, 136 F.4th at 54. The court found that it did not believe an ordinary person could identify information contained in the code in the screenshots examined. *Id.* at 56. But here, the complaint at issue does not contain the representative screenshots analyzed in *Solomon*,

nor any screenshots reflecting twenty-nine lines of incomprehensible computer code. The SAC contains three figures provided by Plaintiffs, which, unlike the screenshots in *Solomon*, display easily discernible video titles. *See* SAC at ¶ 35-36. And the Facebook ID is not buried within lines of code—it is plainly stated next to the "c_user" cookie. *Id*. Another characteristic of this case that further distinguishes it from *Solomon* is that the images and the information contained within show transmissions that are easily comprehensible to an ordinary person.

But this is beside the point. *Solomon* simply does not apply here. The Ninth Circuit has not taken the ordinary person test to the same extreme as the Second Circuit. The test articulated in *Eichenberger*, on the other hand, does apply in this Circuit. The ordinary person standard, as expressed in *Eichenberger*, focuses on the substance of the data. In other words, whether the information transmitted was detailed enough that a third-party could figure out the identity of the user without regard for any preexisting information in its possession about the specific user.

Accordingly, Defendant's disclosure of users' FID along with the video titles constitutes PII under this Circuit's ordinary person standard. After all, the VPPA was created to protect the public from experiencing a similar privacy violation that Judge Bork experienced when his blockbuster rental history was leaked to a journalist. *Eichenberger,* 876 F.3d at 984 n.2. If Judge Bork were nominated for the Supreme Court today, and his video rental history, along with his FID or Facebook account were provided to a journalist, that disclosure would be more than enough to infer his identity —exactly the harm the VPPA is meant to protect against.[1]

[1] As a final note, the Motion presents an irreconcilable conflict because in one place it argues that this Court should adopt *Solomon* before then attempting to rely on a pre-*Solomon* decision, *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023) also from the Second Circuit. ECF No. 36, 12–13. *Martin* did not involve the Second Circuit's novel interpretation of the ordinary person test. Therefore, Defendant cannot argue for the application of a standard in one place and then argue for a conflicting standard in another.

**B. Defendant Has Failed to Meet Its Burden Under Rule 12(e)**

Finally, the Motion recycles Defendant's alternative argument from the prior motion to dismiss that asserts Defendant is entitled to a more definite statement—again in near verbatim fashion (without even updating relevant case citations to reflect certain cases are now reported in the Federal Supplement Third) as in the prior motion. *Compare* ECF No. 36 at 14–15 *with* ECF No. 25 at 15–16. Regardless, Defendant's argument is meritless.

Plaintiffs have sufficiently alleged their relationship with Defendant as consumers (ECF No. 34 at 5 ("Under this definition, Plaintiffs have pleaded sufficient facts to plausibly allege that they are subscribers under the VPPA")), the exact PII that was transmitted by Prager to Defendant, and there remains no need in this Circuit to allege the specific videos watched. *See* SAC ¶¶ 6–10, 18–19, 26, 31–40; *Ballard v. Insomniac Holdings, LLC*, No. 25-CV-00811-SI, 2025 WL 1696558, at *4 (N.D. Cal. June 17, 2025); *Ghanaat*, 689 F. Supp. 3d at 722; *Jackson*, 2023 WL 4670285, at *4. Importantly, the Motion has waived any challenge to the sufficiency of Plaintiffs' VPPA claim as directed to Defendant's disclosures to Google, TikTok, and Twitter (SAC ¶ 41) because Defendant does not mention nor substantively challenge those allegations. *See Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012) (" In any event, 'arguments raised for the first time in a reply brief are waived.'"); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Newpoint Fin. Corp. v. Bermuda Monetary Auth.*, 680 F. Supp. 3d 1151, 1163 (C.D. Cal. 2023) (declining to consider arguments raised for the first time in a reply brief); *Breeze v. Cnty. of Los Angeles*, No. 2:22-cv-06342-MCS-JPR, 2023 WL 4681600, at *3 (C.D. Cal. June 12, 2023) (declining to consider arguments raised for the first time in a reply brief); *Weiss Residential Rsch. LLC v. Experian Info. Sols.,*

*Inc.*, No. 8:20-CV-00861-MCS-DFM, 2020 WL 11884828, at *2 n.2 (C.D. Cal. Dec. 29, 2020) (declining to consider arguments raised for the first time in a reply brief). Notwithstanding the foregoing, Defendant's request for a definite statement fails for the same reasons as before.

First, Rule 12(e) is an improper vehicle through which to bring Rule 12(b)(6) arguments. *See e.g., Cheng v. Chien*, No. 2:20-cv-04229-MCS-PVC, 2021 WL 4812322, at *2 (C.D. Cal. Aug. 23, 2021) (finding the "first argument—that Chien should identify the facts that satisfy *Iqbal's* requirement—is an argument to be made under Rule 12(b)(6).").

Second, nearly every court that has considered the level of specificity required for a VPPA claim has rejected the argument that such claims are subject to a heightened pleading standard. *See Manza*, 784 F.Supp.3d at 1124 (finding the defendant's "argument fails because it rests on the assumption that a complaint must allege every fact that the plaintiff must ultimately prove."); *Ghanaat*, 689 F. Supp. 3d at 720 n.8 ("Defendant also appears to argue that plaintiffs need to allege the specific video content they requested or obtained from defendant. . . . The Court finds this argument, which defendant does not support with authority or significant analysis, unpersuasive."); *Ghanaat*, 689 F.Supp.3d at 721 ("Whether a URL sufficiently identifies a video is ultimately a factual question that should not be resolved on motion to dismiss."); *Haines v. Cengage Learning, Inc.*, No. 1:24-cv-710, 2025 WL 2336089, at *7 (S.D. Ohio May 5, 2025) (collecting cases for the proposition that "other Courts considering similar complaints have not demanded granular specificity at the pleading stage"), *report and recommendation adopted*, 2025 WL 2045644 (S.D. Ohio July 22, 2025).

Third, Defendant has failed to analogize the allegations from *Martin v. Meredith Corp.* to the allegations within the SAC. This is unsurprising—they are not

analogous. *Martin* involved an alleged VPPA violation stemming from a magazine's use of the base configuration of the Meta Pixel on its website, without any allegation that the internal webpages contained videos or video material. *See* 657 F. Supp. 3d at 284. Here, by contrast, the SAC suffers from no such pleading deficiency. *See* SAC ¶¶ 12, 27–40. Defendant's reliance on *Rajkumar v. Cisco Sys., Inc.*, No. C 08-1600 PVT, 2008 WL 3397851, at *3 (N.D. Cal. Aug. 11, 2008) is equally meritless. In *Rajkumar*, the plaintiff alleged violations of the Electronic Communications Privacy Act, California's wiretap law, and California common law against multiple defendants without alleging (1) the particular unlawful actions performed by each defendant or the basis for their vicarious liability, (2) whether the theory of his trespass claim applied to non-physical intrusions, and (3) the basis for his entitlement to damages on the defamation count. *See id.* None of the pleading defects in *Rajkumar* are present in this case either. Therefore, the Motion's alternative basis for relief should be summarily rejected.

Accordingly, Defendant's motion should be denied on this basis.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court to deny Defendant's Motion to Dismiss in its entirety.

Dated: December 15, 2025.

Respectfully submitted,

*/s/ Frank S. Hedin*
Frank S. Hedin
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (954) 317-0095
fhedin@hedinllp.com

**– and –**

Adrian Gucovschi
Nathaniel Haim Sari
**Gucovschi Law Firm, PLLC**
140 Broadway, FL 46
New York, NY 10005
Telephone: (212) 884-4230
adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

*Counsel for Plaintiffs and the Putative Class*

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,906 words, which complies with the word limit of L.R. 11-6.1.

Date: December 15, 2025
Name: Frank Hedin
Signature: /s/ Frank Hedin
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (954) 317-0095
fhedin@hedinllp.com