CRAIG J. MARIAM (SBN: 225280)
cmariam@grsm.com
MICHAEL J. DAILEY (SBN: 301394)
mdailey@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone: (213) 270-7856
Facsimile: (213) 680-4470

Attorney for Defendant
PRAGER UNIVERSITY FOUNDATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SYLVIA CHANDRA and DAMANY BROWNE, individually and on behalf of others similarly situated,

Plaintiffs,

vs.

PRAGER UNIVERSITY FOUNDATION,

Defendant.

Case No.: 2:25-CV-3984-MCS-SK

**DEFENDANT PRAGER UNIVERSITY FOUNDATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT**

Date: January 5, 2026
Time: 9:00 a.m.
Courtroom: 7C
Judge: Hon. Mark Scarsi

FAC filed: August 6, 2025



Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .......... 3

II. LEGAL ARGUMENT .......... 4

A. Plaintiffs Cannot State Facts Sufficient To State A Claim Under the VPPA .......... 4

1. Plaintiffs fail to plausibly allege that PragerU knowingly disclosed "personally identifiable information." .......... 4

2. An ordinary person could not identify Plaintiffs' specific viewing behavior. .......... 5

B. Alternatively, Plaintiffs must make a more definite statement of their claim. .......... 7

III. CONCLUSION .......... 8

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

## I. INTRODUCTION

Plaintiffs' opposition (the "Opposition") to Defendant Prager University Foundation's ("PragerU") Motion to Dismiss (the "Motion") highlights the infirmities in Plaintiffs' Second Amended Class Action Complaint ("SAC"), which cannot be cured by a further amendment. As a result, Plaintiffs' SAC should be dismissed without leave to amend for a number of reasons.

First, Plaintiffs claim that they sufficiently alleged their viewing history and personally identifiable information ("PII") was knowingly disclosed. That is not accurate. Instead, Plaintiffs only point to conclusory and vague allegations in the SAC that are unsupported by actual *facts* and should be rejected. At most, Plaintiffs vaguely assert in general terms that PragerU transmits website visitors' viewing information, which the Court previously found to be insufficient. *See e.g.*, SAC, ¶ 36. Plaintiffs are still unable to point to any facts to suggest any of their actual PII and viewing history was transmitted to Facebook at any time—even in connection with the unidentified "user" referenced in the SAC's Figure 2 that falls woefully short. Moreover, Plaintiffs readily admit that the alleged disclosure of any Facebook ID was not done by PragerU, but rather Facebook. *See* SAC, fn. 2 ("The Facebook ID is stored in a small piece of code known as a "cookie" that Meta [*i.e.*, Facebook] launches and stores in the internet browsers of each Meta accountholder's device(s) to distinguish between website visitors."). Accordingly, Plaintiffs fail to allege PragerU knowingly disclosed their PII *at any time*—once the Court casts aside Plaintiffs' conclusory allegations and reviews the actual facts (or lack thereof) asserted by Plaintiffs.

Second, Plaintiffs Opposition does not adequately address the fact that, based on Plaintiffs' facts alleged, an ordinary person could never identify their specific viewing behavior based on any information sent to Facebook. Instead, Plaintiffs merely speculate that it is theoretically possible to link such information for unknown individuals, but they fail to allege *their* PII was actually linked to

their video viewing history. *See* SAC, ¶ 37 (referring to "cookies" for an unidentified user at some unknown time). This is insufficient to state such a claim. And, Plaintiffs do not allege *their* Facebook IDs were knowingly transmitted that would enable a third party to locate them personally. Plaintiffs rest on generalities and speculation concerning unnamed "users," which is insufficient to state a claim under the VPPA.

Under these circumstances, PragerU respectfully suggests that Plaintiffs' claims must be dismissed with prejudice for failure to state a claim upon which relief may be granted. Alternatively, if the Court is inclined to permit Plaintiffs to amend their claims *yet again*—though PragerU denies Plaintiffs can plausibly amend—then PragerU respectfully moves for a more definite statement of Plaintiffs' claims under Rule 12(e) with the particularity required under the federal pleadings standard and the VPPA.

## II. LEGAL ARGUMENT

### A. Plaintiffs Cannot State Facts Sufficient To State A Claim Under the VPPA.

#### 1. Plaintiffs fail to plausibly allege that PragerU knowingly disclosed "personally identifiable information."

Plaintiffs allege in a conclusory fashion (without any facts) that their PII under the VPPA was transmitted to Facebook and other third parties. The defect with Plaintiffs' assertion remains because the SAC—like the FAC—does nothing more than allege in general terms that PragerU somehow "caused [Plaintiffs'] video viewing histories to be sent along with their Facebook IDs and other stored identifiers to Facebook. . . ." *See* SAC, ¶ 12. But, Plaintiffs readily admit that it is not PragerU who supplies any Facebook ID to Facebook. Instead, Plaintiffs concede that "[t]he Facebook ID is stored in a small piece of code known as a "cookie" that Meta [*i.e.*, Facebook] launches and stores in the internet browsers of each Meta accountholder's device(s) to distinguish between website visitors." *See* SAC, fn. 2. Critically, Plaintiffs never allege any of *their* PII or Facebook IDs

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

were disclosed to Facebook by PragerU. Plaintiffs cannot simply claim that this disclosure is theoretically possible for "users."

Once one casts aside the conclusory allegations in the SAC, all Plaintiffs allege is that for some unknown viewers of PragerU's publicly available video content, viewing history was disclosed to Facebook. However, that is not enough. This is especially true given the fact that Plaintiffs admit that it was Facebook's parent company, Meta, that installed the Facebook ID on their machines. It was not PragerU who shared this information. Moreover, a plaintiff must also allege that they had been personally logged into Facebook at the time they viewed the content from the same device so that the theoretical transmission described in the SAC could occur. *See Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *1 (N.D. Cal. July 20, 2023) (noting that plaintiff was a "registered user of social media networks Facebook and Instagram, which she accesses on the same device and browser as she uses to access [defendant's website]"). In other words, if Plaintiffs cannot plead they accessed PragerU video content only after logging into Facebook on the same device and browser, then there was no transmission of any data. In this case, Plaintiffs fail to allege they had been logged into Facebook or used the same device required to actually transmit any data to Facebook—a telling omission that still remains in the SAC. "The point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information connecting a certain user to certain videos." *In re Hulu Priv. Litig.*, 86 F.Supp.3d 1090, 1095 (N.D. Cal. 2015).

**2. An ordinary person could not identify Plaintiffs' specific viewing behavior.**

In their Opposition Plaintiffs argue that they adequately alleged an ordinary person could discern Plaintiffs' video viewing habits. That is not true as illustrated by the face of the SAC. The Ninth Circuit has adopted an "ordinary person" test for PII that was previously set forth in *In re Nickelodeon Consumer Privacy*

*Litigation*, 827 F.3d 262 (3d Cir. 2016). *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). Under this test, only disclosures that enable an ordinary person to readily identify that a particular individual has watched a specific video are actionable under the VPPA. *Id*. at 985.

As noted in the Motion, the Ninth Circuit's reasoning in *Eichenberger* is especially instructive here. There, the Ninth Circuit considered the lower court's dismissal of VPPA claims where the plaintiff alleged that an ESPN channel he downloaded to his Roku digital streaming device surreptitiously sent his PII to a third party, Adobe. Specifically, the plaintiff alleged that ESPN disclosed to Adobe the names of videos he watched on the ESPN channel along with his Roku device's serial number. The Court noted that this information was insufficient to enable an ordinary person to connect the plaintiff with his video viewing history without the use of additional information that only Adobe possessed. Accordingly, the Court held that plaintiff had not plausibly alleged that ESPN disclosed his PII, and affirmed the dismissal. *Id*. at 986.

Here, as in *Eichenberger*, Plaintiffs fail to explain how an ordinary person could connect any of the information to them—especially without any help from Facebook (who supplied the Facebook IDs according to Plaintiffs) or an intimate understanding of technology that far surpasses any "ordinary person." Figure 2 in the SAC certainly does Plaintiffs no favors in this regard. This is exactly the type of impossible-to-discern information like the serial number in *Eichenberger*. Indeed, the Second Circuit, employing the "ordinary person" standard, recently held that an individual's Facebook ID is exactly like the "unique device identifiers in *Nickelodeon*, 827 F.3d at 262, or the Roku device serial numbers in *Eichenberger*, 876 F.3d at 979." *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir. 2025). The Second Circuit further noted that "[t]o an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person," which Figure 2 makes abundantly clear is the case here.



Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

*Id.* (quoting *In re Nickelodeon*, 827 F.3d at 283). "Holding otherwise would make 'the lawfulness of a disclosure depend on circumstances outside of a video service provider's control.'" *Id.* (quoting *Mollett v. Netflix*, Inc., 795 F.3d 1062, 1066 (9th Cir. 2015). Thus, Plaintiffs' sole *factual* allegation is woefully insufficient. An ordinary person could not link anyone's viewing history based on the information in Figure 2 if they tried, which is exactly why the Second Circuit in *Solomon* found dismissal was warranted as to that plaintiff's VPPA claim.

### B. Alternatively, Plaintiffs must make a more definite statement of their claim.

Plaintiffs assert that they are entitled to plead in generalities and vagaries in the SAC without providing additional information or specific facts concerning their claims. Plaintiffs attempt to distinguish the case law in the Motion, but the fact remains that in *Martin v. Meredith Corp.*, 2023 WL 2118074, at *3 (S.D.N.Y. Feb. 17, 2023), the court found that the plaintiff failed to state a claim under the VPPA because his complaint "[left] off essential information for a VPPA claim, including at least … the name of the 'specific video materials' on the page [and] whether the website visitor 'requested or obtained' any videos at all, or merely read an article on the webpage." It is well settled that "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016); *see also In re Nickelodeon*, 827 F.3d at 285 ("[W]e think that legislators' initial focus on both libraries and video stores indicates that the [VPPA] was meant to prevent disclosures of information capable of identifying an *actual person's* reading or video-watching habits.") (emphasis in original). Here, Plaintiffs' SAC does not at all concern Plaintiffs in particular. PragerU is instead left in the dark to determine what facts are applicable to the named Plaintiffs rather than a generic, unidentified

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

"user."

PragerU respectfully submits that Plaintiffs have not, and cannot under the facts of this this case, plausibly state a VPPA against it. Nonetheless, to the extent the Court may be inclined to permit Plaintiffs to replead their claims yet again, then Prager respectfully urges the Court to grant Prager's motion in the alternative for a more definite statement under Rule 12(e). As shown above, Plaintiffs have not alleged sufficient detail about their relationship with PragerU or about what PII of theirs, if any, they claim PragerU disclosed to a third party. Without this information, Prager cannot frame a response to Plaintiffs' SAC because, like in *Martin*, Plaintiffs do not identify the specific video materials they alleged accessed that contained the alleged information referenced in Figure 2 of their SAC. Thus, if Plaintiffs' SAC is not dismissed, a more definite statement is warranted. *Rajkumar v. Cisco Systems*, 2008 WL3397851 at *3 (N.D. Cal. Aug. 11, 2008).

## III. CONCLUSION

For the foregoing reasons, PragerU respectfully asks this Court to dismiss Plaintiffs' SAC with prejudice for Plaintiffs' failure to state a plausible claim. In the alternative, if the Court is inclined to allow Plaintiffs to amend their claims again, then PragerU respectfully urges the Court to require Plaintiffs to make a more definite statement of their claims sufficient to enable PragerU to understand the nature of their claims against it.

Dated: December 22, 2025

Respectfully submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

By: */s/ Michael J. Dailey*
Craig J. Mariam
Michael J. Dailey
*Attorneys for Defendant*
*Prager University Foundation*

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendant Prager University Foundation certifies that this brief contains 1,898 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Michael J. Dailey*
Michael J. Dailey

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of December, 2025, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record.

*/s/ Michael J. Dailey*
Michael J. Dailey