UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-03984-MCS-SK | Date | January 27, 2026 |
| Title | *Chandra v. Prager Univ. Found.* | | |

Present: The Honorable   Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:   (IN CHAMBERS) ORDER RE: MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT (ECF NO. 36)

Defendant Prager University Foundation moves to dismiss Plaintiffs Sylvia Chandra and Damany Browne's Second Amended Class Action Complaint ("SAC") for failure to state a claim or, in the alternative, for a more definite statement. (Mot., ECF No. 36.) Plaintiffs filed a brief opposing the motion, (Opp'n, ECF No. 38), and Defendant filed a reply, (Reply, ECF No. 39). The Court heard argument on the motion on January 5, 2026. (Mins., ECF No. 40.)

I.   **BACKGROUND**

According to the SAC, Defendant owns and operates the website prageru.com and a variety of mobile applications through which it "creates and hosts a massive library of videos on many topics, including, but not limited to, philosophy, education, politics, and religion." (SAC ¶ 1, ECF No. 35.) Plaintiffs each created an account on Defendant's website by providing their email addresses and first and last names. (*Id.* ¶¶ 6, 9.) Both allege that they "watched prerecorded videos" on the website. (*Id.*)

Plaintiffs allege that, unbeknownst to them, Defendant employed a "systematic process" by which it would cause users' video viewing histories to be sent along with the users' "Facebook IDs and other stored identifiers" to Facebook and other third parties. (*Id.* ¶ 12.) A Facebook ID is a "unique, persistent" number that can be used "to identify a particular individual and their corresponding Facebook profile." (*Id.* ¶¶ 27, 29.) According to Plaintiffs, Defendant transmitted this information using "tracking tools that Defendant purposely installed and implemented on its Website and Apps." (*Id.* ¶ 20.) In particular, Defendant purportedly installed "Facebook's Business Tools" on its website and mobile applications, which included the "Facebook Pixel" technology. (*Id.* ¶¶ 20, 24–25.) Facebook Pixel is a program that tracks, records, and transmits to Facebook "consumers' granular Website and Apps activity, including the names of specific prerecorded videos that consumers[] requested and/or viewed." (*Id.* ¶ 25.) According to Plaintiffs, whenever they or other consumers "request or view audio visual content on Defendant's Website, the specific title of the video is transmitted to Facebook alongside the consumers' persistent and unique Facebook identifiers." (*Id.* ¶ 32.)

Plaintiffs claim this conduct violates the Video Privacy Protection Act (the "VPPA"), 18 U.S.C. § 2710. (SAC ¶¶ 54–62.) They bring a claim on behalf of themselves and a putative class that includes all persons who "used Defendant's Website or Apps to view, purchase, or request prerecorded audio visual materials using their mobile or computer browsers." (*Id.* ¶ 45.)

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los*

*Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Rule 12 also authorizes a motion "for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The moving party "must point out the defects complained of and the details desired." *Id.* "A motion for a more definite statement must be considered in light of Rule 8's liberal pleading standards in federal court"; Rule 12(e) motions "are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." *Herd v. County of San Bernardino*, 311 F. Supp. 3d 1157, 1162 (C.D. Cal. 2018) (internal quotation marks omitted).

### III.   DISCUSSION

To plead a plausible claim under the VPPA, "a plaintiff must allege that (1) a defendant is a video tape service provider, (2) the defendant disclosed personally identifiable information concerning any customer to any person, (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by [18 U.S.C. §] 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (internal quotation marks omitted). Once again, Defendant argues that Plaintiffs have not adequately pleaded that Defendant knowingly disclosed Plaintiffs' personally identifiable information ("PII"). (Mot. 10–11; *see* Order Re: Mot. to Dismiss FAC 8, ECF No. 34 (dismissing prior version of complaint for failure to "plead that Defendant disclosed [Plaintiffs'] specific PII to a third party").) Defendant also argues that the allegedly disclosed information does not fit the VPPA's definition of PII. (Mot. 12–14.) The Court considers the second argument first.

#### A.   FIDs and Viewing Histories Are PII

The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The Ninth Circuit has adopted an "ordinary person" test to determine what information satisfies the statutory definition. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). Under the ordinary person test, PII "means only that information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Id.* (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016)).

The SAC describes the Facebook Pixel technology in great detail and contains exemplar images of the information Defendant allegedly transmitted to Facebook via the Pixel. (*See* SAC ¶¶ 36–37 & figs. 2–3.) The first image references the title of a video, "Do Women Belong in Combat?" in at least two places. (*Id.* ¶ 36 & fig. 2.) The second image shows a 15-digit number next to the notation "c_user." (*Id.* ¶ 37 & fig. 3.) This number is purportedly the FID of the user who viewed the aforementioned "Do Women Belong in Combat?" video. (*Id.* ¶ 37.) Plaintiffs claim that locating this FID within the information transferred to Facebook "is not tricky, requires no technological training, and is not laborious." (*Id.*) Not surprisingly, Defendant disagrees with this characterization. (*See* Mot. 12–13.) In Defendant's view, the information depicted in these figures is indistinguishable from the information disclosed in *Eichenberger* and thus does not satisfy the ordinary person test. (*Id.*; Reply 5–7.) *Eichenberger* involved allegations that ESPN disclosed the names of videos its consumers watched on an application that was available on Roku digital streaming devices, as well as the serial number of the Roku device that consumers used to watch the videos. 876 F.3d at 981–82. That information did not satisfy the ordinary person test because it could not be used to identify an individual consumer unless it was "combined with other data" in the recipient company's possession. *Id.* at 986. Indeed, the recipient company allegedly could only identify individual consumers with the disclosed information by using a "complex Visitor Stitching technique" that linked the serial number "with other identifying information derived from an enormous amount of information collected from a variety of sources." *Id.* (internal quotation marks omitted). But here, an ordinary person needs neither a "complex" algorithm nor an "enormous" vault of information held exclusively by Facebook to locate a user's Facebook page; all that is needed is the FID itself. (*See* SAC ¶ 30.) Armed with that FID, an ordinary person can simply append the FID to the URL facebook.com/ or facebook.com/profile.php?id= to navigate to the user's specific Facebook page. (*Id.*)

Based on these allegations, which the Court is bound to accept as true and construe in Plaintiffs' favor for the purposes of a motion to dismiss, *Park*, 851 F.3d at 918, Plaintiffs have met their burden to plead that FIDs coupled with video viewing histories are PII under the VPPA. This conclusion is consistent with the vast majority of courts in the Ninth Circuit that have addressed this question at the pleading stage and have found that Facebook Pixel's disclosure of FIDs and video viewing histories can constitute a PII disclosure. *See Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 857 (C.D. Cal. 2024); *Archer v. NBCUniversal Media, LLC*, 794 F. Supp. 3d 716, 722 (C.D. Cal. 2025); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023).

Defendant urges the Court to part with this line of authority and follow *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), a recent Second Circuit decision which held that video viewing histories coupled with FIDs do not qualify as PII under the VPPA. (*See* Mot. 14.) Like the SAC here, the complaint in *Solomon* contained an "exemplar screenshot" of the information transmitted by the Pixel technology. 136 F.4th at 54 (internal quotation marks omitted). That screenshot included a video title in which the words of the title were "interspersed with many characters, numbers, and letters." *Id.* The Second Circuit concluded it was implausible that an ordinary person would understand the information presented in the screenshot to be a video title. *Id.* Moreover, the panel found that it was implausible that an ordinary person would be able to identify an unlabeled number "embedded" in "some twenty-nine lines of computer code" as an FID. *Id.*

The Court declines to follow *Solomon* for two reasons. First, the allegations in *Solomon* are readily distinguishable from those in the SAC. The video title presented in Plaintiffs' exemplar screenshot is not "interspersed" with any "characters, numbers, and letters." (*See* SAC ¶ 36 & fig. 2.) Instead, the screenshot includes the phrase "{"title":"Do Women Belong in Combat? | PragerU"}." (*Id.*) The Court has no trouble concluding that Plaintiffs have adequately alleged that an ordinary person would be able to understand that information as a video title. Second, courts in this circuit have uniformly declined to follow *Solomon*'s application of the ordinary person test. *See, e.g.*, *Garcia v. Bandai Namco Ent. Am. Inc.*, No. 8:25-cv-00967-DOC-PVC, 2025 WL 2451033, at *8 (C.D. Cal. Aug. 7, 2025); *Plotsker v. Envato Pty Ltd.*, No. 2:24-cv-04412-MEMF-RAO, 2025 WL 2481422, at *8 n.7 (C.D. Cal. Aug. 26, 2025); *Balestrieri v. SportsEdTV, Inc.*, No. 25-cv-04046-SK, 2025 WL 2776356, at *9 (N.D. Cal. Sept. 16, 2025). Like its Ninth Circuit peers, this Court is not persuaded by the *Solomon* court's rather limiting view of the ordinary person's technological capabilities. *See Plotsker*, 2025 WL 2481422, at *8 n.7 ("The ordinary person that the Second Circuit envisions appears to be one who is particularly unsophisticated or unmotivated to understand the information presented.")

As the march of technology moves forward, the scope of information that is accessible and understandable to an "ordinary person" will almost certainly increase. Indeed, the *Eichenberger* court expressly recognized that "modern technology may indeed alter—or may already have altered—what qualifies under the statute," and even speculated that "[a] Facebook link . . . may very well readily enable an 'ordinary person' to identify an individual." 876 F.3d at 986. Nearly a decade after *Eichenberger*, it is entirely plausible that an ordinary person would be able to take the information transmitted by the Facebook Pixel technology and connect a specific

individual with a specific video title by following the procedure outlined in the SAC. (*See* SAC ¶ 30.) At the very least, there is a factual question as to whether an ordinary person would be able to identify the video titles and FIDs within the Pixel output that is not appropriate for resolution on the pleadings. *Garcia*, 2025 WL 2451033, at *8.

In all, Plaintiffs have adequately alleged that the FIDs and video viewing histories disclosed by Facebook Pixel satisfy the ordinary person test and thus qualify as PII under the VPPA.

### B. Plaintiffs Have Adequately Alleged that Defendant Knowingly Disclosed Plaintiffs' PII

Having concluded that video viewing histories coupled with FIDs fit the VPPA's definition of PII, the Court now turns to Defendant's argument that Plaintiffs have not plausibly alleged that Defendant knowingly disclosed Plaintiffs' PII specifically. (Mot. 10–11.) To adequately plead a disclosure of PII under the VPPA, a plaintiff must allege that the defendant disclosed to a third party "1) a consumer's identity; 2) the identity of specific video materials; and 3) the fact that the person identified requested or obtained that material." *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (internal quotation marks omitted).

While the Court found that Plaintiffs failed to sufficiently allege a disclosure of *their* specific PII in the First Amended Complaint, (Order Re: Mot. to Dismiss FAC 7–8), Plaintiffs have since cured their pleading deficiencies. The SAC alleges that "Defendant caused Plaintiff Sylvia Chandra and Plaintiff Damany Browne's video viewing histories to be sent along with their Facebook IDs and other stored identifiers . . . to Facebook." (SAC ¶ 12; *see also id.* ¶¶ 40, 58.) Moreover, Plaintiffs allege that they both maintained Facebook accounts that included their "name, photos, genders, Facebook friends, and Facebook handles, among other personal information, publicly available to anyone who had their Facebook ID." (*Id.* ¶ 31.) Taken together, these allegations raise a plausible inference that Defendant disclosed Plaintiffs' specific PII. *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 772 (N.D. Cal. 2025) (holding that allegations were sufficient to state a claim under the VPPA when a plaintiff alleged that the defendant "disclosed *his* Facebook User ID and *his* email address, along with event data, like the title of the videos viewed" (emphases added) (internal quotation marks omitted)); *see also Heerde*, 741 F. Supp. 3d at 857 (dismissing VPPA claim where Plaintiffs failed to "identify what information on their Facebook pages, if any, was viewable and could be used to identify them").

Defendant raises a new argument that the SAC alleges that Facebook, rather than Defendant, was the one who collected and transmitted Plaintiffs' PII. (*See* Mot. 11.) The SAC contains an allegation that a "Facebook ID is stored in a small piece of code known as a 'cookie' that Meta [i.e., Facebook] launches and stores in the internet browsers of each Meta accountholder's device(s) to distinguish between website visitors." (SAC ¶ 37 n.2.) According to Defendant, this amounts to a concession that Facebook installed the cookies containing Plaintiffs' FIDs, so Defendant never possessed the FIDs and thus never transferred any information to Facebook. (Mot. 11.) The Court is not persuaded. Not only do Plaintiffs allege that Defendant "purposely installed and implemented" the Facebook Pixel technology on its website and mobile applications, (SAC ¶ 20), they also specifically allege that Defendant is the transferor of Plaintiffs' and other users' PII:

> When a consumer watches a video on Defendant's Website, Facebook makes a request to Defendant's server, requesting that Defendant capture and then transfer the video title as well as the user's Facebook ID (from the stored cookies on a consumer's device). *Defendant then responds to Facebook's server request and sends the video title based on the consumer's interaction with Defendant's Website and the Facebook ID (from stored cookies) and other personal identifiers to Facebook* in an easily readable, unencrypted format.

(*Id.* ¶ 33 (emphasis added).) Since the SAC directly alleges that Defendant transmitted users' PII to Facebook using technology that Defendant purposely installed and implemented on its website and mobile applications, Plaintiffs have met their burden to plead a transfer of information necessary to support a VPPA claim. *See Cole v. LinkedIn Corp.*, __ F. Supp. 3d __, No. 25-cv-01097-PCP, 2025 WL 2963221, at *6 (N.D. Cal. Oct. 20, 2025) (holding a complaint adequately alleged that a video tape service provider disclosed a user's PII where the complaint specifically alleged that the provider "knowingly installed" the Facebook Pixel technology on its website (internal quotation marks omitted)). At most, the allegation that Facebook installs the cookies on users' browsers raises a factual dispute as to whether Facebook or Defendant is better regarded as the transferor of Plaintiffs' PII, which the Court will not resolve on a motion to dismiss. *Sellers v. Bleacher Rep., Inc.*, No. 23-cv-00368-SI, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023).

In all, Plaintiffs have adequately pleaded that Defendant knowingly disclosed their specific PII to Facebook.

### C.    More Definite Statement

Defendant moves, in the alternative, for a more definite statement under Federal Rule of Civil Procedure 12(e). (Mot. 14–15.) Defendant posits that it cannot reasonably prepare a response to the SAC because Plaintiffs "do not identify the specific video materials" they accessed. (*Id.*) As an initial matter, this appears to be a disguised Rule 12(b)(6) argument that Plaintiffs have not pleaded sufficient facts to state a claim under the VPPA. Raising such an argument in a Rule 12(e) motion is procedurally improper. *Cheng v. Chien*, No. 2:20-cv-04229-MCS-PVC, 2021 WL 4812322, at *2 (C.D. Cal. Aug. 23, 2021).

The request is also not well taken on the merits. While a plaintiff must allege "the identity of specific video materials" it accessed, *In re Hulu Privacy Litig.*, 86 F. Supp. 3d at 1095 (internal quotation marks omitted), there is no requirement that a plaintiff must plead specific video *titles*, *see Haines v. Cengage Learning, Inc.*, No. 1:24-cv-710, 2025 WL 2336089, at *7 (S.D. Ohio May 5, 2025) (collecting cases). Plaintiffs both allege that they "watched prerecorded videos on Defendant's Website." (SAC ¶¶ 6, 9.) The Court is satisfied that these allegations are sufficient at the pleading stage to identify the specific video materials Plaintiffs claim to have accessed such that Defendant can prepare a response to the SAC. In view of Rule 8(a), granular details about Plaintiffs' viewing history are better probed through discovery than through pleading.

### IV.    CONCLUSION

The motion is denied. Defendant shall file an answer within 14 days of entry of this Order. *See* Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**