Frank S. Hedin (SBN 291289)
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

*Counsel for Plaintiffs and Proposed Settlement Class*

[Additional counsel of record on signature page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

SYLVIA CHANDRA and DAMANY BROWNE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

PRAGER UNIVERSITY FOUNDATION,

Defendant.

Case No. 2:25-cv-03984-MCS-SK

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge: Hon. Mark C. Scarsi
Mag. Judge: Hon. Steve Kim
Courtroom: 7C
Hearing Date: October 5, 2026
Hearing Time: 9:00 a.m.

Complaint Filed: May 5, 2025

# TABLE OF CONTENTS


NOTICE OF MOTION ..... vi

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..... 2

III. SUMMARY OF THE PROPOSED SETTLEMENT ..... 4

- A. The Settlement Provides Substantial Relief to the Settlement Class ..... 4
- B. The Allocation of Relief Among Settlement Class Members ..... 4
- C. The Settlement Class Is a Refinement of the Class Defined in the Operative Complaint ..... 5
- D. The Settlement's Release ..... 6
- E. The Settlement Agreement Allows Class Counsel to Seek an Attorneys' Fee Award and Plaintiffs to Seek Service Awards ..... 7

IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ..... 8

- A. The Settlement Class Satisfies the Rule 23(a) Prerequisites ..... 8
  - 1. Numerosity ..... 8
  - 2. Commonality ..... 8
  - 3. Typicality ..... 9
  - 4. Adequacy ..... 9
- B. The Requirements of Rule 23(b)(3) Are Satisfied ..... 10
  - 1. Common issues of law and fact predominate ..... 10
  - 2. Class treatment of Plaintiffs' claims is superior ..... 11

V. SETTLEMENT APPROVAL IS WARRANTED ..... 12

- A. The Strengths and Risks of Plaintiffs' Case ..... 12
- B. Further Litigation Would Be Risky, Expensive, Complex, and Lengthy ..... 14
- C. The Risks Associated with Certifying the Class and Maintaining the Case as a Class Action Through Trial ..... 14
- D. The Relief Offered in the Settlement Is More Than Adequate ..... 14
- E. The Settlement Is Informed by Sufficient Discovery to Permit an Informed Decision ..... 15
- F. Counsel Believes the Settlement Is an Excellent Result ..... 16

G. Governmental Participation and the Settlement Class's Reaction to the Proposed Settlement are Not at Issue Here .......... 17

VI. THE PROPOSED NOTICE PROGRAM, SETTLEMENT ADMINISTRATOR, AND PROCESS FOR CLAIMS, OPT-OUTS, AND OBJECTIONS SHOULD BE APPROVED .......... 18

A. The Proposed Notice Plan .......... 18

1. Class Notice .......... 18

2. CAFA Notice .......... 19

B. The Settlement Administrator .......... 19

C. Opt-Outs and Objections: Timeline and Instructions .......... 20

D. The Claims Process .......... 20

1. The Claim Form .......... 20

2. The Estimated Claim Rate .......... 21

VII. OTHER CASES AFFECTED .......... 21

VIII. THE PROPOSED FINAL APPROVAL HEARING SCHEDULE .......... 21

IX. CONCLUSION .......... 222

# TABLE OF AUTHORITIES

Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......... 8, 10

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015).......... 18

*Bertoia v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) .......... 19

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F. 3d 935 (9th Cir. 2011).......... 7, 20, 21

*Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021) .......... 20

*Campbell v. Facebook, Inc.*, No. 13-cv-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017), *aff'd*, 951 F. 3d 1106 (9th Cir. 2020).......... 17

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) .......... 12

*Class Pls. v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) .......... 4

*Edwards v. Nat'l Milk Producers Fed'n,* No. 11-CV-04766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017) .......... 21

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017).......... 3, 12

*Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981).......... 19

*In re Facebook, Inc. Internet Tracking Litigation*, No. 22-16903, 2024 WL 700985 (9th Cir. Feb. 21, 2024) .......... 14

*Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016) .......... 14, 17

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) .......... 11

*In re Google LLC St. View Elec. Commc'ns Litig.,* No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .......... 17

*In re Google Plus Profile Litig.*, No. 5:18-cv06164-EJD (VKD), Dkt. 96 (N.D. Cal. Oct. 15, 2020) .......... 17

*In re Google Plus Profile, Litig.,* No. 18-CV-06164-EJD-VKD, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) .......... 15

*In re Google Referrer Header Priv. Litig.*, No. 5:10-CV-04809-EJD, 2023 WL 6812545 (N.D. Cal. Oct. 16, 2023).......... 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).......... 9, 10, 11

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .......... 9

*In re HighTech Emp. Antitrust Litig.*, 985 F.Supp.2d 1167 (N.D. Cal. 2013) .......... 11

*Hughes*, 2025 WL 1720295 .................... 13

*In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) (en banc)..... 16

*Jabbari v. Farmer*, 965 F.3d 1001 (2020).................... 16

*Linney v. Cellular Alaska P'ship,* 151 F.3d 1234 (9th Cir.1998) .................... 18

*Martin v. Sysco Corp.*, No. 1:16-cv-00990-DAD-SAB, 2019 WL 3253878 (E.D. Cal. July 19, 2019).................... 20

*McDonald, et al. v. Kiloo A/S, et al.,* No. 3:17-cv-04344-JD, ECF No. 406 (N.D. Cal. Apr. 12, 2021) .................... 17

*Newton v. Am. Debt Servs.*, 854 F. Supp. 2d 712 (N.D. Cal. 2012).................... 14

*Nixon et al v. Pond5, Inc.,* Case No. 1:24-cv-05823-JLR (July 21, 2025).................... 12

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008).................... 5, 18

*In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934 (9th Cir. 2015).................... 12

*Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014) .................... 18

*In re Oracle Sec. Litig.,* No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) .................... 4, 5, 18

*Poertner v. The Gillette Co.*, No. 6:12-v-00803-GAP-DAB, Dkt. 168 (M.D. Fla. Aug. 21, 2014) .................... 17

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000).................... 8

*Smith v. Cardinal Logistics Mgmt. Corp.,* No. 07-cv-02104-SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008).................... 11

*Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025) .................... passim

*St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919) .................... 14

*Staton v. Boeing Co.*, 327 F.3d 938 (2003) .................... 9

*Valliere v. Tesoro Refin. & Mktg. Co. LLC*, No. 17-cv-00123-JST, 2020 WL 13505042 (N.D. Cal. June 26, 2020) .................... 9

*In re Vizio, Inc., Consumer Privacy Litig.*, 8:16-ml-02693-JLS-KES, 2019 WL 12966639 (C.D. Cal. July 31, 2019) .................... 15

*In re: Vizio, Inc., Consumer Privacy Litig.*, No. 8:16-ml02693-JLS-KES, 2019 WL 12966638 (C.D. Cal. July 31, 2019) .................... 17

*Wakefield v. ViSalus, Inc.,* 51 F. 4th 1109 (9th Cir. 2022).................... 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................... 8

*Wolf v. Permanente Medical Group, Inc.*, No. 17-cv-05345-VC, 2018 WL 5619801 (N.D. Cal. Sept 14, 2018).................... 7

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) .................. 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020), *aff'd,* No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) .................. 9

Statutes

18 U.S.C. § 2710 *et seq*. .................. 1

18 U.S.C. § 2710(a)(3) .................. 13

18 U.S.C. § 2710(a)(4) .................. 13

18 U.S.C. § 2710(b)(2)(B) .................. 13

18 U.S.C. § 2710(c) .................. 14

18 U.S.C. § 2710(c)(2)(A) .................. 15

Rules

Fed. R. Civ. P. 23(a) .................. 8, 9

Fed. R. Civ. P. 23(a)(3) .................. 9

Fed. R. Civ. P. 23(a)(4) .................. 9

Fed. R. Civ. P. 23(b) .................. 8

Fed. R. Civ. P. 23(b)(3) .................. 10, 11

Fed. R. Civ. P. 23(e) .................. vi

Fed. R. Civ. P. 23(e)(2) .................. 11

Treatises

7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 (3d ed. 2005) .................. 11

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97 (2009) .................. 8

Other Authorities

Fed. Trade Comm'n, *Consumers & Class Actions: A Retrospective & Analysis of Settlement Campaigns* (Sept. 2019) .................. 24

Federal Judicial Center, *Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) .................. 21

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 5, 2026, at 9:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable Mark C. Scarsi in Courtroom 7C of the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, Plaintiffs Sylvia Chandra and Damany Browne ("Plaintiffs"), on behalf of themselves and the proposed Settlement Class, by and through their counsel, shall and hereby do respectfully move the Court, on an unopposed basis, for entry of an Order, pursuant to Federal Rule of Civil Procedure 23(e), in the above-captioned action (the "Action"):

1. Certifying the proposed Settlement Class for purposes of settlement;

2. Provisionally appointing Plaintiffs as Class Representatives of the Settlement Class, and Hedin LLP and Gucovschi Law Firm, PLLC as Class Counsel for purposes of settlement;

3. Granting preliminary approval of the proposed class action settlement between Plaintiffs and Defendant Prager University Foundation ("Defendant" or "PragerU") as fair, adequate, and reasonable, based upon the terms set forth in the Parties' Settlement Agreement ("Settlement Agreement"),[1] including payment by Defendant of a non-reversionary, all-cash Settlement Fund of $600,000 for the benefit of the Settlement Class;

4. Approving the allocation of the Settlement Fund as contemplated in the Settlement Agreement;

5. Approving the form and substance of the proposed short-form Class Notice (to be disseminated by e-mail and, where necessary, by postal mail), long-form Class Notice (to be posted on the Settlement Website), and Claim Form; the manner and timing

[1] Capitalized terms not otherwise defined herein have the meanings set forth in the Settlement Agreement, attached as **Exhibit 1** to the Hedin Decl. Citations to "SA ¶ __" refer to the numbered paragraphs of the Settlement Agreement, and citations to "SA Ex. __" refer to its exhibits.

of disseminating notice to the Settlement Class (the "Settlement Class Notice Program"); and the appointment of Simpluris, Inc. as the Settlement Administrator;

6. Setting deadlines for Settlement Class Members to exercise their rights in connection with the proposed Settlement; and

7. Scheduling a Final Approval Hearing to consider final approval of the Settlement, Class Counsel's application for an Attorneys' Fee Award, and Plaintiffs' application for Service Awards.

This Motion is based on: this Notice of Motion; the Memorandum of Points and Authorities below; the Declaration of Frank S. Hedin ("Hedin Decl.") and the exhibits thereto, including the Settlement Agreement and its exhibits; the Declaration of Adrian Gucovschi ("Gucovschi Decl."); the Declaration of Jacob Kamenir of Simpluris, Inc. regarding the proposed Settlement Class Notice Program ("Simpluris Decl."); the [Proposed] Preliminary Approval Order submitted herewith; the Court's record in this matter; and such oral and documentary evidence as may be presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3. Defendant does not oppose the relief requested in this Motion. *Id.*[2]

[2] On July 6, 2026, following Plaintiffs' notice of settlement, the Court dismissed this Action without prejudice, vacated all pending dates, retained jurisdiction, and directed that any motion for preliminary approval be filed within forty-five days. ECF No. 62. The Court thereafter extended that deadline to September 3, 2026. ECF No. 64. This Motion is timely filed pursuant to those Orders. To the extent necessary, Plaintiffs respectfully request that the Court reopen the Action for the purpose of considering and effectuating the Settlement.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs allege that Defendant Prager University Foundation—which hosts a large library of prerecorded videos on its PragerU website—installed Meta Platforms, Inc.'s ("Facebook") tracking pixel on that website and thereby disclosed to Facebook the titles of the videos its account holders watched, together with their unique Facebook IDs, without their informed, written consent, in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq*. (the "VPPA").

Plaintiffs litigated this case vigorously for more than a year, defeating Defendant's motion to dismiss the operative Second Amended Complaint in a reasoned order holding that Plaintiffs plausibly alleged each element of a VPPA claim. ECF No. 41. Defendant answered, asserting twelve affirmative defenses, ECF No. 43, and the Parties proceeded into discovery. In the meantime, the Parties attended a full-day mediation before the Hon. Gerald E. Rosen (Ret.) of JAMS on June 16, 2026. The negotiations during the mediation, followed by further negotiations following the mediation with Judge Rosen's assistance, ultimately resulted in the Parties agreeing to resolve the matter on the terms set forth in the Settlement Agreement, subject to the Court's approval. Hedin Decl. ¶ 7.

The Settlement requires Defendant to pay $600,000 to establish a non-reversionary, all-cash Settlement Fund for the benefit of a Settlement Class of approximately 35,000 persons, SA ¶¶ 38, 41—equating to a gross recovery of approximately **$17.14** per Settlement Class Member, well above the per-class-member recoveries in other court-approved VPPA settlements involving Meta Pixel disclosures. Hedin Decl. ¶ 16 & Ex. 2. At an estimated 5% claims rate, each Approved Claimant would receive approximately **$250** should the Court approve the requested amounts of Attorneys' Fee and Service Awards and Settlement Administration Expenses. *Id.* ¶ 17. The Settlement achieves this result while eliminating substantial litigation risks, including the unsettled state of the law after *Solomon*, Defendant's contentions that it is not a "video tape service provider," that users of its free website are not "consumers,"

that it did not "knowingly" disclose any consumer's personally identifiable information to any third party, and that it obtained the requisite informed consent prior to making any disclosures, as well as the additional risks posed by class certification, summary judgment, trial, and any appeals that might ensue.

Given the meaningful relief recovered by the proposed Settlement, and in view of the significant risks continued litigation would present, Plaintiffs respectfully submit that the proposed Settlement represents a fair, reasonable, and adequate resolution to this litigation. Accordingly, the Court should (1) preliminarily approve the Settlement, (2) provisionally certify the Settlement Class and appoint Plaintiffs as Class Representatives and their counsel as Class Counsel, (3) approve the Settlement Class Notice Program and appoint Simpluris, Inc. as Settlement Administrator, (4) establish a procedure and timetable for settlement administration, and (5) set a Final Approval Hearing.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a Virginia corporation headquartered in Sherman Oaks, California, that hosts prerecorded videos on its website, prageru.com, where users may create accounts by providing their names and e-mail addresses. Second Amended Class Action Complaint ("SAC"), ECF No. 35, ¶¶ 1, 4, 6–7, 9–10, 14. Plaintiffs allege that Defendant installed the Facebook (or "Meta") Pixel on its website, so that each time an account holder watched a video, Defendant transmitted to Meta the video's title together with the viewer's unique, persistent Facebook ID ("FID"), *id.* ¶¶ 20–39, and that because anyone can reach a Facebook user's profile by appending the FID to a Facebook URL, these transmissions identified specific individuals as having watched specific videos. *Id.* ¶¶ 29–31. Plaintiffs each created an account, watched videos using their account, and had their personally identifiable viewing information transmitted to Meta. *Id.* ¶¶ 6–13, 40.

Plaintiff Chandra commenced this Action on May 5, 2025. ECF No. 1. After Defendant moved to dismiss, ECF No. 19, Plaintiffs filed a First Amended Complaint adding Plaintiff Browne. ECF No. 21. Defendant moved to dismiss again, ECF Nos. 25, 28, and the Court granted the motion with leave to amend, concluding that Plaintiffs had

not adequately pleaded that Defendant disclosed their specific personally identifiable information to a third party. ECF No. 34. Plaintiffs filed the operative SAC on November 4, 2025, ECF No. 35, and Defendant moved to dismiss a third time, arguing that Plaintiffs had not alleged a knowing disclosure, that FIDs and video titles are not "personally identifiable information" under the "ordinary person" standard, and that the Court should follow *Solomon*. ECF No. 36. On January 27, 2026, the Court denied the motion, holding that FIDs coupled with viewing histories are PII under *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017), declining to follow *Solomon*, and holding that Plaintiffs adequately alleged a knowing disclosure—while noting "a factual question as to whether an ordinary person would be able to identify the video titles and FIDs within the Pixel output" and "a factual dispute as to whether Facebook or Defendant is better regarded as the transferor of Plaintiffs' PII." ECF No. 41 at 6–7.

Defendant answered on February 10, 2026, asserting twelve affirmative defenses, including lack of Article III standing, the unavailability of class treatment, and limitation-of-liability provisions in its terms of service. ECF No. 43. The Parties thereafter exchanged initial disclosures and engaged in discovery concerning, among other things, the operation of the Meta Pixel on Defendant's website, the number of persons who created accounts and watched videos during the relevant period, and Defendant's insurance coverage. Hedin Decl. ¶ 6. On June 16, 2026, the Parties mediated before the Hon. Gerald E. Rosen (Ret.) of JAMS, former Chief Judge of the Eastern District of Michigan, reached agreement on material terms of a proposed settlement, and memorialized those terms in a binding term sheet in the following weeks with Judge Rosen's continued assistance. *Id.* ¶ 7. Plaintiffs filed a notice of settlement on July 2, 2026, ECF No. 60; the Court dismissed the Action without prejudice, retained jurisdiction, and directed that any motion for preliminary approval be filed within forty-five days, ECF No. 62, later extended to September 3, 2026, ECF No. 64; and the Parties formally executed the Settlement Agreement on September 3, 2026. Hedin Decl. ¶ 7 & Ex. 1. The Settlement is the product of informed, arm's-length negotiations before an

experienced neutral, undertaken after Plaintiffs' counsel had investigated the claims, prevailed on Defendant's motion to dismiss the operative complaint, and obtained information from Defendant in discovery in connection with the mediation sufficient to evaluate the size of the Settlement Class and the strengths and weaknesses of the claims. *See* Hedin Decl. ¶¶ 7-18; Gucovschi Decl. ¶¶ 6-12.

## III. SUMMARY OF THE PROPOSED SETTLEMENT

### A. The Settlement Provides Substantial Relief to the Settlement Class

Defendant will establish a $600,000 all-cash Settlement Fund, to be held in an interest-bearing qualified settlement fund. SA ¶¶ 41, 50–54. No portion will revert to Defendant: the Settlement Fund, with interest, less Court-approved Settlement Administration Expenses, any Attorneys' Fee Award, and any Service Awards (the "Net Settlement Fund"), will be distributed in its entirety to Settlement Class Members who submit Valid Claims, with any residual redistributed to Approved Claimants or, if infeasible, paid to a *cy pres* recipient. SA ¶¶ 21, 41, 59, 64. The gross per-Settlement Class Member share is approximately $17.14. Hedin Decl. ¶ 16. At an assumed 5% claims rate—or approximately 1,750 Approved Claimants—each Approved Claimant's cash payment will be approximately $250, after deducting the amount Plaintiffs' counsel intend to seek as an Attorneys' Fee Award (inclusive of out-of-pocket expenses) ($124,728.73), Service Awards ($10,000 in total), and Settlement Administration Expenses at the agreed cap ($25,000), leaving a Net Settlement Fund of no less than $440,271.27. *Id.* Even at a 10% claims rate, each net share would be approximately $125. *Id.*

### B. The Allocation of Relief Among Settlement Class Members

The Net Settlement Fund will be distributed to all Approved Claimants on a *pro rata* and equal basis; each Settlement Class Member may submit one Claim Form; and Cash Awards will be paid within thirty days after the Effective Date by check or, at the claimant's election, electronically. SA ¶¶ 21, 59–60, 62, 81. "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards

of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig.,* No. C-90-0931-VRW, 1994 WL 502054, at *1-2 (N.D. Cal. June 18, 1994) (citing *Class Pls. v. City of Seattle,* 955 F.2d 1268, 1284-85 (9th Cir. 1992)). The plan here is fair, reasonable, and adequate because it attempts to "allocate the settlement funds to class members based on . . . the strength of their claims on the merits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (citing *In re Oracle Sec. Litig.,* 1994 WL 502054, *1-2 (other internal citation omitted)). Every Settlement Class Member asserts the same VPPA claim, arising from the same conduct, with the same statutory measure of damages; an equal *pro rata* allocation is therefore the fairest method of distribution. Checks will be valid for 180 days; funds remaining from uncashed or undeliverable checks will be redistributed *pro rata* to Settlement Class Members who received their initial payments if each secondary payment would be at least $10.00, and otherwise paid, subject to Court approval, as a *cy pres* award to the Electronic Privacy Information Center, a 501(c)(3) digital-privacy organization unaffiliated with the Parties or their counsel. SA ¶¶ 64, 83.

### C. The Settlement Class Is a Refinement of the Class Defined in the Operative Complaint

The SAC proposes a class of "[a]ll persons in the United States who, during the maximum period of time permitted by law, used Defendant's Website or Apps to view, purchase, or request prerecorded audio visual materials using their mobile or computer browsers." SAC ¶ 45. The Settlement Agreement defines the Settlement Class as:

> All persons in the United States who created accounts with Defendant's "PragerU" website and subsequently watched a video on Defendant's "PragerU" website at any time between May 5, 2023, and May 5, 2025.

SA ¶¶ 38, 46. Excluded are the Released Persons and their employees, officers, directors, agents, representatives, and immediate family members; Class Counsel; and the Court, its staff, and their immediate family members. SA ¶ 47. The Settlement Class is estimated at approximately 35,000 persons, all identified by name in Defendant's records. SA ¶¶

38–39, 74. The Settlement Class refines the pleaded class in two respects: it is limited to persons who created accounts—the users with the strongest claim to "consumer" status under the VPPA, *see* ECF No. 41 at 3, and the persons whom Defendant can identify by name from its own records, SA ¶ 74, permitting direct notice—and its period runs from May 5, 2023, two years before the original Complaint consistent with the VPPA's two-year limitations period, through the May 5, 2025 filing date.

### D. The Settlement's Release

In exchange for the Settlement benefits, the Settlement Agreement releases Defendant and its current, former, and future parents, predecessors, successors, affiliates, assigns, subsidiaries, divisions, and related corporate entities, and their respective employees, officers, directors, board members, shareholders, assigns, agents, trustees, administrators, executors, insurers, reinsurers, attorneys, and customers (the "Released Persons"), SA ¶ 32, from the following "Released Claims":

> [A]ny and all causes of action, suits, claims, liens, demands, judgments, costs, damages, obligations, attorney fees (except as otherwise provided herein), and all other legal responsibilities in any form or nature, including but not limited to, all claims relating to, connected with, or arising out of any state, local, or federal statute, ordinance, regulation, or claim at common law or in equity, whether past, present, or future, known or unknown, asserted or unasserted, connected with, arising out of or in any way related to the facts alleged in the Action, including but not limited to all claims under the federal Video Privacy Protection Act and any analogous state statutes related to the disclosure of Settlement Class Members' information to third parties at any time between May 5, 2023 and the date on which this Settlement Agreement is executed [i.e., September 3, 2026].

SA ¶ 31; *see also* SA ¶¶ 84–85. Settlement Class Members who timely opt out release nothing. SA ¶ 84. The Released Claims are thus tethered to the facts alleged in the SAC and temporally limited.

### E. The Settlement Agreement Allows Class Counsel to Seek an Attorneys' Fee Award and Plaintiffs to Seek Service Awards

Class Counsel will apply for an Attorneys' Fee Award of $124,728.73, inclusive of $113,550 in attorneys' fees and $11,178.73 in out-of-pocket costs and expenses – which is collectively just 20.7% of the Settlement Fund (and the attorneys' fee portion is just 18.9% of the Settlement Fund). SA ¶ 65 (permitting Class Counsel to seek up to $200,000). Defendant takes no position on the request, *id.*, any amount not awarded remains in the Settlement Fund for Approved Claimants, SA ¶¶ 21, 59, and the application will be filed at least twenty days before the Opt-Out and Objection Date so that Settlement Class Members may review it before deciding whether to object or opt out. SA ¶ 65.

As will be explained in Class Counsel's forthcoming motion for an Attorneys' Fee Award, Class Counsel investigated the claims, drafted three complaints, briefed three motions to dismiss, served written discovery including a subpoena to Meta, prepared for and attended a full-day mediation, negotiated the term sheet and the Settlement Agreement and its exhibits, and evaluated administration proposals – work that the Gucovschi Law Firm alone expended 151.4 hours (equating to a lodestar of approximately $113,550 at counsel's $750 hourly rate) to perform, Gucovschi Decl. ¶¶ 15-16 & Ex. B (table reflecting fees incurred), and required Plaintiffs' counsel to incur $11,178.73 in unreimbursed expenses. *See* Hedin Decl. ¶ 10 & Ex. 3.[3] Plaintiffs' counsel at Gucovschi Law Firm PLLC seeks only its $113,550 lodestar, without any multiplier, as an award of attorneys' fees for the work it performed, and Plaintiffs' counsel at Hedin LLP seeks no attorneys' fees for the work it performed in the case (but rather seeks only its unreimbursed out-of-pocket litigation expenses incurred of $11,178.73, *see* Hedin Decl., Ex. 3 (itemized table of expenses)). *Cf., e.g., Wolf v. Permanente Medical Group, Inc.*, No. 17-cv-05345-VC, 2018 WL 5619801, at *2 (N.D. Cal. Sept 14, 2018)

[3] The attorneys' fee portion of any Attorneys' Fee Award approved by the Court will be paid entirely to Gucovschi Law Firm, PLLC.

(approving multiplier of 2.75-3.0 and citing cases). The Settlement is not contingent on approval of the requested Attorneys' Fee Award or of the Service Awards of up to $5,000 that each Plaintiff will seek for their initiative and effort in bringing and prosecuting the Action. SA ¶¶ 66–67, 90, 104(c).

## IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

### A. The Settlement Class Satisfies the Rule 23(a) Prerequisites

Rule 23(a) requires: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation, Fed. R. Civ. P. 23(a), and the Settlement Class must also satisfy one of the subsections of Rule 23(b). However, when "[c]onfronted with a request for a settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there [will] be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

#### *1. Numerosity*

The Settlement Class consists of approximately 35,000 individuals dispersed throughout the United States. SA ¶¶ 38–39; Hedin Decl. ¶ 15. Numerosity is generally satisfied when a class exceeds forty members. *See, e.g., Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).

#### *2. Commonality*

Commonality is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 389-90 (2011). Every Settlement Class Member's claim derives from the same course of conduct—Defendant's use of the Meta Pixel, which allegedly transmitted account holders' video titles and personally identifiable information to Meta without consent. Whether Defendant is a "video tape service provider," whether the information transmitted is "personally identifiable information," whether the disclosures were "knowing," and whether Defendant obtained VPPA-compliant consent are common

questions whose answers are "apt to drive the resolution of the litigation" for the Settlement Class as a whole. *Wal-Mart Stores, Inc.,* 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

### ***3. Typicality***

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Each Plaintiff created an account, watched videos during the Settlement Class period, and allegedly had video titles and his or her personally identifiable information transmitted to Meta by the same Meta Pixel technology as every other Settlement Class Member, and asserts the same claim and seeks the same remedy. SAC ¶¶ 6–13, 40. Because Plaintiffs' claims arise from the "same course of conduct," which is "not unique to the named plaintiffs," typicality is satisfied. *Valliere v. Tesoro Refin. & Mktg. Co. LLC*, No. 17-cv-00123-JST, 2020 WL 13505042, at *5 (N.D. Cal. June 26, 2020) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d at 508).

### ***4. Adequacy***

Adequacy, Fed. R. Civ. P. 23(a)(4), asks: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiffs' interests are aligned with, and not antagonistic to, those of the Settlement Class. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *4-5 (N.D. Cal. July 22, 2020), *aff'd,* No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022). Plaintiffs will receive the same *pro rata* Cash Award as every other Approved Claimant, subject only to Court-approved Service Awards, SA ¶¶ 59, 66, and have actively

participated in the Action, including by communicating regularly with counsel, assisting in their counsel's investigation into their claims and Defendant's conduct at issue, and reviewing and approving the Settlement Agreement. Hedin Decl. ¶ 20; Gucovschi Decl. ¶ 13. Proposed Class Counsel are highly experienced in class actions and in consumer privacy and VPPA litigation in particular, have prosecuted numerous VPPA and similar privacy actions, and are intimately familiar with the range of settlements reached in them. *See* Hedin Decl. ¶¶ 23-24; *id.*, Exs. 2 (chart of previous VPPA class settlements) & 4 (firm resume); Gucovschi Decl. ¶¶ 3-5 & Ex. A (firm resume). Despite the substantial risk of no recovery, they devoted significant resources to this Action—including defeating Defendant's motion to dismiss the operative complaint—and their representation was instrumental in achieving the Settlement. *Id.*

**B. The Requirements of Rule 23(b)(3) Are Satisfied**

Rule 23(b)(3) requires that common questions predominate over individual ones and that a class action be superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). Both requirements are easily satisfied.

***1. Common issues of law and fact predominate***

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 623. It is satisfied where common questions "present a significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication," such that "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F. 3d at 1022 (citations and quotations omitted). Every Settlement Class Member's claim arises from Defendant's uniform deployment of the Meta Pixel and turns on the same legal questions concerning the VPPA's application to that conduct. And in assessing this requirement in connection with the instant Settlement, the Court need not consider trial manageability: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."

*Amchem Prods., Inc.*, 521 U.S. at 620 (discussing manageability, which is a subpart of Rule 23(b)(3) predominance).

### ***2. Class treatment of Plaintiffs' claims is superior***

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon,* 150 F.3d at 1023. "'[T]he purpose of the superiority requirement is to assure that the class is the most efficient and effective means of resolving the controversy.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 at p. 174 (3d ed. 2005)). Each Rule 23(b)(3) factor favors certification. First, "[f]rom either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon,* 150 F.3d at 1023. Each Settlement Class Member's damages are not so large as to counsel against certification. *See Smith v. Cardinal Logistics Mgmt. Corp.,* No. 07-cv-02104-SC, 2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008). Second, Plaintiffs are aware of no other litigation concerning the controversy. Third, concentration in this forum is desirable because Defendant is headquartered in this District, the events at issue occurred here, and this Court has already resolved three motions to dismiss. SAC ¶¶ 4–5, 14; ECF Nos. 26, 34, 41. Finally, manageability depends largely on whether the case "rises and falls [on] common evidence," *In re HighTech Emp. Antitrust Litig.*, 985 F.Supp.2d 1167, 1228 (N.D. Cal. 2013), as it does here—and the Settlement obviates trial-management concerns in any event. Resolving all claims in one proceeding also promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties be permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23.").

## V. SETTLEMENT APPROVAL IS WARRANTED

Rule 23 requires the Court to determine whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Ninth Circuit courts consider factors including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004)). Each factor that can be evaluated now strongly favors preliminary approval.

### A. The Strengths and Risks of Plaintiffs' Case

Plaintiffs believe their claim is strong: the Court has held that the SAC plausibly alleges every element of a VPPA claim, ECF No. 41, and Plaintiffs believe the Meta Pixel technology used on Defendant's website transmitted to Meta the titles of the videos watched by and the personally identifiable information of its account holders during the Settlement Class period. But the Settlement was negotiated against several substantial risks, any one of which could have eliminated or dramatically reduced the Settlement Class's recovery. *See* Hedin Decl. ¶¶ 10-14.

*First*, the law governing "personally identifiable information" under the VPPA is unsettled. The Ninth Circuit applies an "ordinary person" standard, *see Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (adopting ordinary person standard), and in *Solomon* the Second Circuit held that a VPPA violation required that an ordinary person be able to identify a particular person as having viewed a particular video and that the plaintiff failed to "plausibly allege that an ordinary person could identify [the plaintiff] through her FID," since an ordinary person would not see or figure out the meaning of the "c_user" cookie and the corresponding string of letters "and conclude that the phrase was a person's FID." *Solomon*, 136 F.4th at 54-55. This Court declined to

follow *Solomon* at the pleading stage in part because "there is a factual question as to whether an ordinary person would be able to identify the video titles and FIDs within the Pixel output that is not appropriate for resolution on the pleadings." ECF No. 41 at 6. Defendant would have pressed that question at summary judgment and trial, the Ninth Circuit has not addressed *Solomon*, and a ruling adopting *Solomon*'s approach—here on a fuller record, on appeal, or in the Supreme Court in the event of a circuit split—would doom the entire Settlement Class's claims.

*Second*, Defendant has disputed that it "knowingly" disclosed PII, contending that Meta—not Defendant—is the true "transferor" of the FID, ECF No. 36 at 6–7, and the Court recognized "a factual dispute as to whether Facebook or Defendant is better regarded as the transferor of Plaintiffs' PII, which the Court will not resolve on a motion to dismiss." ECF No. 41 at 7. Resolving it would have required extensive technical discovery from Defendant and Meta, expert testimony, and a trial, and posed considerable risk to the Settlement Class.

*Third*, Defendant has maintained that it is not a "video tape service provider" and that Settlement Class Members—who created free accounts and watched free videos on a nonprofit's website—are not "consumers." *See* ECF No. 46 at 3–5. Under the VPPA, only entities "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials" are covered, and only "consumers"—renters, purchasers, or subscribers—are protected. *See* 18 U.S.C. §§ 2710(a)(3)–(4), (b)(2)(B). Whether a nonprofit distributing free educational videos is "engaged in the business" of delivering audiovisual materials, and whether a person who creates a free account is a "subscriber," are contested questions on which Defendant could have prevailed at summary judgment or on appeal.

*Fourth*, Defendant asserted that Plaintiffs' claims are barred by limitation-of-liability provisions in its terms of service. ECF No. 43 at 12. Plaintiffs believe any such provision would be unconscionable and unenforceable, particularly as applied to deprive

consumers of statutory relief, *see Newton v. Am. Debt Servs.*, 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012), but its enforcement would dramatically reduce Defendant's exposure.

### B. Further Litigation Would Be Risky, Expensive, Complex, and Lengthy

Absent the Settlement, Plaintiffs would have had to complete fact and expert discovery—including technical discovery from Defendant and Meta—prevail on a contested class-certification motion, defeat a likely summary-judgment motion on the issues described above, and prevail at a jury trial that Defendant estimated would last seven to ten days. ECF No. 46 at 10. Even a class-wide judgment would likely be appealed, and the unsettled "ordinary person" standard would make any appeal a serious threat to that judgment. Final resolution could have taken many years, at great expense, with no assurance of any recovery.

### C. The Risks Associated with Certifying the Class and Maintaining the Case as a Class Action Through Trial

In the litigation, Defendant argued that "there is no class that could be certified under Rule 23" on a contested basis, for various reasons. *See* ECF No. 46 at 7. While Plaintiffs believe they would have certified a litigation class, the grounds on which Defendant telegraphed that it would oppose certification would have produced a hotly contested certification motion. Such issues do not, however, weigh against certification for settlement purposes. "A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en banc); *see also Jabbari v. Farmer*, 965 F.3d 1001, 1005–06 (2020).

### D. The Relief Offered in the Settlement Is More Than Adequate

The $600,000 non-reversionary Settlement Fund provides approximately $17.14 per Settlement Class Member on a gross basis and, at an assumed 5% claims rate, an estimated cash payment of approximately $250 to each Approved Claimant. Hedin Decl. ¶ 17. These figures compare very favorably to the relief available to claimants in

consumer class actions generally.[4] *See, e.g., In re Google Referrer Header Priv. Litig.*, No. 5:10-CV-04809-EJD, 2023 WL 6812545, at *2 (N.D. Cal. Oct. 16, 2023) (showing estimated "average recovery of approximately $7.16," actual amount of payment made to each settlement class member was $7.70); *In re Google Plus Profile Litig.*, No. 5:18-cv06164-EJD (VKD), Dkt. 96 at 5-6 (N.D. Cal. Oct. 15, 2020) ($12 or $6 payments per class member); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d at 943, *aff'd sub nom*; *Fraley v. Batman*, 638 F. App'x 594 ($15 payment per class member); *Poertner v. The Gillette Co.*, No. 6:12-v-00803-GAP-DAB, Dkt. 168 at 3 (M.D. Fla. Aug. 21, 2014) ($6-$12 payments per class member). Among VPPA settlements specifically, the relief here ranks towards the top of the spectrum in terms of per-class member recovery: in the 29 VPPA settlements located by Plaintiffs' counsel and listed in Exhibit 2 to the Hedin Declaration, the per-Class-Member value ranges from $0.82 to $39.42, with an average of $9.11, *see* Hedin Decl., Ex. 2, placing the instant Settlement's per-Settlement Class Member recovery of approximately $17.14 well above the average. *Id.*

### E. The Settlement Is Informed by Sufficient Discovery to Permit an Informed Decision

"In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (quoting *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir.1998)). "Rather, the court's focus is on whether 'the parties carefully

[4] Plaintiffs further note that privacy damages are particularly uncertain and numerous privacy class actions have been settled for non-monetary relief only. *See, e.g., Campbell v. Facebook, Inc.*, No. 13-cv-05996-PJH, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F. 3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.,* No. 10-MD-02184-CRB, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing class with injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data); *McDonald, et al. v. Kiloo A/S, et al.,* No. 3:17-cv-04344-JD, ECF No. 406 (N.D. Cal. Apr. 12, 2021) (granting final approval of 16 injunctive relief-only settlements in related privacy class actions accusing defendants of violating child privacy protection laws by collecting and selling PII of children).

investigated the claims before reaching a resolution.'" *Id.* (quoting *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (citation omitted)). Proposed Class Counsel investigated the claims extensively before filing suit, including a technical analysis of the Meta Pixel's operation on Defendant's website that formed the basis for the SAC's detailed allegations and exemplar screenshots, Hedin Decl. ¶ 4; *see* SAC ¶¶ 34–39 & figs. 1–3, and three rounds of motion-to-dismiss briefing sharpened the legal issues. ECF No. 41. Thereafter, the Parties exchanged initial disclosures and engaged in discovery, and Defendant produced to Plaintiffs information concerning the number of persons who created accounts and watched videos during the relevant period, the configuration and duration of the Pixel's deployment, and its available insurance coverage, all of which was tested in a full-day mediation before Judge Rosen. Hedin Decl. ¶¶ 7-10. This information was more than sufficient for an informed decision about the fairness, reasonableness, and adequacy of the Settlement.

### F. Counsel Believes the Settlement Is an Excellent Result

The opinion of experienced counsel supporting settlement after arm's length negotiations is entitled to considerable weight. *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). Counsel for Plaintiffs, who are highly experienced in privacy class actions and VPPA litigation, investigated the claims, tested Defendant's principal defenses through three rounds of motion-to-dismiss briefing, and consider the Settlement an excellent result for the Settlement Class. Hedin Decl. ¶¶ 7-18; Gucovschi Decl. ¶ 12. Judge Rosen's involvement further confirms that the Settlement is fair, reasonable, and non-collusive.

### G. Governmental Participation and the Settlement Class's Reaction to the Proposed Settlement are Not at Issue Here

The seventh and eighth factors are not at issue because there is no government participation in this case, and because Settlement Class Members have not yet had the chance to react to the proposed Settlement. *Bertoia v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *9 (N.D. Cal. Apr. 6, 2017); *see also Martin v. Sysco Corp.*, No. 1:16-cv-00990-DAD-SAB, 2019 WL 3253878, at *6 (E.D. Cal. July 19, 2019).

### H. The Settlement Also Satisfies the *Bluetooth* Factors

Prior to class certification, class settlements must withstand a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth,* 654 F.3d at 946. The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *Id.* at 946-47. The Ninth Circuit has identified three "signs" of possible collusion:

> (1) "when counsel receive[s] a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.

*Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *In re Bluetooth*, 654 F.3d at 947). These factors assist the Court in determining whether Plaintiffs' counsel have "allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F. 3d at 947. None is present here. First, Class Counsel will not "receive a disproportionate distribution of the settlement." *Bluetooth*, 654 F. 3d at 947. They intend to seek no more than $113,550 in attorneys' fees and $11,178.73 in out-of-pocket litigation expenses (for a total Attorneys' Fee Award of $124,728.73) from the Settlement Fund, inclusive of all costs, SA ¶ 65; the Court will

determine any award on a full record after Settlement Class Members have had the opportunity to object; and even if the full amount were awarded and het requested administration expenses are approved, at least $440,271.27—more than 73% of the Settlement Fund—would remain for Settlement Class Members. Second, the Settlement Agreement contains no agreement to a fixed fee; it provides only that Class Counsel may apply for *up to* one-third of the Settlement Fund and that "Defendant takes no position on the requested Attorneys' Fee Award," leaving the amount entirely to the Court. SA ¶ 65. And here, the amount of the Attorneys' Fee Award that Class Counsel intends to request – $124,728.73 – is far less than the maximum amount ($200,000) the Settlement Agreement permitted them to seek as an Attorneys' Fee Award. Third, there is no "kicker" or "reverter": the Settlement Fund is non-reversionary, and any portion of the requested fees or Service Awards not awarded remains in the Net Settlement Fund for Approved Claimants. SA ¶¶ 21, 41, 59, 64; *see Bluetooth*, 654 F. 3d at 947.

## VI. THE PROPOSED NOTICE PROGRAM, SETTLEMENT ADMINISTRATOR, AND PROCESS FOR CLAIMS, OPT-OUTS, AND OBJECTIONS SHOULD BE APPROVED

### A. The Proposed Notice Plan

#### *1. Class Notice*

Because every Settlement Class Member is identified by name in Defendant's records, and e-mail and/or postal addresses are available for most, the Settlement Class Notice Program consists of individual direct notice. SA ¶¶ 73–78; Simpluris Decl. ¶¶ 22-30.

Within fourteen days after the Preliminary Approval Date, Defendant will provide the Settlement Class List to the Settlement Administrator, SA ¶ 39, and within thirty days after the Preliminary Approval Date, the Settlement Administrator will (a) e-mail the short-form Class Notice (SA Ex. B) to every Settlement Class Member with an available e-mail address; (b) mail it to every Settlement Class Member without an e-mail address or whose e-mail is undeliverable, using the National Change of Address database to

update addresses; (c) post the long-form Class Notice (SA Ex. C) on the Settlement Website, www.PragerUVPPASettlement.com; and (d) establish a toll-free telephone number. SA ¶¶ 56, 70, 75–77. The Settlement Administrator estimates that this program will reach in excess of 70% of the Settlement Class. Simpluris Decl. ¶ 41. This is consistent with other court-approved, best-practicable notice programs and exceeds the reach characterized as the "norm" and a "high percentage" by the Federal Judicial Center Guidelines. *See Edwards v. Nat'l Milk Producers Fed'n,* No. 11-CV-04766-JSW, 2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017) (citing Federal Judicial Center, *Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide* 2010 ("The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%.").

Moreover, the Class Notice describes in plain language the Action, the Settlement Class, the Settlement terms (including the estimated Cash Award and the requested Attorneys' Fee Award and Service Awards), the claims process, the right to opt out or object and the procedures for doing so, the release, Class Counsel's contact information, and the Final Approval Hearing, SA ¶ 78 & Exs. B–C, and the Settlement Website will host the key case documents and allow Settlement Class Members to submit Claim Forms, elect electronic payment, and update their addresses. SA ¶¶ 42, 70.

#### ***2. CAFA Notice***

Defendant, or the Settlement Administrator at its direction, will serve notice of the proposed Settlement on the appropriate federal and state officials pursuant to the Class Action Fairness Act within ten days after the filing of this Motion. SA ¶¶ 5, 88.

### **B. The Settlement Administrator**

The Parties propose Simpluris, Inc. ("Simpluris") as Settlement Administrator. SA ¶¶ 37, 48. Class Counsel solicited competing proposals from three experienced administrators, and counsel for both Parties agreed on Simpluris based on its experience, its data-security practices, and the cost-effectiveness of its proposal, particularly its

extensive experience administering class settlements, including consumer privacy settlements, and maintains robust data-security standards, Simpluris Decl. ¶¶ 3-20, and the Settlement Agreement requires it to keep the Settlement Class List strictly confidential and to return or securely destroy it upon completion of the administration. SA ¶ 111. Simpluris estimates that notice and administration will cost approximately $21,205 and has capped its Settlement Administration Expenses at $25,000—approximately 3.5% and 4.2% of the Settlement Fund, respectively—which is eminently reasonable. SA ¶¶ 36, 57, 68.

**C. Opt-Outs and Objections: Timeline and Instructions**

Settlement Class Members will have sixty days from the Notice Date to opt out or object (the "Opt-Out and Objection Date"), SA ¶ 25, and Class Counsel's fee and Service Award application will be filed and posted on the Settlement Website at least twenty days before that date. SA ¶¶ 42, 65–66, 70. The Class Notice explains both procedures in plain language. SA Exs. B–C. To opt out, a Settlement Class Member need only mail a signed request for exclusion to the Settlement Administrator, postmarked by the deadline, stating his or her name, the address or e-mail address used to create his or her PragerU account, and that he or she wishes to be excluded. SA ¶ 100. To object, a Settlement Class Member must submit a written objection, postmarked by the deadline, to Class Counsel, Defense Counsel, and the Clerk of the Court, stating the grounds for the objection and establishing membership in the Settlement Class; objectors may appear at the Final Approval Hearing upon filing a notice of intention to appear. SA ¶¶ 91–97. The Settlement Administrator will provide the Opt-Out List to the Parties within seven days after the deadline, SA ¶ 102, and Plaintiffs will report on all opt-outs and objections with the Motion for Final Approval.

**D. The Claims Process**

***1. The Claim Form***

To receive a Cash Award, a Settlement Class Member must submit a simple Claim Form, substantially in the form of Exhibit A to the Settlement Agreement, on the

Settlement Website by the Claims Deadline—120 days after the Notice Date. SA ¶¶ 7–8, 79. The Claim Form requires only the claimant's name and the e-mail and/or postal address to which the Cash Award should be sent, permits an election of electronic payment, and will be validated against the Settlement Class List, with an opportunity to cure deficiencies. SA ¶¶ 8, 43, 79–80.

### ***2. The Estimated Claim Rate***

The Settlement Administrator estimates a claims rate of approximately 1-5%. Simpluris Decl. ¶ 20. Class Counsel likewise consider a claims rate of approximately 5% a reasonable estimate based on their experience in comparable privacy settlements. One broad analysis of 149 consumer class actions conducted by the Federal Trade Commission concluded that "[a]cross all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%." *See* Fed. Trade Comm'n, Consumers & Class Actions: A Retrospective & Analysis of Settlement Campaigns, p. 11 (Sept. 2019) ("FTC Report").[5] Direct e-mail notice to identified account holders, with a simple online Claim Form and an electronic-payment option, is well suited to achieving or exceeding these rates.

## **VII. OTHER CASES AFFECTED**

Plaintiffs are aware of no other pending cases that will be affected by the proposed Settlement.

## **VIII. THE PROPOSED FINAL APPROVAL HEARING SCHEDULE**

The [Proposed] Preliminary Approval Order, attached as Exhibit D to the Settlement Agreement and submitted herewith, includes the following schedule, which tracks the Settlement Agreement:

| EVENT | PROPOSED DEADLINE |
|---|---|
| **Preliminary Approval Order** | TBD |

[5] This report is available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

| EVENT | PROPOSED DEADLINE |
|---|---|
| **CAFA Notice** | 10 days after filing of this Motion (SA ¶¶ 5, 88) |
| **Settlement Class List to Administrator** | 14 days after Preliminary Approval Date (SA ¶ 39) |
| **Notice Date; Settlement Website live** | 30 days after Preliminary Approval Date (SA ¶¶ 22, 70, 75–77) |
| **Fee and Service Award Application** | 20 days before Opt-Out and Objection Date (SA ¶¶ 65–66) |
| **Opt-Out and Objection Date** | 60 days after Notice Date (SA ¶ 25) |
| **Opt-Out List to Parties** | 7 days after Opt-Out and Objection Date (SA ¶ 102) |
| **Claims Deadline** | 120 days after Notice Date (SA ¶ 7) |
| **Motion for Final Approval; responses to objections** | 14 days before Final Approval Hearing (SA ¶¶ 19, 98–99) |
| **Final Approval Hearing** | June 7, 2027, at 9:00 a.m., or such later date as the Court may set, at least 120 days after entry of the Preliminary Approval Order (SA ¶¶ 17, 87) |

Consistent with the Settlement Agreement, SA ¶¶ 17, 87, Plaintiffs request that the Court set the Final Approval Hearing for June 7, 2027, or the earliest convenient date thereafter that is at least 120 days after entry of the Preliminary Approval Order.

## IX. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) preliminarily approve the Settlement; (2) provisionally certify the Settlement Class and appoint Plaintiffs as Class Representatives and Hedin LLP and Gucovschi Law Firm, PLLC as Class Counsel; (3) approve the Class Notice, Claim Form, and Settlement Class Notice Program, appoint Simpluris, Inc. as Settlement Administrator, and direct that notice be disseminated in accordance with the Settlement Agreement; (4) establish the procedure and timetable set forth above for objections, opt-outs, and claims; and (5) set a Final Approval Hearing. A [Proposed] Preliminary Approval Order, in the form attached as Exhibit D to the Settlement Agreement, is submitted herewith.

DATED: September 3, 2026

Respectfully submitted,

By: /s/ Frank S. Hedin
Frank S. Hedin (SBN 291289)
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
fhedin@hedinllp.com

– and –

Adrian Gucovschi
Nathaniel Haim Sari
GUCOVSCHI LAW FIRM, PLLC
140 Broadway, FL 46
New York, NY 10005
Telephone: (212) 884-4230
adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

*Counsel for Plaintiffs and the Proposed Settlement Class*

## ATTESTATION OF CONCURRENCE

I, Frank S. Hedin, attest that I conferred with Defendant's counsel concerning this motion, and that Defendant's counsel advised me that Defendant does not oppose this motion.

/s/ Frank S. Hedin
Frank S. Hedin

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of September, 2026, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record.

/s/ Frank S. Hedin
Frank S. Hedin