Frank S. Hedin (SBN 291289)
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

*Counsel for Plaintiffs and Proposed Settlement Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SYLVIA CHANDRA and DAMANY BROWNE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PRAGER UNIVERSITY FOUNDATION,<br><br>Defendant. | Case No. 2:25-cv-03984-MCS-SK<br><br>**DECLARATION OF FRANK S. HEDIN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

I, Frank S. Hedin, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and based on my own personal knowledge, that the following statements are true:

1. I am a member in good standing of the State Bar of California and the Florida Bar, and the founding partner at the law firm Hedin LLP.

2. Together with co-counsel at Gucovschi Law Firm PLLC, I am counsel of record for the Plaintiffs in the above-captioned matter and the putative Settlement Class.

3. I make this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. A true and correct copy of the Settlement Agreement, which has been executed by the parties, is attached hereto as **Exhibit 1**.

## I. HISTORY OF THE LITIGATION & SETTLEMENT NEGOTIATIONS

4. Prior to filing this lawsuit, my firm performed an extensive and time-consuming investigation into the conduct underlying these claims. Specifically, my firm (i) researched numerous online trackers created by different technology companies, including learning how they operate, how to find them in website source code, and how to identify what information is being tracked and transmitted; (ii) investigated Defendant's website and its use of tracking technologies on that website, including parsing through its source code; (iii) researched whether Defendant's use of tracking pixels violated the VPPA; (iv) communicated with and reviewed materials provided by numerous potential clients who interacted with, and made accounts on, and watched videos on Defendant's website, in order to determine whether they were capable of adequately representing the interests of the proposed classes; (v) investigated the adequacy of the named Plaintiffs to represent the putative classes and executed engagement agreements to represent them in this matter; and (vi) prepared the Class Action Complaint on behalf of the proposed class to initiate this action.

5. After commencing the action on May 5, 2025, my firm and co-counsel vigorously litigated the action. After Defendant moved to dismiss, ECF No. 19, my firm and co-counsel prepared and Plaintiffs filed a First Amended Complaint adding Plaintiff

Browne. ECF No. 21. Defendant moved to dismiss again, ECF Nos. 25, 28, and the Court granted the motion with leave to amend, concluding that Plaintiffs had not adequately pleaded that Defendant disclosed their specific personally identifiable information to a third party. ECF No. 34. My firm and co-counsel then prepared and Plaintiffs filed the operative SAC on November 4, 2025, ECF No. 35, and Defendant moved to dismiss a third time, arguing that Plaintiffs had not alleged a knowing disclosure, that FIDs and video titles are not "personally identifiable information" under the "ordinary person" standard, and that the Court should follow *Solomon*. ECF No. 36. On January 27, 2026, the Court denied the motion, holding that FIDs coupled with viewing histories are PII under *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017), declining to follow *Solomon*, and holding that Plaintiffs adequately alleged a knowing disclosure—while noting "a factual question as to whether an ordinary person would be able to identify the video titles and FIDs within the Pixel output" and "a factual dispute as to whether Facebook or Defendant is better regarded as the transferor of Plaintiffs' PII." ECF No. 41 at 6–7.

6. Defendant answered on February 10, 2026, asserting twelve affirmative defenses, including lack of Article III standing, the unavailability of class treatment, and limitation-of-liability provisions in its terms of service. ECF No. 43. The Parties thereafter exchanged initial disclosures and engaged in discovery concerning, among other things, the operation of the Meta Pixel on Defendant's website, the number of persons who created accounts and watched videos during the relevant period, and Defendant's insurance coverage.

7. On June 16, 2026, the Parties mediated before the Hon. Gerald E. Rosen (Ret.) of JAMS, former Chief Judge of the Eastern District of Michigan, reached agreement on material terms of a proposed settlement, and memorialized those terms in a binding term sheet in the following weeks with Judge Rosen's continued assistance. Plaintiffs filed a notice of settlement on July 2, 2026, ECF No. 60; the Court dismissed

the Action without prejudice, retained jurisdiction, and directed that any motion for preliminary approval be filed within forty-five days, ECF No. 62, later extended to September 3, 2026, ECF No. 64; and the Parties formally executed the Settlement Agreement on September 3, 2026. *See* Ex. 1 hereto (Settlement Agreement).

8. The Settlement is the product of informed, arm's-length negotiations before an experienced neutral, undertaken after Plaintiffs' counsel had investigated the claims, prevailed on Defendant's motion to dismiss the operative complaint, and obtained information from Defendant in advance of the parties' mediation sufficient to evaluate the size of the Settlement Class and the strengths and weaknesses of the claims.

9. All of the negotiations that produced the proposed Settlement were at arm's-length. The decision to enter into the proposed Settlement on behalf of the proposed Class was made on an informed basis, after careful consideration of the risks posed by continued litigation.

10. Prior to entering into the proposed Settlement, I recognized that several significant risks associated with class certification and the merits would have threatened the ability of the putative class to recover relief if the litigation continued.

11. In particular, when the proposed Settlement was negotiated, I believed that Defendants' primary defenses would center on the potential difficulties Plaintiffs would encounter in establishing whether any specific Class Member's personally identifiable information ("PII") was disclosed via tracking tools, including the Meta Pixel, or was sold or otherwise disclosed to other third parties. Based on my experience, I also recognized the difficulties associated with obtaining discovery from Meta and other third parties implicated in this litigation, and that those difficulties posed a substantive risk to recovery for the putative class.

12. Moreover, the law governing "personally identifiable information" under the VPPA is unsettled. The Ninth Circuit applies an "ordinary person" standard, *see Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (adopting ordinary person

standard), and in *Solomon* the Second Circuit held that a VPPA violation required that an ordinary person be able to identify a particular person as having viewed a particular video and that the plaintiff failed to "plausibly allege that an ordinary person could identify [the plaintiff] through her FID," since an ordinary person would not see or figure out the meaning of the "c_user" cookie and the corresponding string of letters "and conclude that the phrase was a person's FID." *Solomon*, 136 F.4th at 54-55. This Court declined to follow *Solomon* at the pleading stage in part because "there is a factual question as to whether an ordinary person would be able to identify the video titles and FIDs within the Pixel output that is not appropriate for resolution on the pleadings." ECF No. 41 at 6. Defendant would have pressed that question at summary judgment and trial, the Ninth Circuit has not addressed *Solomon*, and a ruling adopting *Solomon*'s approach—here on a fuller record, on appeal, or in the Supreme Court in the event of a circuit split—would deprive the entire Settlement Class of any recovery.

13. Additionally, Defendant has disputed that it "knowingly" disclosed PII, contending that Meta—not Defendant—is the true "transferor" of the FID, ECF No. 36 at 6–7, and the Court recognized "a factual dispute as to whether Facebook or Defendant is better regarded as the transferor of Plaintiffs' PII, which the Court will not resolve on a motion to dismiss." ECF No. 41 at 7. Resolving it would have required extensive technical discovery from Defendant and Meta, expert testimony, and a trial, and posed considerable risk to the Settlement Class. Defendant has also maintained that it is not a "video tape service provider" and that Settlement Class Members—who created free accounts and watched free videos on a nonprofit's website—are not "consumers." *See* ECF No. 46 at 3–5. Under the VPPA, only entities "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials" are covered, and only "consumers"—renters, purchasers, or subscribers—are protected. *See* 18 U.S.C. §§ 2710(a)(3)–(4), (b)(2)(B). Whether a nonprofit distributing free educational videos is "engaged in the business" of delivering audiovisual materials, and whether a person who

creates a free account is a "subscriber," are contested questions on which Defendant could have prevailed at summary judgment or on appeal. Defendant has further asserted that Plaintiffs' claims are barred by limitation-of-liability provisions in its terms of service. ECF No. 43 at 12. Plaintiffs believe any such provision would be unconscionable and unenforceable, particularly as applied to deprive consumers of statutory relief, *see Newton v. Am. Debt Servs.*, 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012), but its enforcement would dramatically reduce Defendant's exposure.

14. Finally, given the aggregate sum of statutory damages at stake – approximately $87,500,000 ($2,500 multiplied by 35,000, the size of the Settlement Class) – I believed that Defendant would challenge any adverse judgment entered against it on substantive due process grounds, and recognized that the jurisprudence concerning such a defense continues to evolve.

15. There are approximately 35,000 Settlement Class Members. Accordingly, the $600,000 Settlement Fund equates to a gross per-Settlement Class Member recovery of approximately $17.14.

16. The per-class member monetary relief recovered by the proposed Settlement compares favorably with the relief obtained in other recent settlements reached in similar VPPA matters. The gross per-Settlement Class Member recovery of $17.14 obtained through the Settlement ranks towards the top of the spectrum in terms of per-class member recovery, as reflected in the chart (attached hereto as **Exhibit 2**) of prior non-reversionary class action settlements of VPPA actions involving Meta Pixel technology.

17. At an assumed 5% claims rate—or approximately 1,750 Approved Claimants—each Approved Claimant's cash payment would be approximately $250, assuming the Court approves the amounts Plaintiffs' counsel intend to seek for an Attorneys' Fee Award ($124,728.73 (broken down by $113,550 in attorneys' fees and $11,178.73 in out-of-pocket expenses)), Service Awards ($10,000 in total, $5,000 to each Plaintiff), and the maximum Settlement Administration Expenses that will be incurred

($25,000), which would leave $440,271.27 in the Settlement Fund for distribution to Approved Claimants. *Id.* Even at a 10% claims rate, the amount paid to each Approved Claimant would be approximately $125.

18. In view of the significant litigation risks described above, I consider the Settlement to be an excellent result for the Settlement Class.

19. Although my firm expended a significant amount of attorney time investigating, prosecuting, and resolving this matter, my firm seeks no attorneys' fees in connection with its work. My firm expended $11,178.73 in necessary out-of-pocket expenses developing, prosecuting, and resolving this litigation, and intends to seek reimbursement of those expenses. *See* **Exhibit 3** (table of itemized expenses incurred by Hedin LLP in the instant matter).

20. The proposed Class Representatives have also actively participated in this action and in reaching this Settlement, having provided my firm and our co-counsel with all of the necessary factual information relevant to their claims, reviewed and approved the Settlement Agreement, and communicated with my firm and our co-counsel regarding various issues pertaining to this case.

21. None of the Plaintiffs nor any attorney or employee at Hedin LLP has any relationship with the Electronic Privacy Information Center ("EPIC"), the proposed *cy pres* recipient of any uncashed check funds that remain in the Settlement Fund at the conclusion of the disbursement process. There is no connection between any of the Plaintiffs or anyone at Hedin LLP, on the one hand, and EPIC, on the other, that could create the impression of any impropriety of any sort in the selection of EPIC as the proposed *cy pres* recipient in this case.

## II. HEDIN LLP'S EXPERIENCE

22. I co-founded Hedin LLP, then known as Hedin Hall LLP, in 2018. I previously served as law clerk to the Honorable William Q. Hayes, U.S. District Judge for

the Southern District of California, and as an attorney at a Miami-based litigation boutique, where I started the firm's class-action practice.

23. Hedin LLP is based in Miami, Florida, and also maintains an office in Washington D.C. Our firm focuses on consumer and data privacy class actions and has successfully prosecuted dozens of such matters in state and federal courts as court-appointed class counsel. *See e.g., Rivera et al. v. Google, LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement); *Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) (counsel for class of consumers alleging defendant's sale, rental, and disclosure of mailing containing its subscribers' personal information in violation of Michigan's Preservation of Personal Privacy Action ("PPPA"), obtained $52.5 million non-reversionary class settlement with automatic payments (without the need to submit claim forms) to each of the approximately 67,000 class members); *Edwards v. Hearst Communications, Inc.*, 1:15-cv-09279-AT-JLC (S.D.N.Y.) (same, $50 million non-reversionary class settlement); *Kokoszki v. Playboy Enters., Inc.*, No. 19-cv-10302 (E.D. Mich.) (same, $3.8 million non-reversionary class settlement with automatic payments to all class members); *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404 (E.D. Mich.) (same, $9.5 non-reversionary class settlement with automatic payments to all class members); *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) (same, $9.5 million non-reversionary class settlement with automatic payments to all class members); *Strano v. Kiplinger Washington Editors, Inc.*, No. 21-cv-12987 (E.D. Mich.) (same, $6.8 million non-reversionary class settlement with automatic payments to all class members); *Moeller v. The Week Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.) (same, $5 million non-reversionary class settlement with automatic payments to all class members); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook Cnty. Ill., Jan 7, 2020) (class counsel in action alleging violations of the of the

federal Telephone Consumer Protection Act ("TCPA"), obtained $16 million non-reversionary class settlement); *Chimeno-Buzzi v. Hollister Co.*, No. 14-cv-23120 (S.D. Fla.) (same, $10 million non-reversionary class settlement); *Farnham v. Caribou Coffee Co., Inc.*, No. 16-cv-295 (W.D. Wisc.) (same, $8.5 million non-reversionary class settlement); *Benbow v. SmileDirectClub, Inc.*, No. 2020-CH-07269 (Cir. Ct. Cook Cnty.) (same, $11.5 million class settlement); *Donahue v. Everi Payments, Inc., et al.*, No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-cv-20614 (S.D. Fla.) (class counsel in action alleging improper overdraft fees in violation of state law, obtained $4.95 million non-reversionary class settlement with automatic payments to all class members); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059 (E.D. Va.) (same, $2.7 million non-reversionary class settlement); *In re Maxar Technologies Inc. Shareholder Litigation*, No. 19CV357070 (Cal. Sup. Ct., Santa Clara Cnty.) (class counsel in action alleging false and misleading statements to investors in violation of federal securities laws, obtained $36.5 million non-reversionary settlement for class); *Plymouth County Retirement System v. Impinj, Inc., et al.*, No. 650629/2019 (N.Y. Sup. Ct., N.Y. Cnty.) (same, obtained $20 million non-reversionary class settlement). Over the past five years alone, the firm has recovered over $400 million in all-cash relief for the classes it has represented. *See* Ex. 1.

24. Notably, my firm has substantial experience litigating cases under state statutes analogous to the VPPA, based on conduct similar to the conduct alleged in this case. *See e.g.*, *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679 (W.D. Mich. 2018); *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at *4 (E.D. Mich. Jan. 16, 2020); *Schreiber*, No. 22-cv-00188; *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers'

purchase information in violation of Michigan's Preservation of Personal Privacy Act ("PPPA"), Mich. Comp. Laws § 445.771 *et. seq*., where firm negotiated $9.5 million all-cash non-reversionary settlement for class); *Kain v. The Economist Newspaper NA, Inc.,* No. 21-cv-11807 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of PPPA, where firm negotiated $9.5 million all-cash non-reversionary settlement for class); *Strano v. Kiplinger Washington Editors, Inc.,* No. 21-cv-12987 (E.D. Mich.) (class counsel in action alleging unauthorized disclosure of consumers' purchase information in violation of PPPA, where firm negotiated $6.8 million all-cash non-reversionary settlement for class).

25. We also frequently represent indigent litigants on a *pro bono* basis. *E.g.*, *Groover v. U.S. Corrections, LLC, et al.*, No. 15-cv-61902-BB (S.D. Fla.) (representing plaintiff and putative class against country's largest private prisoner extradition companies in Section 1983 civil rights action alleging violations of the Eighth Amendment).

26. Hedin LLP draws from a team of highly experienced attorneys dedicated to representing plaintiffs in complex class action litigation, as well as a full team of non-lawyer professionals and support staff. A copy of Hedin LLP's firm resume is attached hereto as **Exhibit 4**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 3, 2026 in Miami, Florida.

/s/ Frank S. Hedin
Frank S. Hedin